**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ANAND DASRATH,

                          Plaintiff,

           - against -

ROSS UNIVERSITY SCHOOL OF
MEDICINE**,**

                         Defendant.

-------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

07-CV-2433 (CBA)(RER)

**RAMON E. REYES, JR., U.S.M.J.:**

<u>INTRODUCTION</u>

Before the Court is a suit brought by plaintiff Anand Dasrath ("Dasrath") against

defendant Ross University School of Medicine ("Ross University"). (*See* Docket Entry 1.)

Dasrath alleges violation of the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 *et seq*. (the

"ADA"), breach of contract, fraud and violation of New York's Human Rights Law, N.Y. EXEC.

LAW § 296(4) (McKinney 2008) ("NYEL § 296(4)"). (*See id.*) Ross University has moved to

dismiss the complaint due to: (1) lack of subject matter jurisdiction over the ADA claim under

Rule 12(b)(1) of the Federal Rules of Civil Procedure; and (2) failure to state a claim upon which

relief can be granted over Dasrath's remaining three claims under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. (*See* Docket Entry 9; Docket Entry 36.) Dasrath requests a stay of the

proceedings in order to satisfy the notice requirements of the ADA. (*See* Docket Entry 27;

Docket Entry 35.) Ross University opposes the motion to stay the proceedings. (*See* Docket

Entry 33.) The Honorable Carol B. Amon referred these motions to me for a Report and

Recommendation. (*See* Docket Entry 37.) For the reasons set forth below, I recommend that

Ross University's motion to dismiss be granted, and that Dasrath's motion to stay the proceedings be denied.

<u>BACKGROUND</u>

Unless otherwise noted, the following facts are taken from Dasrath's complaint and, upon the foregoing motions to dismiss, are deemed to be true.

Dasrath enrolled at Ross University beginning in May 2004. (Docket Entry 1 ¶ 6.) Ross University has offices in New Jersey and Florida, and is certified as an eligible institution for Title IV U.S. Federal Family Education Loan Program Loans. (*Id*. ¶ 3.) Dasrath enrolled at Ross University when he was 48 years old, and claims that he was one of the oldest members of his class. (*Id.* ¶ 6.) Beginning in May 2004, Dasrath continually paid tuition to Ross University in exchange for an education. (*Id*.)

During the Spring 2006 semester, which was Dasrath's fifth semester at Ross University, he enrolled in the Advanced Introduction to Clinical Medicine ("AICM") course. (*Id*. ¶ 7.) Upon receiving his May 2006 transcript, Dasrath claims that there was a "blank space" where his grade for the AICM course should have been. (*Id*.) Dasrath claims that he then requested to view his academic file but was not permitted to inspect his academic records, nor was he allowed to see the Scantron sheets that he submitted upon taking his examinations. (*Id*.) Additionally, Dasrath claims that he was advised by his professor that he received a "94%" on the "physical exam" of the AICM course. (*Id*.) Dasrath claims that he completed the requisite course work in the AICM course for him to earn a passing grade. (*Id*. ¶ 10.) However, Dasrath claims that on August 14, 2006, about three months after receiving his May 2006 transcript, he was notified that he received an "F" in the AICM course. (*Id*. ¶ 12.)

In March 2006, while Dasrath was enrolled in the AICM course, he applied and registered to take the United States Medical Licensing Examination Step 1 ("USMLE"), which was to be administered on July 27, 2006.[1]  (*Id*. ¶¶ 8, 11.)  Dasrath's application included a certification by Ross University that Dasrath was enrolled as a student there.  (*Id*. ¶ 8.)  On June 29, 2006, however, Dasrath claims that Ross University administratively withdrew him from enrollment as a student due to his failing the AICM course and thus withdrew its sponsorship of him to take the USMLE.  (*Id*. ¶ 9.)  Ross University maintains that its actions were in full accordance with its proscribed rules and regulations listed in its Student Handbook of Academic Rules and Regulations ("Handbook").  (Docket Entry 36, Attach. 5 at 2-3.)[2]

On July 27, 2006, Dasrath took the USMLE.  (*Id*. ¶ 11.)  However, Dasrath's score was never released.  (*Id*.)  Dasrath was told that he was not authorized to take the exam because he

---

[1] Ross University asserts that, in order for foreign medical school graduates to become licensed to practice medicine in the United States, students are required to take several qualifying exams, including the USMLE.  (Docket Entry 36, Attach. 5 at 2.)

