UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
------------------------------------------------------------X Case No. 07-2433
ANAND DASRATH,

Plaintiff,

--against--

ATTORNEY AFFIRMATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ROSS UNIVERSITY SCHOOL OF MEDICINE

Defendant
------------------------------------------------------------X

**JOSEPH R. COSTELLO** an attorney admitted to the practice in the Eastern District Court of New York, hereby affirms the following under the penalties of perjury:

1. I am the attorney for the Plaintiff and as such, am fully familiar with the facts and circumstances of this matter by reason of a file maintained by me in my office.

2. This Affidavit is being submitted in support of the Plaintiff's Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and for such other and further relief as this Court deems just and proper.

**PROCEDURAL HISTORY**

3. The above action was commenced on or about June 15, 2007 by service of a Summons and Complaint.

4. At the time of the initial filing the Plaintiff, Anand Dasrath (Hereinafter referred to as "DASRATH") was represented by Bradley M. Zelenitz, Esq.

5. The initial Summons and Complaint alleged the following causes of action: ***A copy of said Summons and Complaint is annexed hereto as Exhibit "A"***.

6. On September 11, 2007 a Pre-Motion Conference was scheduled for October 4, 2007 before the Hon. Carol B. Amon.

7. On October 4, 2007 said conference was held and a scheduling order was entered as follows: Defendant's Motion to Dismiss will be served on November 2, 2007; opposition due by November 30, 2007; Reply due December 7, 2007 and oral argument is scheduled for December 20, 2007.On October 31, 2007a letter by Defendant Ross University School of Medicine

(Hereinafter referred to as "ROSS") requesting an adjournment of the current briefing schedule for its Motion to Dismiss was granted and a revised briefing schedule was approved.

8. Oral argument on Ross' Motion to Dismiss was now scheduled for February 1, 2008.

9. However, on December 26, 2007 Attorney Bradley M. Zelenitz, by Order to Show Cause moved this Court to be relieved as Dasrath's counsel.

10. This application was granted on January 9, 2008. As part of this hearing, the Court granted Anand until February 15, 2008 to retain new counsel and file a Reply to Ross' Motion to Dismiss.

11. On January 18, 2008, Ross sought an extension of time to file a joint status report and same was granted on same day extending Ross' time to February 1, 2008. As part of the same Order, Anand now had until February 29, 2008 to seek new counsel and file a Reply to the aforementioned Motion.

12. Eventually, on May 15, 2008 Anand retained Albert Adam Breud, II, who on May 20, 2008 made application to stay these proceedings. This application, together with Ross' Motion to Dismiss was referred to Magistrate Judge Reyes for a report and recommendation on May 23, 2008.

13. Between May 23, 2008 and June 16, 2008 letters were exchanged between the parties and the Court requesting extensions of time to submit the Motion, file Opposition papers as well as Reply papers.

14. On June 16, 2008 the Motion was referred to Magistrate Judge Reyes for a report and recommendation.

15. From June 16, 2008 to August 23, 2008 additional documents in support of and in opposition to Ross' Motion to Dismiss were exchanged between parties.

16. On March 27, 2009 Attorney Breud, II filed by Letter, a Motion seeking to be relived of counsel.

17. On March 31, 2009 an Order adopting in part the Report and Recommendations as to Ross' Motion to Dismiss was entered. Said Order granted Ross' dismissal of the ADA claim for lack of subject matter jurisdiction. Said granting was made with prejudice to refilling after Anand complied with the ADAs notice and administrative exhaustion requirements. That part of

the Motion which sought dismissal as to the breach of contract claim, fraud and violation of New York Human Rights claims was granted. Anand's request to stay the proceedings was denied.

18. However, the Report and Recommendation was modified to provide Anand leave to file an amended complaint as to all claims within thirty (30) days of March 31, 2009.