[2] Dasrath has not incorporated the Handbook by reference in his complaint.  However, I find that the Court may properly consider the document upon this motion to dismiss for two reasons.  First, Dasrath relies upon the existence of a contractual agreement to support his breach-of-contract claim, and the Handbook is thus integral to his complaint because it sets forth the terms and conditions of his contractual relationship with Ross University.  *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)).  Second, the Handbook is readily available on the Internet, *see* http://www.rossmed.edu.dm/Academic_Info/MedStdtHdbk.pdf, to which the Court may properly take judicial notice at any time.  *See Wang v. Pataki*, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005) (citing *Hotel Employees & Rest. Employees Union, Local 100 v. N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002)); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002); *see also* FED. R. EVID. 201(b)(2), (f).

was not enrolled as a student in a medical school at the time. (*Id.*) As a result, Dasrath filed the ensuing complaint seeking monetary and equitable relief for Ross University's alleged violation of the ADA, breach of contract, fraud and violation of NYEL § 296(4). (*Id.* ¶ 1.)

Ross University thereafter served notice of its motion to dismiss claiming lack of subject matter jurisdiction over the ADA claim pursuant to Rule 12(b)(1), and failure to state a claim upon which relief can be granted for the three remaining state law claims pursuant to Rule 12(b)(6). (*See* Docket Entry 9.) After unsuccessful settlement negotiations and Dasrath's retaining of new counsel, on May 20, 2008, Dasrath filed a letter motion requesting a stay of the proceedings in order to satisfy the notice requirements of the ADA. (*See* Docket Entry 27.) Ross University opposed the motion to stay the proceedings and both parties submitted papers in support of their respective positions. (*See* Docket Entry 33; Docket Entry 35.)

DISCUSSION

I.      Ross University's Motion to Dismiss

      A.      Applicable Legal Standards

Ross University's motion to dismiss is predicated on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) provides that a cause of action shall be dismissed if a court lacks subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). A cause of action "is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Federal courts are "duty-bound . . . to address the issue of subject matter jurisdiction at the outset." *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998). In evaluating a motion

to dismiss under Rule 12(b)(1), "a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Crakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). Rather, "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A plaintiff must therefore plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1974 (2007). In essence, the complaint "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and internal quotations omitted). The Court of Appeals for the Second Circuit has emphasized that this standard does "not requir[e] a universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 127 S.Ct. at 1974). A court must construe the complaint liberally, "accepting all factual allegations in the complaint and

drawing all reasonable inferences in the plaintiff's favor." *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In addition, a court must limit itself to the "factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which [plaintiff] had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

Where a plaintiff has filed an inadequately pled complaint, the plaintiff is freely given the opportunity to amend except when an amendment would be futile.  *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir. 1989) (citing Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile.").  An amendment is futile if it could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Lucente*, 310 F.3d at 258 (2d Cir. 2002).

B.   Dasrath's Age Discrimination Act Claim Is Unexhausted and Should Be Dismissed

The ADA provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."  42 U.S.C § 6102 (1975). Dasrath alleges that Ross University discriminated against him solely on the basis of his age, subjected him to harassment and evaluated him differently than similarly situated younger

6

students.[3]  (*See* Docket Entry 1 ¶ 18.)  Nonetheless, as Ross University argues in its motion to dismiss, Dasrath has failed to comply with the statutory notice requirements of the ADA.  Thus, this Court lacks subject matter jurisdiction over that claim.