19. On April 30, 2009 oral argument was heard on Attorney Breud's application to be relived of counsel. This application was granted and a status conference was scheduled for May 6, 2009 at 2:00PM.

20. On May 6, 2009, your deponent first appeared in this matter and made application to file an amended complaint to June 17, 2009. This application was granted and a briefing schedule was entered into at that time.

21. On June 17, 2009 your deponent's office requested an extension of time to file an amended answer. Over objection by Ross' counsel, and having submitted an amended complaint on June 17, 2009, the Court considered Ross' opposition moot.

22. Thereafter, this case proceeded predicated on the amended Summons and Complaint filed on June 17, 2009. ***A copy of said Amended Complaint is annexed hereto as Exhibit "B".***

23. On September 28, 2009, Ross filed a Motion to pursuant to 12(b)(1) and (6) seeking dismissal of the Amended Complaint. ***A copy of said Motion is annexed hereto as Exhibit "C".***

24. On May 7, 2010 oral argument was heard on Ross' Motion. The Court dismissed Dasrath's 1st, 3rd, and 4th causes of action. It was further Ordered that the parties are to proceed with discovery on Dasrath's breach of contract action. ***A copy of said Order is annexed hereto as Exhibit "D".***

25. On May 28, 2010, Ross served its Answer upon your deponent. ***A copy of said Answer is annexed hereto as Exhibit "E".***

26. Thereafter, the parties proceeded with Discovery.

27. On June 11, 2010 a Status Conference was held wherein it was ordered that Discovery is to close on October 29, 2010.

28. Thereafter depositions of Anand, Dr. Nancy Perri and Dr, Enrique Fernandez were held.

29. Subsequent to the depositions both sides requested documents from each other as a follow up to the respective depositions held herein.

30. It is to be noted that your deponent has made a demand upon Ross' counsel for Anand's actual exams, but to date a response has not been received although demand has been made via email to Justin Capuano, Esq. on February 24, 2011.

31. For the recitation of facts relevant to this matter, and so as not to burden the Court with repetition, your deponent respectfully refers the Court to the Affidavit of the Plaintiff, Anand.

32. For the applicable law in Support of Anand's Motion, your deponent refers this Court to the memorandum of law submitted herewith.

33. This Affirmation will supply relative facts taken from the various depositions held herein as well the procedural merits of this case.

**GROUNDS FOR BREACH OF CONTRACT**

34. Dasrath's argument that Ross breached a contract arises from an implied contract which arose when Anand applied for, and was accepted to Ross to receive a degree in medicine.

35. Upon admission to Ross and registration for courses, an implied contract was created between the student and Ross. Namely, the student would pay tuition and Ross would educate, train and prepare him to complete his Medical Degree Program and become a licensed doctor.

36. Plaintiff paid his tuition and fees but Ross failed to fulfill its obligations to the point that it became destructive to Dasrath's intended career, which is briefly outlined below:

1) Ross prepared Dasrath and allowed him to complete the Basic Science curriculum;

2) Ross registered Dasrath for the AICM course in the spring of 2006, allowed him to complete the course on April 7, 2006, and issued a Certificate of Completion;

3) Ross prepared Dasrath and allowed him to sit for and complete the NBME examination;

4) Ross congratulated Dasrath and instructed him to sit for the USMLE Step I exam within the period May 1, 2006 through July 31, 2006;

5) Through an application process, Ross certified Dasrath and sponsored him for the USMLE Step I exam;

6) Thereafter, in several separate instances, Ross persisted on a path of destruction of Dasrath's medical career while there was an on going court case in the matter. This included but was not limited to, falsely accusing Dasrath of failure to complete the AICM course,

issuing an Administrative Withdrawal letter on false pretenses without any prior warning, and issuing a failing grade for a clinical clerkship course which does not exist in the state of Florida where the AICM course was allegedly taken; at an identified address which is in fact the office address of Dr. Enrique Fernandez, the Assistant Dean of Clinical Sciences of Ross. Additionally, Dr. Fernandez claimed he signed the clinical clerkship form but that "the handwriting part of the form" is not his.