Prior to filing suit under the ADA, a plaintiff must exhaust the administrative remedies set forth in 42 U.S.C. § 6104 (1979) and 45 C.F.R. § 90.50 (1979).  *See Harris v. N.Y. State Educ. Dept.*, 419 F. Supp. 2d 530, 535 (S.D.N.Y. 2006); *Curto v. Smith*, 248 F. Supp. 2d. 132, 145 (N.D.N.Y. 2003), *aff'd per curiam*, 392 F.3d 502, 503 (2d Cir. 2004).  Specifically, the ADA requires that notice shall be provided "by registered mail not less than 30 days prior to the commencement of that action the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed."  42 U.S.C. § 6104(e)(1).  This notice must set forth "the nature of the alleged violation, the relief to be requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded in . . . ."  42 U.S.C. § 6104(e)(2).  Furthermore, the ADA explicitly states that "no action . . . shall be brought . . . if administrative remedies have not been exhausted."  *Id*. "Administrative remedies shall be deemed exhausted upon the expiration of 180 days from the

---

[3]  Dasrath alleges that Ross University is subject to the ADA because it maintains a financial aid office in New Jersey to assist students with processing the Free Application for Federal Student Aid ("FAFSA"), and has its own Federal Stafford Loan identification number. (*See* Docket Entry 1 ¶¶ 3, 17; Docket Entry 35 at 3.)  Under the Civil Rights Restoration Act of 1987, a "program or activity" includes "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance . . .."  20 U.S.C. § 1687(2)(A) (2002).  Colleges or universities that enroll "students who receive federal funds earmarked for educational expenses" are considered to receive federal financial assistance.  *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 466 (1999).  Thus, after accepting all of Dasrath's factual allegations as true, Ross University is likely subject to the provisions of the ADA because it enrolls students who receive federal financial assistance to help pay for their educational expenses.

filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that the Federal department or agency issues a finding in favor of the recipient of financial assistance, whichever occurs first." 42 U.S.C. § 6104(f).

Dasrath claims that in 2006 he contacted the "United States Attorney General via the United States Attorney for New Jersey and the Department of Justice headquarters in Washington, D.C." but was advised by "representatives" of both offices "that the Attorney General would not intervene and that [he] should file suit in court." (*See* Docket Entry 36, Attach. 4 at 5.) Even if Dasrath is deemed to have properly contacted the Attorney General, he has failed to provide any evidence that he also contacted the Secretary of the Department Health and Human Services ("HHS") or Ross University prior to commencing this suit. *See* 42 U.S.C. § 6104(e)(1). Additionally, even if Dasrath provided notice to the HHS and Ross University prior to commencing this suit, Dasrath has not provided evidence that such notice set forth the alleged violation of the ADA, the relief requested, the court in which the action would be brought or whether attorney's fees would be demanded. *See* 42 U.S.C. § 6104(e)(2). Dasrath has also failed to provide any evidence that after providing notice to the requisite federal agencies he waited 180 days to file this lawsuit, or that the HHS issued a determination in favor of Ross University. *See* 42 U.S.C. § 6104(f).

The ADA unequivocally states that "no action . . . shall be brought . . . if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). Though Dasrath argues that he complied with the "spirit and intent" of the ADA's notice requirements (*see* Docket Entry 36, Attach. 4 at 4), "spirit and intent" is simply not enough. As the Supreme Court has emphasized,

"proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted). Dasrath has not met his evidentiary burden in showing that he adhered to the requisite statutory notice requirements of the ADA. This Court therefore lacks subject matter jurisdiction over Dasrath's ADA claim. *See DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 79 (2d Cir. 1992) ("Failure to exhaust administrative remedies permits a court to dismiss the action because no subject matter jurisdiction exists.") For the foregoing reasons, I recommend that Ross University's motion to dismiss the ADA claim be granted without prejudice to Dasrath's refiling an action after he has fully complied with the ADA's notice and administrative exhaustion requirements.

      C.      <u>Dasrath's Breach-of-Contract Claim Should Be Dismissed</u>

Dasrath alleges that Ross University breached its contract with him as well as the implied covenant of good faith and fair dealing. Essentially, Dasrath alleges that Ross University: (1) failed to timely and accurately report his grade on the basis of his performance in the AICM course during the spring 2006 semester; (2) improperly withdrew its sponsorship of him to take the USMLE, which resulted in his score never being released; and (3) improperly withdrew him from enrollment at Ross University. (*See* Docket Entry ¶¶ 7-9, 11-13, 26-27.) However, I find that these allegations fail to state a claim upon which relief can be granted.