7) A falsified Administrative Withdrawal letter was used to withdraw sponsorship of Dasrath for the USMLE Step I exam given on August 14, 2006, after the claimant had taken the exam on July 27, 2006.

8) Ross proceeded in an attempt to have the student barred from becoming a licensed doctor by supplying false and/or misleading information to the United States Medical Licensing Examinations/Examination Commission for foreign Medical Graduates (Hereinafter referred to as the "USMLE/ECFMG") USMLE/ECFMG Office.

37. At Dasrath's depostition, Ross produced court papers in which Ross attempted to claim that Dasrath was warned that his sponsorship for taking the USMLE Step I would be withdrawn. ***A copy of said papers are annexed hereto as Exhibit "F".***

38. However, Ross was never able produce, whether at Dasrath's deposition or the depositions of Dr. Perri or Dr, Fernzndez, and as subsequent demands any proof whatsoever that Dasrath ever failed any part of the AICM course.

39. Nor was Ross able to produce documentation warning of an impending Administrative Withdrawal or impending withdrawal of certification and sponsorship for taking the USMLE Step I.

40. Thus, Ross has failed, and continues to fail to comply with the implicit terms of its responsibility to its students, in particular, Dasrath.

41. On January 9, 2008, the Honorable Judge Ramon Reyes ordered Dr. Nancy Perri, the Dean of Clinical Sciences of Ross at that time, to review the AICM grade issued to the Plaintiff. Dr. Perri issued a statement "concurring" with Dr. Fernandez's failing grade on January 24, 2008. ***A copy of Dr. Perri's statement is annexed hereto as Exhibit "G".***

42. At the time, it was known that both Dr. Perri and Dr. Fernandez were aiding and abating each other in fabricating a failing grade in order to prevail in the on going lawsuit and to set Dasrath up for barring from medical licensure by the USMLE/ECFMG.

43. On March 26, 2008, the Hon. Judge Ramon Reyes ordered Dasrath to provide proof of passing all five certification courses to Ross, which he did in fact comply with on March 27, 2008.

**DR. PERRI'S DEPOSITION**

44. At page 28 lines 12 through 16, Dr. Perri confirmed that after the student completes the AICM course they are then required to take the USMLE Step I. ***A copy of the relevant portion of Dr. Perri's deposition is annexed hereto as Exhibit "H".***

45. In Dr. Perri's deposition, she could not substantiate reasons for issuing a failing grade and Ross' counsel claimed that they were not in possession of the proof of passing the five certification courses.

46. In fact, Ross, through its attorneys requested another copy of these certifications. *See Dep. of Dr. Fernandez P. 70 Lines 16-21.* ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "I".***

47. This request was complied with on March 27, 2008 when your deponent, via FedEx mailed a copy of said certifications on March 27, 2008.

48. Furthermore, this request was complied with when Ross was sent an interrogatory for a second time. ***A copy of said Interrogatories are annexed hereto as Exhibit "J".***

49. It was again requested in Plaintiff's Demand for Documents dated October 22, 2010 and propounded on Ross' counsel. ***See Exhibit "J".***

50. Ross repeatedly denied having the copies. Ross's counsel even furiously opposed the surfacing of this "review" by Dr. Perry stating that it was not intended for court. Obviously, this review was a hoax.