Under New York law,[4] a student may sue his school for breach of contract. *See Chira v. Columbia Univ. in N.Y. City*, 289 F. Supp. 2d 477, 485 (S.D.N.Y. 2003); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998); *Ward v. N.Y. Univ.*, No. 99-CV-8733 (RCC), 2000 WL 1448641, at *3 (S.D.N.Y. Sept. 28, 2000)*; Babiker v. Ross Univ. Sch. of Med.*, No. 98-CV-1429 (THK), 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000). When a student enrolls at a university, an implied contract arises between the student and the school. *See Gally*, 22 F. Supp. 2d at 206. As long as the student complies with the conditions prescribed by the university, the student will obtain the degree that he is seeking. *Id.* Implicit in this contract is that: (1) "the university must act in good faith in dealing with the student;" and (2) "the student must fulfill his end of the bargain by satisfying the university's academic requirements and complying with its procedures if he hopes to receive the degree." *Id.* (citations omitted). "The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student." *Babiker*, 2000 WL 666342, at *6. Thus, "a viable contract action exists where the school was to 'provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation.'" *Ward*, 2000 WL 1448641, at *3 (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (2d Dep't 1982)).

While a student may sue his school for breach of contract under New York law, "not every dispute between a student and a university is amenable to a breach of contract claim . . . ." *Gally*, 22 F. Supp. 2d at 206. If the complaint essentially alleges that the school breached its

---

[4] The parties' briefs assume that New York law governs Dasrath's breach-of-contract claim, as well as Dasrath's fraud and NYEL § 296(4) claims. This is a sufficient basis to apply New York law. *See Krumme v. W. Point Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (holding that implied consent to use a forum's law is sufficient to establish choice of law).

agreement by "failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Id*. at 207 (citing *Paladino*, 454 N.Y.S.2d at 872). Further, "claims that sound in tort and ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches [his] claims in terms of breach of contract." *Id*. In fact, "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Id*. at 206-07. In other words, "the application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Id*. at 207.

The New York Court of Appeals has emphasized that "[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance." *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (N.Y. 1990) (dismissing CPLR Article 78 proceeding in its entirety because determination of grades was beyond judicial review). The review of grading disputes involves "courts in the very core of academic and educational decision making." *Id*. at 246. Universities are therefore "afforded considerable deference when making decisions concerning academic standards." *Ward*, 2000 WL 1448641, at *3. This deference is "rooted in the principle that academic evaluations involve the subjective judgment of professional educators, and therefore, courts should not substitute their judgments for those of the educators." *Id*. Thus, breach-of-contract claims brought by students against their universities are "subject to judicial review only 'to determine whether the defendants abided by their own rules, and whether they

have acted in good faith or their action was arbitrary or irrational.'" *Babiker*, 2000 WL 666342, at *6 (quoting *Gertler v. Goodgold,* 487 N.Y.S.2d 565, 569 (1st Dep't 1985)).

Dasrath alleges that Ross University failed to timely and accurately report his AICM grade. (*See* Docket Entry 1 ¶¶ 26-27.) Dasrath claims that he passed the AICM course, that he had a "blank space" on his May 2006 transcript where his grade for the AICM course should have been, that he was advised by his professor that he received a "94%" on the "physical exam" portion of the AICM course, but that he then received an "F" for the AICM course in August of 2006. (*See id.* ¶¶ 7, 8, 11, 12.) For the sake of this motion, these factual allegations must be accepted as true. These "bald assertions and conclusory allegations" do not, however, make out a valid breach-of-contract claim. *See Ward*, 2000 WL 1448641, at *5.

At its core, Dasrath's breach-of-contract claim is predicated on his conclusion that, despite receiving a "94%" on the "physical exam" portion of the AICM course, he was improperly and untimely given an "F" for the course. However, Dasrath has not referenced any actual or implied contract nor any contractual provision that he alleges that Ross University breached. Dasrath's failure "to identify the specific contract that [Ross University] allegedly breached makes it very difficult to properly characterize the nature of his allegations" and "this deficiency in [his] pleadings is fatal to his breach-of-contract claim." *See Chira*, 289 F. Supp. 2d at 485-86 (citing case law). Even if Dasrath had properly identified Ross University's obligation to him, merely receiving "94%" on the "physical exam" does not guarantee that Dasrath should have received a passing grade in the AICM course, just as it does not even guarantee a passing grade on the final examination if the exam itself contained multiple portions. More importantly, it is not the role of this Court to second guess the academic evaluations of professional educators.