51. On August 11, 2010, on demand, Ross produced a Clinical Clerkship Evaluation. It is argued herein that this Clinical Clerkship Evaluation is not possible for Dasrath to have received given his status as a student during the time he allegedly participated in said Clerkship. ***A copy of the Clinical Clerkship Evaluation is annexed hereto as Exhibit "K".***

**DR. FERNANDEZ'S DEPOSITION CONFIRMED THAT PLAINTIFF COMPLETED THE AICM COURSE AND THAT THE FAILING "CLINICAL CLERKSHIP EVALUATION" WAS A FABRICATION**

52. Regarding the AICM grade, Dr. Fernandez was asked at his deposition on page 12, line 10, "When is the grade given?" to which he answered in lines 11 to 12 of the same page, "It is given approximately two weeks after the conclusion of the course." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "L".***

53. This time interval excluded the failing "Clinical Clerkship Evaluation" submitted on June 23, 2006 and stamped June 27, 2006. ***See Exhibit "K".***

54. The Administrative Withdrawal letter was issued on June 29, 2006. Thus, the allegedly failing grade issued on June 23, 2006 would serve to facilitate it.

55. In essence, because Ross excluded the fabricated Clinical Clerkship Evaluation, it is able to exclude the other grade submissions, thus negating the effect of the Clinical Clerkship Evaluation.

56. This includes the April 22, 2006 internet posting of a failed grade, the April 24, 2006 Memorandum supporting a failed grade, the June 23, 2006 defamed "Clinical Clerkship Evaluation" itself and any other earlier or later fabrications such as the spread sheet that surprisingly emerged on Dr. Fernandez's deposition on October 21, 2010. ***A copy of the spreadsheet is annexed hereto as Exhibit "M".***

57. As further proof that Dasrath could not have failed the AICM course, Dr. Fernandez testified, on page 13, lines 20 to 21 that Dasrath "Completed 12 weeks of Advanced Introduction to Clinical Medicine." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "N".***

58. Again on page 14 lines 13 to 14 Dr. Fernandez admitted, "He completed 12 weeks of Advanced Introduction to Clinical Medicine." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "O".***

59. For a third time on page 42, lines 19 to 21 Dr. Fernandez was asked, "In order to be able to sit for the USMLE Step one, obviously he had to pass the AICM?" to which Dr. Fernandez replied on page 42, line 22, "Yes." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "P".***

60. For a fourth time on page 43 line 24, Dr. Fernandez was asked, "Dr. Fernandez, in order to sit for the USMLE a student has to be certified in the AICM, correct?" to which Dr. Fernandez replied on page 44 line 3, "A student has to pass AICM." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Q".***

61. It is therefore conclusive that the Plaintiff did indeed complete the AICM course; which in turn allowed Ross to sponsor Dasrath to sit for and take the USMLE Step I on July 27, 2006.

62. Regarding the fabricated failing Clinical Clerkship Evaluation dated June 23, 2006 and stamped June 27, 2006 Dr. Fernandez was asked on page 56 lines 5 to 6, "Was he (Dasrath) enrolled in Clinical Clerkship?" to which Dr. Fernandez replied, "No." ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "R".***

63. Again on page 56 lines 20 to 21 Dr. Fernandez was asked, "Was Mr. Dasrath ever assigned to a hospital for Clinical Clerkship?" to which Dr. Fernandez replied "No." ***See Exhibit "R".***

64. Therefore, Dr. Fernandez has admitted that Dasrath was never enrolled in a Clinical Clerkship course; nor did he complete a Clinical Clerkship course in a hospital. It is conclusive that the Clinical Clerkship course was fabricated. This explains why Ross cannot produce any of the examination papers it claims shows a failing grade. Instead, Ross has produced these spread sheets, which in reality, are nothing more than fabrications.

65. These fabrications include the April 22, 2006 failing grade, which, in violation of FERPA was posted on the internet; the April 24, 2006 Memorandum in support of the alleged failing grade; the June 22, 2006 Clinical Clerkship Evaluation stamped June 27, 2006.

66. On December 17, 2010 your deponent, as a follow up to Dr. Fernandez' deposition, propounded a demand for the ***actual*** exams taken by Dasrath. ***A copy of said demand is annexed hereto as Exhibit "S".***

67. To date, these examinations have not been provided. The reason is simple. Ross is not able to produce an exam reflecting a failing grade for it does not exist. However, if such an exam is produced, Dasrath is requesting that this exam together with the questions be reviewed by an independent medical school at his cost.