*See Ward*, 2006 WL 1448641, at *5 ("The Court will not involve itself in a decision that has historically been left to the subjective judgment of professional educators. Because defendants are in a far better position to assess [plaintiff's] academic performance, the Court will not second guess their judgment."). Dasrath has failed to identify any contractual provision that necessitated giving him a passing grade, nor has he properly alleged that Ross University acted in an arbitrary or irrational manner nor in bad faith. Instead, Dasrath's complaint leads to the conclusion that Ross University was merely exercising its proper academic judgment by giving Dasrath an "F" in the AICM course.

As for Dasrath's claim that Ross University violated its obligation to provide him with a timely grade in his AICM course, Dasrath has again failed to allege that Ross University had any rule or provision requiring that students be provided with grades in a timely manner. Without reference to Ross University's usual procedures, it is nearly impossible for the Court to assess whether informing Dasrath of his grade in the AICM course in August, which was three months after completion of the course, was in fact exceedingly untimely. Much like the assignment of a student's grade, the date that an institution releases a grade involves academic discretion, specifically over allocating teacher and administrative resources. Even if *arguendo* Dasrath had referenced a particular provision requiring that grades to be released in a timely manner, I find that waiting three months is not so untimely such that Ross University acted in an arbitrary or irrational manner or in bad faith.

Dasrath's remaining allegations in support of his breach-of-contract claim all flow directly from his "F" in the AICM course, in that Ross University withdrew its sponsorship of Dasrath to take the USMLE and withdrew him from enrollment as a student at the university.

(*See* Docket Entry 1 ¶ 9.)  These allegations are immaterial to the resolution of Dasrath's breach-of-contract claim because Dasrath has yet again failed to allege that, once it was determined that Dasrath failed the AICM course, Ross University's subsequent actions were in breach of any contract that it had with Dasrath.  In fact, it appears that Ross University's subsequent actions were in accordance with its proscribed rules and regulations.  For instance, Ross University's Handbook provides that "students become eligible to take the USMLE Step I when they have passed all courses in the Basic Science Curriculum, *successfully completed the AICM clerkship*, and have passed the NBME Comprehensive Basic Sciences Exam."  (*See* Docket Entry 36, Attach. 6 at 13 (emphasis added).)  Similarly, Ross University's Handbook provides that the "University Registrar enters an administrative withdrawal in the student's record when any of the following apply.  The student . . . [*d*]*oes not return to the campus to register for the following semester and attend classes in Week One of a semester*."  (*See* Docket Entry 36, Attach. 6 at 23 (emphasis added).)  Dasrath has not alleged that he even attempted to re-enroll or take classes at Ross University after the spring 2006 semester.  Therefore, based on Dasrath's allegations, he has failed to adequately claim that Ross University acted arbitrarily, irrationally or in bad faith when it withdrew its sponsorship for Dasrath to take the USMLE and administratively withdrew him from enrollment.

Given the strong deference afforded to Ross University in its determination of Dasrath's grades, Dasrath has failed to state a valid cause of action for breach of contract.  Based on the totality of Dasrath's submissions, I find that amendment of the claim would be futile and leave to amend should not be granted.  Even if Dasrath is right that he should have received a passing grade in the AICM course, been permitted to take the USMLE and never should have been

administratively withdrawn from Ross University, it seems to me that this claim should only

exist as a discrimination claim under the ADA, and not as a breach-of-contract claim under New

York State law.  Permitting Dasrath to proceed on a facially inadequate breach-of-contract claim

would merely allow him to subvert the ADA's administrative exhaustion requirement, and would

impermissibly entangle this Court in Ross University's subjective judgment over grading.  I

therefore recommend that Ross University's motion to dismiss Dasrath's breach-of-contract

claim be granted.