68. In Dr. Fernandez's deposition he could not substantiate the Clinical Clerkship Evaluation certification. This "Clinical Clerkship Evaluation," allegedly incorporates all of Dasrath's failing grades into a failing grade issued for the AICM course.

69. However, Dasrath testified at his deposition that he took the AICM course in Miami, Florida, but he was not registered for any Clinical Clerkship course and did not do a Clinical Clerkship course there. *See Pl. Dep. P.71 Lines 23 - 24.* ***A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "T".***

70. Furthermore, Dasrath was not registered by Ross to do the Clinical Clerkship Course. It is clear that the form used to report his grade is a deliberate attempt to fabricate a failing grade in a manner that is difficult to challenge since clinical clerkship grading is a subjective process depending on the personal opinion of the instructor and not subjected to objective challenges as can be seen on the grading procedure indicated on the form itself.

71. On page 59, lines 3-4, of his deposition, Dr. Fernandez admitted that he signed the form but that he was never an instructor to any clinical clerkship course as the form stated, making the grade evaluation a total fabrication. ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "U".***

72. As per pages 5 to 6 of the Student Handbook regarding grading, Ross had an obligation to accurately report student grades. ***A copy of the relevant portion of the handbook is annexed hereto as Exhibit "V".***

73. Thus, it cannot be disputed that Ross is in breach of contract.

74. Upon information and belief, Dr. Fernandez is Board Certified in the field of Family Practice but has never been Dasrath's clinical instructor in Family Practice in any hospital. This because Dasrath has never registered to do or ever did any Family Practice Clinical Clerkship yet. *See Pl. Dep. P. 56 Lines 20-21.* ***A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "W".***

75. The hospital implicated in the form was identified as the Greater Miami Health Education & Training Centers (Hereinafter referred to as the "HETC Hospital."). Upon information and belief, there is no such hospital in the state of Florida, the alleged state of the Clinical Clerkship.

76. The address used for the "HETC Hospital," 7000 SW 62nd Avenue, PH-A, Miami, Florida, 33143, is in fact, Dr. Fernandez's private penthouse office (this is what PH-A refers to)

in an office building. At Dr. Fernandez's deposition, page 4, lines 13-14, and again on page 59 lines 10-11, Dr. Fernandez admitted that this address is his office address. This is not a hospital's address. ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "X".***

77. Because such a hospital does not exist, it is not possible for Dr. Fernandez to have been the "Director of Medical Education" as he has stated on the evaluation form.

78. At his deposition, page 7 lines 4-5, Dr. Fernandez testified that he was the Assistant Dean of Clinical Sciences at Ross University School of Medicine, and not the Director of Medical Education as set forth on the HETC evaluation form. ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Y".***

79. At the very least, Dr. Fernandez has misrepresented himself in furtherance of Ross' intention to issue Dasrath a failing grade in the AICM course.

80. Ross claims that it employs "professional educators". Therefore it has an obligation to accurately report Dasrath's grade. Ross, by its very own actions breached this obligation.

81. Considerable effort appears to have gone into the fabrication of the Clinical Clerkship Evaluation form. In the Comment section of said form, Dr. Fernandez made comments as if he was a clinical instructor supervising a clinical clerkship student in a hospital, which Dasrath was not.

82. It should be noted that he made subjective comments by handwriting in the same way that a clinical instructor in a hospital who does not have access to Ross's computer system via a log-on ID and password would.

83. It should also be noted that upon information and belief Dr. Fernandez does have access to Ross's computer system via a log-on ID and password. Furthermore, other parts of the form were filled in by computer, and Dasrath's photograph was generated by computer from Ross's roster of student IDs. In fact, these forms are printed in triplicate copies, and the individual sheets are white, yellow and blue. One sheet, the top white copy is for Ross's Registrar's Office in New Jersey, as stated on the form, one sheet is for the student, and one sheet is for the hospital at which the student completed the clinical clerkship.