D.    Dasrath's Fraud Claim Is Also Deficient

Dasrath alleges that Ross University committed fraud.  (*See* Docket Entry 1 ¶ 31.)  In

particular, Dasrath alleges that: (1) in May 2006, Dasrath's professor advised him that he

received a "94%" on the "physical exam" portion of the AICM course; (2) in August 2006,

Dasrath received an "F" for that AICM course; (3) Dasrath was certified by Ross University to

take the USMLE; (4) Dasrath's score was not released because he was later not authorized to

take the USMLE; and (5) Dasrath was required to take the AICM course to qualify for the

USMLE.  (*See id.* ¶¶ 7-12.)  Dasrath claims that, as a result of these intentional

misrepresentations, he was withdrawn from Ross University without cause or justification and

that his sponsorship for the USMLE was withdrawn causing his score to be withheld.  (*See id.* ¶

31.)  However, I find that Dasrath's fraud claim is insufficient on its face and thus fails to state a

claim upon which relief can be granted.

In order to prove fraud under New York law, "a plaintiff must show that (1) the defendant

made a material false representation, (2) the defendant intended to defraud the plaintiff thereby,

(3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as

a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat't Bank*, 57 F.3d 146, 153 (2d Cir. 1995). In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). This Circuit has interpreted the particularity requirement to mean that, when a complaint charges fraud, it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *see also Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998).

Moreover, Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). However, Rule 9(b)'s relaxation of the particularity requirement for scienter should not be mistaken for a "license to base claims of fraud on speculation and conclusory allegations" because the primary purpose of these requirements is to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (citations and internal quotations omitted). Accordingly, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). A "strong inference" of fraud can be established in one of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*.

Even after liberally construing the complaint and drawing all reasonable inferences in Dasrath's favor, he has failed to set forth the essential elements of a fraud claim with sufficient particularity. At best, Dasrath claims that his failing grade in the AICM course was a material misrepresentation. However, Dasrath has not offered any facts to show that this representation was untrue. The mere fact that Dasrath received a "94%" on a "physical exam" does not by necessity show that his subsequent "F" was a material misrepresentation because, for instance, the grading could have been on a curve, or Dasrath could have simply failed other portions of the AICM course. Dasrath further contends that Ross University incorrectly stated that the AICM course, as opposed to the NBME, which he passed, is the prerequisite for taking the USMLE. Dasrath is correct in that, as Ross University's Handbook makes clear, passing the NBME is a prerequisite for taking the USMLE. (*See* Docket Entry 36, Attach. 6 at 13.) However, successful completion of the AICM course is also a prerequisite for taking the USMLE. (*See id.* ("[S]tudents become eligible to take the USMLE Step I when they have passed all courses in the Basic Science Curriculum, *successfully completed the AICM clerkship*, and have *passed the NBME Comprehensive Basic Sciences Exam*.") (emphasis added).) It appears that Ross University thus fully complied with its Handbook in withdrawing its sponsorship for Dasrath to take the USMLE exam. Dasrath thus fails to identify any statements by Ross University that were untrue.

Dasrath has also failed to sufficiently plead detrimental reliance. In particular, Dasrath has not alleged that he was barred from retaking either the AICM course or the USMLE, nor that he was prevented from re-enrolling at Ross University. Dasrath's fraud claim therefore essentially amounts to his grievance over a failed grade. However, as noted above, New York

law affords educational institutions considerable deference in assigning grades and are hesitant to intervene in such academic decisions. *See Susan M.*, 76 N.Y.2d at 245. To permit Dasrath to proceed with such a grievance dressed as a fraud cause of action "would promote litigation by countless unsuccessful students and thus undermine the credibility of the academic determinations of educational institutions." *Id*. at 246-47.