84. In this particular case, it would appear that Ross produced a single copy and dated it June 23, 2006 and entered it into the Plaintiff's student record on June 27, 2006

85. Numerous inconsistencies with regard to this form point to a grade fabrication scheme perpetrated by Ross. First, the clinical clerkship grading sheet is dated June 23, 2006. However, a note at the bottom of the same form states "must be returned within 1 month of completion of the rotation."

86. The AICM course was completed on April 7, 2006. June 23, 2006 is more than two months after the completion of the AICM course.

87. Second, since Dasrath did not take the USMLE Step 1 until **July 27, 2006**, and a USMLE Step I licensure must be obtained before beginning a clinical clerkship course, how could Dasrath have even been registered for a clinical clerkship rotation? At page 60, lines 5-7 of his deposition, Dr. Fernandez changed his testimony knowing that the Plaintiff was an AICM student. ***A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Z".***

88. Third, if this form was genuine, where are the other two sheets of the triplicate document? The alleged HETC Hospital does not exist in the state of Florida; nor did Dasrath ever receive one.

89. Fourth, if Dasrath had indeed failed the AICM, how could he have obtained certification on May 5, 2006 to sit for the USMLE Step I Exam given on July 27, 2006? It would not be possible for Ross to issue such a certification unless Ross was setting him up and thus precluding him from the USMLE Office. This feat was almost accomplished but if not for an appeal filed by Dasrath.

90. Fifth, why would the Administrative Withdrawal letter state "Withdrawn from Ross University School of Medicine for failure to register for the May 2006 AICM course" after the student had completed the AICM on April 7, 2006 and received a Certificate of Completion. That statement in the Administrative Withdrawal letter does not stand to reason.

**ARGUMENTS IN SUPPORT OF THE ADMINISTRATIVE WITHDRAWAL LETTER BEING FALSE AND MISLEADING IN NATURE**

91. In the first sentence of the Administrative Withdrawal, it states "Effective immediately, you have been administratively withdrawn from Ross University School of Medicine for failure to register for the May 2006 AICM course." ***See Exhibit "A1"***. Not only is this statement false, but it is also misleading for the following reasons:

1) This letter is "effective immediately" and NO prior warning was issued. At the time this letter was issued, Dasrath was enrolled as a student at Ross. As such, he depended on the guidance of Ross for progression and completion toward his M.D., and ultimately for the ability to sit for the state licensing board

2) The letter is dated June 29, 2006 and in Ross' Student Handbook of Academic Rules and Regulations (Student Handbook), it is stated at page 9, "Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled." As of April 7, 2006, the Plaintiff had already completed the AICM course. It is quite obvious that June 29, 2006 falls within this 17-week period. Therefore, Ross breached the regulations as set forth by the Student Handbook. ***A copy of the relevant portions of the Student Handbook is annexed hereto as Exhibit "B1".***

92. In the third sentence of this letter, it is stated, "In order for a student to remain enrolled at RUSM, (Ross) they must either be registered for courses and/or registered for the Boards." Indeed, Dasrath was at the time registered for the USMLE Step I, which is referred to here as the "Boards." And as stated in the previous sentence, students must "pass USMLE Step I before advancing into the clinical curriculum."