Even if Dasrath had presented each of the essential elements of a fraud claim, his conclusory and vague statements in no way meet the heightened pleading standard under Rule 9(b). For instance, Dasrath has not identified any individual speakers other than his professor, and he has not indicated whether these individuals were authorized to make representations on behalf Ross University. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265-66 (2d Cir. 1993) (holding that Rule 9(b) requires a complaint to identify a speaker and show whether statement was attributable to company as opposed to individual). Far more fatal, however, Dasrath has in no way alleged facts giving rise to a strong inference of Ross University's fraudulent intent, including Ross University's motive, conscious misbehavior or recklessness. Instead, Dasrath merely claims that Ross University made statements "with knowledge that such representations were wholly false." (Docket Entry 1 ¶ 30.) Based on a liberal reading of Dasrath's submissions, Ross University was at most somewhat negligent in allowing Dasrath to register for the USMLE when he had in fact failed the AICM course. This, however, does not give rise to a strong inference of Ross University's fraudulent intent under Rule 9(b). Simply put, Dasrath has not set forth a coherent set of facts showing that Ross University acted with the requisite scienter. *See Shields*, 25 F.3d at 1128 (setting forth scienter standard).

For the same reasons that Dasrath's breach-of-contract claim should be dismissed with prejudice, I find that amendment of the fraud claim would be futile and leave to amend should not be granted. I therefore recommend that Ross University's motion to dismiss Dasrath's fraud claim be granted.

E.     Dasrath's NYEL § 296(4) Claim Should Be Dismissed

Dasrath's last claim is that Ross University violated New York's Human Rights Law, NYEL § 296(4). (*See* Docket Entry 1 ¶ 24.) In particular, Dasrath alleges that Ross University harassed and denied him use of its facilities solely on the basis of his age. (*See id.* ¶ 23.) New York's Human Rights Law, NYEL § 296(4) states that:

> It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex.

NYEL § 296(4). Dasrath alleges that Ross University holds itself out to the public as non-sectarian, as exempt from taxation and as not maintaining a policy of educating persons of only one sex. (*See* Docket Entry 1 ¶ 22.) In turn, Ross University argues that Dasrath's claim should be dismissed because: (1) Ross University is not a tax exempt entity under New York law; and (2) Dasrath has failed to sufficiently allege that Dasrath denied the use of the university's facilities because he was otherwise unqualified to take courses. (Docket Entry 36, Attach. 2 at 6-7.)

Turning to the second argument first, Ross University essentially argues that Dasrath has failed to allege that he was, in fact, harassed or unable to re-enroll at Ross University. (*Id*. at 6.) Indeed, Dasrath's complaint merely parrots the statute and contains the bare assertion that "the Defendants have harassed the Plaintiff and denied use of its facilities, whom was otherwise qualified [sic], solely upon the basis of his age." (Docket Entry 1 ¶ 23.) Dasrath has not otherwise presented any plausible facts to make out a cogent cause of action nor to contradict Ross University's claim that Dasrath failed the AICM course and was thus administratively withdrawn due to his failure to register the following semester. *See Planck v. SUNY Bd. of Trustees*, 795 N.Y.S.2d 147, 149-50 (3d Dep't 2005), *appeal denied*, 5 N.Y.3d 844 (N.Y. 2005) (upholding dismissal of NYEL § 296(4) claim where former student's complaint asserts no specific action suggesting a link between any claimed wrong and plaintiff's protected status). Dasrath's response brief devotes but one brief paragraph to the subject and, at that, impermissibly shifts his burden onto Ross University. (*See* Docket Entry 29 at 10 (citing no case law and arguing that Ross University "fails to explain how it gave Plaintiff an 'F' as a grade in a course that it claims Plaintiff never registered for and caused his being administratively withdrawn from Ross").) Dasrath's NYEL § 296(4) allegations are thus not plausible on their face to show that he was harassed and denied access to Ross University's facilities on the basis of his age. *See Iqbal v. Hasty*, 490 F.3d at 157-58 (setting forth standard for granting motion to dismiss); *Ruotolo*, 514 F.3d at 188 (same).

Based on Dasrath's submissions, I find that amendment of the NYEL § 296(4) claim would be futile and leave to amend should not be granted. I therefore recommend that Ross University's motion to dismiss Dasrath's NYEL § 296(4) claim be granted.[5]

## II.     Dasrath's Motion to Stay to the Proceedings

Dasrath requests that the Court stay the proceedings in order to satisfy the notice requirements of the ADA. (*See* Docket Entry 27 at 1; Docket Entry 35 at 1.) In particular, Dasrath argues that a stay of the proceedings is appropriate in light of the doctrine of primary jurisdiction and due to the failure of Dasrath's previous counsel to advise him of the ADA's statutory requirements. (*See* Docket Entry 35 at 1-3.) However, I am not persuaded by either of Dasrath's contentions.