93. It is further stated at page 13 of the Student Handbook that "students are required to take and pass the USMLE Step I in no more than three attempts and within one calendar year of becoming eligible." In her deposition on page 57, lines 8-13, Dr. Perri verified that the approved period in which Dasrath was supposed to sit for the USMLE Step I for the first time was May 1 to July 31, 2006. ***A copy of Dr. Perri's relevant portion of her deposition is annexed hereto as Exhibit "C1".***

94. On March 20, 2006 and again on April 27, 2006, Ross certified and sponsored him to sit for the USMLE Step I exam to be given on July 27, 2006. ***A copy of the Certifications are annexed hereto as Exhibit "D1".***

95. Indeed, the Plaintiff took the exam on July 27, 2006 as stipulated by Ross.

96. In sentence four of the Administrative Withdrawal letter, it is stated, "Once a student becomes inactive, they are administratively withdrawn from RUSM (Ross)". However Dasrath was not inactive, but was instead, preparing for the USMLE Step I like the other students in the class. *See Pl. Dep. P.131 Lines 3-6.* ***A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "E1".***

97. In reality, the administrative withdrawal letter, in conjunction with the certification and sponsorship to take the USMLE Step I became a well calculated plan to preclude Dasrath from achieving his goal of becoming a medical doctor.

98. It is undisputed that Dasrath complied with Ross's stipulation that he take the USMLE Step I as certified, sponsored and, not only upon the recommendation of Dr. Fernandez but also as directed by Ross. However, his certification and sponsorship was withdrawn on August 14, 2006; at about the same time his score was scheduled to be released.

99. On August 14, 2006 Ross issued a letter to the ECFMG stating that he is "no longer eligible, withdrawn." ***A copy of said letter is annexed hereto as Exhibit "F1".***

100. If Dasrath had not taken the USMLE Step I when directed to do so by Ross, then Ross would have also been left with the option of administratively withdrawing him for exhausting the time period allocated for taking the USMLE Step I; in this case, May 1, 2006 to July 31, 2006. In that instance, a student may not have been readmitted upon re-application for re-admission on the grounds of being "inactive"; which Ross indicated in the fourth sentence of the Administrative Withdrawal letter.

101. Thereafter, Ross submitted false and/or misleading information to the ECFMG in an attempt to permanently preclude Dasrath from obtaining his medical degree. It is to be noted that he has appealed this issue. The outcome of that Appeal is stayed pending the outcome of this action.

102. Furthermore, Ross forwarded the application documents to the ECFMG office in Philadelphia, Pennsylvania. By doing so, Ross has certified to this governing body that the Dasrath was and is eligible to sit for the USMLE Step I exam.

103. Ross confirmed that all three requirements as stated on page 13 of the Student Handbook were checked and satisfactorily complied with. Otherwise, Dasrath could not have been certified to take the USMLE Step I. Thus, he was left with no other choice but to follow the instructions of Ross. ***A copy of the relevant portions of the handbook are annexed hereto as Exhibit "G1".***

104. Ross posted a failing grade for the Plaintiff on the Internet on or about April 22, 2006. ***See Exhibit "".*** However, this grade is not valid for the following reasons:

1) The grade was posted on the Internet and Ross "follows the guidelines of the US Family Educational Rights and Privacy Act (FERPA)" as stated on page 25 of the Student Handbook. FERPA stipulates that student grades may not be posted on the Internet as it violates the students' privacy;

2) The grade distribution did not list any failing grades for the class. It would be inaccurate and misleading for Dasrath to be in the class and not have his grade listed regardless of whether he passed or failed;

3) As previously stated, at page 25 of the Student Handbook, FERPA stipulates that a student has "the right to request the amendment of the student's education records that the student believes are inaccurate and misleading" which Dasrath had already done by informing Dr. Fernandez of the inconsistencies. The above facts were testified to by Anand at his deposition. ***See Exhibit "H1".***

105. It must also be emphasized that Ross has adopted FERPA, as stated on page 25 of the Student Handbook. In this case the AICM course grade can no longer be retrieved from the internet. Thus, Ross has violated FERPA, breached the Student Handbook Regulation regarding its commitment to student privacy, and is therefore in breach of contract with the student for violation of Title 9, of the United States Education law.

106. Concerning the memorandum that surfaced on November 22, 2006, if in fact this memorandum was written on April 24, 2006, it should have been released to Dasrath shortly thereafter. This was never done.