It is important to note that while "the doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties," there is an important distinction as to when each of the two doctrines is applicable. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). As the Supreme Court has explained, "'primary jurisdiction' . . . applies where a claim is *originally cognizable in the courts* and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative

[5] As for Ross University's other arguments, I make no recommendations except to note that Ross University claims that it is not tax exempt under New York law. While this is an inadequate basis to dismiss Dasrath's claim on a Rule 12(b)(6) motion, if true, it likely would prove fatal on a Rule 56 motion for summary judgment. Thus, in the alternative to granting Ross University's motion to dismiss Dasrath's NYEL § 296(4) claim for the reasons above, I recommend that the parties engage in limited discovery solely on the issue of Ross University's incorporation and tax exemption status under New York law.

body . . . ." *Id*. at 63-64 (emphasis added); *see also Reiter v. Cooper*, 507 U.S. 258, 268 (1993). In those instances, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *W. Pac. R.R.*, 352 U.S. at 64. The doctrine of exhaustion of administrative remedies, on the other hand, "applies where a claim is *cognizable in the first instance by an administrative agency alone*; judicial interference is withheld until the administrative process has run its course." *Id.* at 63 (emphasis added); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).

The Supreme Court has emphasized that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter*, 507 U.S. at 269 (citing *Heckler v. Ringer*, 466 U.S. 602, 619 (1984); *Myers*, 303 U.S. at 50-51). This is because exhaustion of administrative remedies prevents "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Cruz v. Jordan*, 80 F. Supp. 2d 109, 120 (S.D.N.Y. 1999) ("In general, exhaustion of administrative remedies is the rule, and waiver the exception, because exhaustion serves myriad purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and preventing the 'frequent and deliberate flouting of administrative processes that could weaken the effectiveness of an agency.'") (quoting *McKart v. United States*, 395 U.S. 185, 193-95 (1969)). The Court of Appeals for the Second Circuit has also noted that "when Congress has entrusted the regulation of certain subject matter under a

statute to an administrative agency, it is often counterproductive for a court to act upon that subject matter without the benefit of knowing what the agency has to offer." *Gen. Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987). Additionally, "courts and administrative agencies should not act at cross purposes lest they become 'wholly independent and unrelated instrumentalities of justice, each acting without regard to the appropriate function of the other.'" *Id*. (quoting *United States v. Morgan*, 307 U.S. 183, 191 (1939)).

Congress, in 42 U.S.C. § 6104(e)(2), explicitly provided that no action under the ADA shall be brought in any United States district court if administrative remedies have not been exhausted. Dasrath's ADA claim is thus not "originally cognizable in the courts" but rather "cognizable in the first instance by an administrative agency alone." *W. Pac. R.R.*, 352 U.S. at 63-64. Therefore, the doctrine of primary jurisdiction is inapplicable and it becomes unnecessary to evaluate the four factors emphasized in *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006), which were discussed in Dasrath's papers. (*See* Docket Entry 27 at 2; Docket Entry 35 at 2.) More importantly, because Dasrath has failed to comply with the ADA's statutory notice requirements and exhaust his administrative remedies, his "suit is premature and must be dismissed" rather than stayed.[6] *See Reiter*, 507 U.S. at 269. I therefore recommend that Dasrath's motion to stay the proceedings be denied.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) Ross University's motion to dismiss be granted, and Dasrath's case be dismissed in its entirety; and (2) Dasrath's request to stay the

---

[6] Dasrath also argues that the Court should stay the proceedings because Dasrath's previous counsel failed to inform him of the ADA's statutory requirements. (*See* Docket Entry 27 at 2.) However, Dasrath cites no authority or case law in support of this argument.

proceedings be denied.  Any objections to the recommendations made in this Report must be

filed with the Clerk of the Court and the Chambers of the Honorable Carol B. Amon within ten

business days of receiving this Report and Recommendation.  Failure to file timely objections

may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: August 6, 2008**
      **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**