107. In addition, if the aforementioned memorandum did exist on April 24, 2006, it is in violation of the FERPA, which Ross has adopted on page 25 of the Student Handbook, since more than forty-five (45) days had elapsed from its alleged writing and placement in the Plaintiff's student record on April 24, 2006 and it surfacing for the first time on November 22, 2006.

108. In the memorandum, it is stated "Dr. Fernandez told Dasrath he would have to repeat the semester," implying that the Plaintiff failed the AICM course. This is invalid for several reasons.

1) Dr. Enrique Fernandez himself issued the certificate of completion for the AICM Course. ***A copy of the certificate of completion is annexed hereto as Exhibit "I1".***

2) Furthermore, as stated above, Dasrath was issued a Certification and Sponsorship by Ross to take the USMLE Step I on July 27, 2006, and did so on said date. It was not until August 14, 2006, that this Certification was withdrawn. Thus Ross has breached its own regulations and in doing so has breached its contract with Anand.

109. In conclusion, it is stated in the Administrative Withdrawal letter at the second sentence, "RUSM (ROSS) policy dictates that students must successfully complete the AICM course, and pass the USMLE Step I exam before advancing into the clinical curriculum."

110. Since the Plaintiff was not USMLE Step I licensed in the Spring of 2006, it was not possible that the Plaintiff could have done a Clinical Clerkship Course. Therefore, the failing Clinical Clerkship Evaluation issued to the Plaintiff as stated above is fictitious. This was already proven above.

111. Furthermore, the Certification and Sponsorship by the Registrar's Office for the Plaintiff to take the USMLE Step I was appropriate. The fulfilling of the requirements to take the USMLE Step I exam as stated on page 13 of the Student Handbook was accomplished and now the wording of the Administrative Withdrawal letter confirms that the Plaintiff could not have failed a Clinical Clerkship Course because he could not have taken a Clinical Clerkship Course without having passed the USMLE Step I exam.

112. Therefore, the failing Clinical Clerkship grade was a fabrication. As such, Ross was not justified in withdrawing its certification and sponsorship of Anand in sitting for the USMLE Step I exam.

113. Ross therefore could not have been justified in issuing an Administrative Withdrawal letter based on a fictitious failing clinical clerkship evaluation for which Dasrath was not only not registered to do, but did not pay tuition for this clerkship; did not take the clerkship at an alleged hospital; and, was not licensed for said clerkship.

114. Also, at the deposition of Dr. Fernandez, he testified that he did not supervise Dasrath for any clinical clerkship course. *See Dep. of Dr. Fernandez P.56 Lines 4-6.* ***See Exhibit "R"***.

115. Further, the failing Clinical Clerkship Evaluation is in violation of Ross' grading procedure outlined at pages 5 to 6 of the Student Handbook. Said procedure implies fairness and accuracy in grading, not arbitrary and fictitious grading.

116. Thus, Ross had an obligation to accurately report the Plaintiff's AICM grade but failed to do so. It has used a failing fictitious clinical clerkship grade as reason to issue an Administrative Withdrawal letter which is therefore unfounded, then used this unfounded Administrative Withdrawal letter to as reason to withdraw certification and sponsorship of Dasrath for taking the USMLE Step I exam which he had taken weeks prior to the issuance of said letter.

117. The intended goal of Ross was to block the release of Dasrath's score and thereby preclude him from achieving his goal of becoming a medical physician, contrary to the reasons of why he made application to Ross.

118. In light of the foregoing, it is respectfully requested that the Court grant the Plaintiff's Motion in its entirety.

119. No prior application for the relief sought herein has been made.

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
March 2, 2011

**COSTELLO & COSTELLO, P.C.**
**BY: JOSEPH R. COSTELLO**
Attorneys for the Plaintiff
5919 20th Ave.
Brooklyn, N.Y. 11204
(718) 331-4600
Our File No. 6970