UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
----------------------------------------------------------------X     Case No. 07-2433
ANAND DASRATH,

Plaintiff,

PLAINTIFF'S AFFIDAVIT IN SUPPORT
--against--                                                    OF MOTION FOR SUMMARY
                                                                          JUDGMENT

ROSS UNIVERSITY SCHOOL OF MEDICINE

                              Defendant.
----------------------------------------------------------------X
STATE OF NEW YORK      )
                       )     SS.:
COUNTY OF KINGS        )

        ANAND DASRATH, being duly sworn deposes and says:

        1.  I am the Plaintiff in the above entitled matter and submit this Affidavit in Support of my

Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and

for such other and further relief as this Court deems just and proper.

        2.  In the spring of 2003 I applied to Ross University School of Medicine (Hereinafter

referred to as "ROSS"). *See Pl. Dep. at PP. 11 Lines 22-25 P. 12 Lines 1-3. A copy of the

relevant portions of my Deposition is annexed hereto as Exhibit "J1".*

        3.  My goal in applying to Ross was to become a medical doctor.

        4.  I thereafter submitted an application form and college transcript.

        5.  Later in the spring of 2003, I received an acceptance letter from Ross. *A copy of said

acceptance letter is annexed hereto as Exhibit "K1".*

        6.  Although I was accepted to begin classes at Ross beginning in May 2003, I had to defer

said acceptance due to a death in my family. Therefore, my studies with Ross did not begin until

May 2004. *See Pl. Dep. at P. 14, lines 10-24. A copy of the relevant portions of my Deposition

is annexed hereto as Exhibit "L1".*

        7.  Beginning in May 2004, I began my studies with Ross at its campus in Dominica,

specifically, in its medical school program.

- 1 -

8. My first semester studies consisted of basic science courses; which entails the theoretical part of medicine. *See Pl. Dep. at P. 16, lines 5-14.* ***A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "M1".***

9. I also took Biochemistry, Medical Genetics, Histology and Patient Doctrine Society.

10. The semester ended at the beginning of August, 2004. At the end of this semester, I was issued a final grade in genetics of "B plus". I was thereafter on break until the next semester. *A copy of my transcript reflecting this grade is annexed hereto as Exhibit "N1".*

11. When I returned to campus after the recess, I was issued a failing grade in Genetics. However, I was not given a reason for such failing grade. *See Pl. Dep. at P 18, Lines 2-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "O1".*

12. At the beginning of the next semester, my second semester, I made several attempts to discuss this grade with Dr. Houghton. When I was finally able to meet her to discuss this failing grade, she essentially laughed in my face and said that there is nothing she can do about it. *See Pl. Dep. at PP. 24-Lines 13-25; P. 25, Lines 1-21. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "P1".*

13. Not being satisfied with this response, I spoke to Dr. Larsen, who, at the time was in charge of the Genetics department. After explaining my issue to him and showing him my transcript, he stated that he did not assign a failing grade to me for this course. *See Pl. Dep. at PP. 25-Lines 22-25; P. 26, Lines 1-16. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Q1".*

14. After several more attempts to discuss this alleged failing grade with others at Ross, I was able to meet and speak with Dr. Meisenberg, the Chairman of the Biochemistry Department, under which the Genetics department is administered. He accompanied me to the Examination Center, where I met Dr. Desalu, the individual responsible for the administration of the Examination Center.

15. At this time, Dr. Desalu informed Dr. Meisenberg that there seems to be a problem with my grade.

16. He then told Dr. Meisenberg that he "doesn't' follow their procedures". *See Pl. Dep. at P. 29 Lines 13-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "R1".*

- 2 -

17. By the tone of Dr. Desalu's voice, it became obvious to me, that I was not going to be able to resolve this issue. At this time, Dr. Meisenberg asked Dr. Desalu and I to leave the office.

18. I thereafter completed semesters two through four at Ross.

19. The first four semesters at Ross constitute the Basic Science Curriculum.

20. Usually, within two (2) weeks after the completion of a semester, I would receive a final transcript in the mail.

21. If I had an issue with any of my grades, I would attempt to contact Dr. Deaslau or Dr. Alemdia, my student advisor. On each occasion, I was rebuffed at trying to have my issue resolved. In fact, on several occasions I was asked to leave the office. At times I was told not to make an issue of my grades because I could be kicked out of the School.

22. In September 2005, I started my fifth semester, which happens to be the last semester of the Basic Science Curriculum. During this semester I took Introduction to Clinical Medicine (ICM), Pathology 2, Microbiology/Immunology 2 and, Pharmacology 2.

23. After completing my fifth semester in December of 2005, I left Dominica and returned to my home in Queens, New York.

24. I was issued an incomplete grade for the ICM course.. However, I did not learn of this until after I received my transcript, which by then, I was back home.

25. In January of 2006 I reported to Ross' campus in Miami, Florida. It was here that I was to begin my fifth semester at Ross. This semester consisted of the Advanced Introduction to Clinical Medicine program (Hereinafter referred to as the "AICM").

26. The AICM was taught by several professors, including Dr. Enrique Fernandez.

27. Exams for the AICM were based on five (5) different certification tests, which were scan-tron tests as well as a practical portion wherein a student would work on plastic human beings so as to give the student the feeling of working on a human being.

28. On or about March 6, 2006 I sat and passed the National Board of Medical Examination (Hereinafter referred to as the "NBME").

29. In as much as I received a certification for each component of these scan-tron and practical exams, it was presumed that I passed each component of the AICM. To the best of my knowledge, no points were allocated for the clinical portion of the class. *See Pl. Dep. at P. 74*

- 3 -

*Lines 19-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "S1".*

30. On March 12, 2006, at the recommendation of Dr. Fernandez, I made application to sit for the United States Medical Licensing Exam Step I (Hereinafter referred to as the "USMLE Step I exam"). *See Pl. Dep. P. 132 Lines 9-13. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "T1".*

31. This application was certified by Ross' Registrar's office where students are maintained, upon completion of a course, certified. Therefore, Ross had sponsored me to take the USMLE Step I exam and forwarded my application to the governing body that administers the licensing examinations, to wit: United States Medical Examinations/Educational Commission for Foreign Medical Graduates (Hereinafter referred to as the USMLE/ECFMG").

32. However, this application was rejected because the governing body of the USMLE Step I exam, was not able to verify my date of birth. *See Pl. Dep. P. 133 Lines 2-11. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "U1".*

33. Therefore, on May 5, 2006, Ross' Registrar's office again reviewed my file, determined that I was eligible to sit for the exam and therefore certified and sponsored me to sit for the exam. Thereafter, Ross, again forwarded the application to the USMLE/ECFMG. *See Exhibit "".*

34. On or about April 7, 2006, I completed the AICM course in Miami. I then received a Certification of Completion, and thereafter returned home. *See Pl. Dep. at P. 79 Lines 6-11. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "V1".*

35. According to the Ross' Student Handbook of Academic Rules and Regulations (Hereinafter referred to as the "Student Handbook"), at page 9, it is stated, "following the 12 week AICM, there is a 17 week-scheduled break during which students remain fully enrolled". *See Pl. Dep. P. 141 Lines 7-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "W1".*

36. It was after the completion of the AICM course that my 17 week recess, in which I remain fully enrolled, as a student at Ross began. *A highlighted copy of the relevant portion of page 9 is annexed hereto as Exhibit "X1".*

- 4 -

37. According to the Student Handbook, at page 13, before a student is eligible to sit for the USMLE Step I exam, one must pass the Basic Science Curriculum, the NBME and the AICM. *See Exhibit "C1"*.

38. Having completed the Basic Science Curriculum, the AICM for which Ross issued a Certificate of Completion and the NBME, upon which Ross issued instructions to take the USMLE Step I Exam between May 1, 2006 - July 31, 2006 for the first time.

39. Upon the recommendation of Dr. Fernandez, the course director of the AICM, I completed and submitted the necessary application forms along with a $695 application fee for the exam. Thereafter, Ross Certified and sponsored me for the USMLE Step I exam on July 27, 2006. At page 13 of the Student Handbook it is stated, "Students are required to take and pass the USMLE Step I in no more than three Attempts."

40. Between April 22, 2006 and May 22, 2006 my official academic transcript did not reflect my official AICM grade, although I had requested a copy of same. *See Pl. Dep. P.118 Lines 12-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Y1"*.

41. Furthermore, the scores for the AICM are not reflected on the transcript.

42. Based upon my knowledge of academic transcripts being released in a timely fashion, the posting of this grade should have been completed within two (2) weeks of the completion of the AICM. Both Dr. Perri and Dr. Fernandez confirmed this at their depositions. When asked how long it takes to receive the grade after completion of the course, in her deposition at page 46 line 25, Dr. Perri stated, "A week or two" and when Dr. Fernandez was asked in his deposition at page 12 lines 11 to 12 he stated, "It is given approximately two weeks after the conclusion of the course." *A copy of the relevant portions of their transcripts are annexed hereto as Exhibit "Z1"*.

43. Furthermore, the posting of grades within two (2) weeks of completion of a course is consistent with Ross' rules, regulations and policies as they are posted on the Registrar's door in Dominica. *See Pl. Dep. PP. 119 -120 Lines 23-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "A2"*.

44. On or about August 14, 2006 I received my academic transcript in the mail. In the transcript, a grade of "F" was given for the AICM course. This grade was inconsistent with

- 5 -

having received a Certification of Completion of said course as well as what I expected based upon my performance in the course.

45. According to Ross' polices, completion of the AICM is a predicate for Ross to issue a certification and offer a sponsorship of a student to sit for the USMLE Step I exam. *See Exhibit "D1"*.

46. On the same date, August 14, 2006, Ross issued a letter to the USMLE/ECFMG office stating "No longer eligible, withdrawn". *See Exhibit "F1"*.

47. However, on or about April 22, 2006 Ross had posted a failing grade for this course on a website called Devryu.net which had not been available to me prior to this date; nor is it available to me now.

48. Prior to this date I was not aware that grades were available to a student at this website.

49. The posting of grades on Ross' website does not comply with Ross' Regulations stated on Page 25 of the Student Handbook wherein it is stated that Ross adopts the Family Education Rights and Privacy Act (Hereinafter referred to as "FERPA"). *A highlighted portion of Ross Regulations is annexed hereto as Exhibit "B2"*.

50. According to FERPA, the posting of a student's grades on the internet is unlawful and, it violates student confidentiality. The reason FERPA does not consider the release of students' grades via the Internet as valid is because there is no way of ensuring the confidentiality of a student's grade once it has been released in this fashion.

51. It is to be noted that Ross refers to grades being posted on e-college. I am not aware of e-college, nor am I familiar with its application. *See Pl. Dep. at P. 89 Lines 14-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit C2""*.

52. The grade that I was questioning was on Dervyu.net.

53. Although I was not able to print out the website page from Devryu.net, I attempted to contact Dr. Fernandez. *See Pl. Dep. at P. 79 Lines 19-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "D2"*.

54. On or about April 22, 2006 I emailed Dr. Fernandez questioning what grade I was given in the AICM course. Specifically, I requested that he check my grade for my EPI/Biostatic grade as I had not been provided with an upgraded grade.

55. Later that month, I was able to speak to Dr. Fernandez and I asked him to please look into the grade as I believed that I had not failed any part of the course. This was especially true since I received five (5) certifications in the AICM course. *See Pl. Dep. at P. 80 Lines 5-20. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "E2"*.

56. Dr. Fernandez refused my request. *See Pl. Dep. at P. 82 Lines 18-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "F2"*.

57. I therefore contacted Dr. Perri and requested that she too, look into the grade. *See Pl. Dep. at PP.83 84 Lines 18-13. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "G2"*.

58. Dr. Perri indicated that she would do so. However, I never heard from her again although several attempts were made to contact her via email, and by phone.

59. In fact, when I telephoned her office in New Jersey, her secretary Judi would answer the phone. When I asked to speak to Dr. Perri, I would hear Judi call out, "Dr. Perri, Anand Dasrath is on the phone again". I would then would overhear someone I believed to be Dr. Perri respond, "tell him that I am in Dominica. This happened on more than one occasion. *See Pl. Dep. at P. 85 Lines 5 23. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "H2"*.

60. Thereafter, I emailed Dr. Perri telling her that there is still an issue with my AICM grade. I again requested that she look into this issue. Eventually Dr. Perri replied stating that she would do so when she returned from Dominica. Of course, this never came to fruition. *See Pl. Dep. at P. 86 Lines 3-21. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "I2"*.

61. This type of behavior was confirmed by fellow students Bahar and Anish, whose last names I do not recall. *See Pl. Dep. at P. 87 Lines 2-15. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "J2"*.

62. Moreover, the posted failing grade was a fabricated grade that Ross cannot substantiate as will be set forth herein.

63. On July 27, 2006 I sat for the USMLE Step I exam. At no time prior to this date did Ross issue a failing grade for the AICM course via my academic transcript. Nor did Ross' Bursar issue a second bill to re-take the AICM course; nor did any concerned party attempt to withdraw

certification and sponsorship of me for taking the USMLE Step I exam. Several weeks after taking the exam, on August 14, 2006, is when Ross withdrew its certification and sponsorship of me for the USMLE Step I exam.

64. On or around November 22, 2006, Ross produced a memorandum dated April 24, 2006, which states amongst other things, that Dr. Fernandez conferred today by telephone with Anand Dasrath about the failing grade he earned for the fifth semester. *A copy of said memorandum is annexed hereto as Exhibit "K2"*.

65. Prior to November 22, 2006, the Plaintiff did not have knowledge of this memorandum. In fact, I testified at my deposition that the first time I saw this memorandum was when the case was pending in the Supreme Court of Queens County. *See Pl. Dep. PP. 99 100 Lines 20-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "L2"*.

66. This deprived me of my right in knowing what was in my school record, if it was actually in the school records, or maybe it was fabricated. Whatever the reason, Ross again violated the Student Handbook at page 25 wherein it is stated that, "The University follows the guidelines of the U.S. Family Educational Rights and Privacy Act.

67. Therefore, the failure to post my grade in the AICM was an impediment to my completion of my studies at Ross.

68. In addition, Ross cannot claim that I failed the AICM based upon its own registration process.

69. When I failed the genetics class during my first semester, I had to re-take said class. However, I did not register for the class. Rather, Ross registered me for the class, and sent me a bill. Upon payment of the bill, I become registered for the class. *See Pl. Dep. P.126 Lines 6-23. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "M2"*.

70. At Ross, students do not have access to registration procedures. Rather, Ross decided if a student should be registered, and if so, for what class(es). The students' obligation is only to remit payment for said course.

71. At the end of the April 2006 semester, and after I had already completed the AICM course, I was issued a Certificate of Completion by Dr. Fernandez, the Course Director. At no point in time after this did I receive an invoice. Therefore, it was not possible that I failed the course. Therefore, there would be no reason for me to re-take the class. *See Pl. Dep. PP.126-*

- 8 -

*127 Lines 16-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "N2".*

72. As of June 29, 2006 Ross still had not forwarded my academic transcript for the AICM course. That is why I commenced an action against Ross in the State Supreme Court of Queens County.

73. Because of the litigation Ross may have withdrawn its sponsorship of me sitting for the USMLE Step I exam, which it did on August 14, 2006. It then issued a failing grade on the academic transcript, suspiciously, the same date. *See Pl. Dep. PP. 136 Lines 12-22. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "O2".*

74. Ross withdrew its Certification and sponsorship for my taking the USMLE Step I by releasing a failing grade in the AICM course at or around August 14, 2006. This date was after I had already taken the USMLE Step I exam.

75. Nowhere in the Student Handbook does it state that Ross can release a student's official grade via the Internet. However at page 6 of the student handbook it is stated that students will receive grades on his/her transcript. *See Exhibit "V".*

76. On June 29, 2006, Ross issued an administrative withdrawal letter, withdrawing me from its medical program. Prior to issuing this letter, Ross did not advise me that such action would be taken; the intent of such an action; and the consequences of being marked "administratively withdrawn". As stated in the letter it was "effective immediately". *See Exhibit "A1".*

77. The action of being marked "administratively withdrawn" does not preclude a student for sitting for the USMLE Step I exam as stated on page 14 of the Student Handbook. *See Exhibit "P2".*

78. On August 14, 2006 Ross issued a failing grade for the AICM course via an academic transcript to the Plaintiff. Though the procedure of issuing the grade via the academic transcript was correct, the grade was not correct as will be shown.

79. On the same date, August 14, 2006, (the date in which Ross issued a failing grade) Ross withdrew its sponsorship of me for the USMLE Step I exam by issuing the statement "no longer eligible, withdrawn" to the USMLE/ECFMG Office.

80. However, as early as May 5, 2006, Ross certified and sponsored me to sit for the USMLE Step I exam. Thereafter, Ross claimed that I was warned that the sponsorship would be withdrawn.

81. It is quite clear that:

A) Ross never issued a failing grade for the said AICM course via an academic transcript before the issuance of the Administrative Withdrawal letter of June 29, 2006;

B) Ross' claim that I failed the AICM course cannot be substantiated and therefore never pre-registered me, or forwarded an invoice to me to sit for the AICM course a second time after having completed it on April 7, 2006 and having received a certificate of completion for the AICM;

C) Ross never issued any warning before the Administrative Withdrawal of the letter issued June 29, 2006. It was "effective immediately" as stated in the letter itself. Further, no notification came from any other concerned entity.

D) Ross never issued a warning that it would use the Administrative Withdrawal letter as a reason to withdraw its sponsorship of me to sit for the USMLE Step I exam.

The above facts are in direct contrast of Ross' own regulation on page 14 of the Student Handbook wherein it is stated that withdrawn students may "take or re-take the USMLE through the University". *See Exhibit "P2"*.

82. Therefore, it is quite evident that Ross fabricated the failing AICM grade, which in turn resulted in your affiant being issued an Administrative Withdrawal letter. Thereafter, Ross blocked the release of my score of the USMLE Step I exam, which was taken on July 27, 2006 and scheduled to be released on/or about the next day, August 15, 2006; the day after Ross withdrew its sponsorship of me.

83. In essence, I must have been enrolled as a medical student when I sat for the USMLE Step I exam. The letter of June 29, 2006 wherein it is marked Administrative Withdrawn states that, "In order for a student to remain enrolled with RUSM (Ross), they must either be registered for courses and/or registered for the Boards." What Ross failed to recognize was: (i) I was certified, sponsored and registered by Ross itself for the USMLE Step 1 which is the "Boards" being referred to here, (ii) It is stated in the Student Handbook at page 9 that "Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled."

- 10 -

There is nothing in the Student handbook that states that students will be withdrawn during this 17-week break. (iii) As a matter of fact, it was Ross that last handled the Certification and sponsorship form: issued Certification, sponsorship and forwarded the documents to be registered with the USMLE. Therefore Ross should have recognized that I was registered for the "Boards." (iv) Ross is in possession of my academic records and should have known that there was a Certificate of Completion for the AICM course in its Registrar's Office. I testified to these facts at my deposition. Thus, it is quite obvious that Ross has withdrawn me without justification.   *See Pl. Dep. PP. 151-152 Lines 7-7. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Q2".*

84. Defense counsel has repeatedly accused me of admitting to failing the AICM course. Apart from being false and misleading, this was serving to inflict mental anguish onto the Plaintiff. There is no valid justification or substantiating evidence for such a claim. At my deposition, at page 168 lines 8-9, I testified as follows: ""You claimed I failed the AICM. I didn't say that". Nevertheless, Ross continues to argue that I did in fact fail said course. *A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "R2".*

85. The email posting of a grade for the student was unreliable, invalid, and against FERPA, which, as already established has been adopted by Ross. A failing grade for the AICM course via an academic transcript was sent to the student on August 14, 2006. The only thing significant about this grade was the date it was sent and the connection it has with all other events that occurred on the state set forth herein.

86. To reiterate, the AICM course is an Advanced Introduction to Clinical Medicine and is a prerequisite to the USMLE Step I examination. The USMLE Step I license is the immediate prerequisite for commencing clinical clerkships. The AICM is not one of the clinical clerkship courses. Clinical clerkship courses are done exclusively at hospitals licensed by the State Board of Medicine to do so. *See Pl. Dep. PP.82 Lines 7 - 9. A copy of the relevant portions of Dasrath's deposition is annexed hereto as Exhibit "S2".*

87. In order to do clinical clerkships courses, a medical student must first have a passing score on the USMLE Step I exam. Furthermore, in the spring of 2006, I had not yet sat for the USMLE Step I exam. Thus I could not have been licensed to do clinical clerkship courses. Ross

blocked the release of the Plaintiff's score and as a result, it was not possible for the Plaintiff to begin clinical clerkships.

*88.* Furthermore, I was not even registered by Ross to do any Clinical Clerkship Course. This too was testified to by Dr. Fernandez. *See Exhibit "R".*

89. As previously stated, I was not USMLE Step I licensed in the spring of 2006. Therefore, I was never registered by Ross's Registrar's Office to do any Clinical Clerkship Courses.

90. To the best of my knowledge, Dr. Fernandez was only employed by Ross at the time and Ross does not own a hospital. Therefore, it was not possible for Ross to have instructed a Clinical Clerkship Course to me. In turn, it could not have been possible for me to have received a failing grade.

91. Since my grade for the USMLE Step I exam was withheld, then I could not have done a Clinical Clerkship Course. Thus, the failing grade issued by Ross is nothing less than a fabrication.

92. In this particular case, it would appear that Ross produced a single copy of the Clinical Clerkship Evaluation and dated it June 23, 2006 and entered it into the Plaintiff's student record on June 27, 2006. *See Exhibit "K".*

93. Numerous inconsistencies with regard to this form point to a grade fabrication scheme perpetrated by Ross onto me. First, the Clinical Clerkship Evaluation Form used to issue a failing grade in this case appears to have one computer generated sheet only onto which my photograph from my Ross Identification Card was affixed. Upon information and belief Ross maintains a roster of student I.D's in its computer system and this picture may have been computer generated onto the grade evaluation sheet. It is known that under normal circumstances this is not usually done. In addition, this form comes in triplicates; with one copy being white and this is sent to Ross registrar's office in New Jersey, one copy being yellow for the hospital's record where the Clinical Clerkship was done and the third copy being blue for the student's record. Of course I never received any copy and since I was never registered for, nor did I do a clinical clerkship course at any hospital. Furthermore, I do not believe any hospital has a copy. Several other inconsistencies were already stated above. *See Exhibit "K".*

94. The AICM course was completed on April 7, 2006. The Certificate of Completion for the AICM, according to Dr. Perri in her deposition, at page 46, line 25: "Two weeks after

- 12 -

completion". This was confirmed by Dr. Fernandez in his deposition at page 12 lines 11 to 12. *Copies of the relevant portions of Dr. Perri and Dr. Fernandez are annexed hereto as Exhibit "T2".*

95. On June 23, 2006, which is more than two months after the completion of the AICM course, a failing Clinical Clerkship Evaluation grade was issued. Since the Plaintiff did not take the USMLE Step I until **July 27, 2006**, and USMLE Step I licensure must be obtained before beginning clinical clerkship courses, it is not possible that I could have registered for a clinical clerkship course?

96. Furthermore, Ross confiscated three out of the four recommendations issued by three Basic Science Professors: Dr. Marvyn Reviere, Dr. Davendranand Sharma, and Dr. David Patton. These three recommendations were confidentially maintained in Ross' Registrar's Office. They are supposed to be released to hospitals when a student applies for residency training in hospitals. It would be difficult for me, or any student, to procure residency training without these recommendations from Professors who had instructed your affiant, and therefore has personal knowledge of me and my grades. However, Ross released only one of the four recommendations. *A copy of this recommendation is annexed hereto as Exhibit "U2".*

97. Without the other three recommendations, Ross is in effect attempting to thwart my medical career, as it did when it barred by the USMLE/ECFMG Office from receiving my grade.

98. To provide proof that I have completed the requirements necessary for taking the USMLE Step I, I hereby submit the following:

      a) Page 13 of the Student Handbook sets forth 3 requirements:

          i)      2 years Basic Science Requirement, which has been completed and both parties are in agreement. *See Exhibit "V2".*

          ii)      AICM Course – all five certification courses completed, with certificates of completion issued by the course director. *See Exhibit "I1".*

          iii)      NBME comprehensive exam completed. *See Exhibit "W2".* Congratulations and instructions regarding the period within which the USMLE Step I must be taken, May 1, 2006 through July 31, 2006.

          Dr. Perri confirmed the date confirmed as being the correct date that I sat for the USMLE Step I exam. *Dr. Perri's Dep. P. 57, lines 8-13. See Exhibit "C1".*

99. I obtained certification and sponsorship for taking the USMLE Step I by: completing the biographic information on the form, enclosing a check for $695 fee and submitting the form to Ross' officials to do the rest such as checking the Ross Registrar's records to verify that all requirements were met, placing sealed stamp on certification form confirming it to be a binding contract, signing it, dating it, etc. After Ross officials verified that all requirements were met they then sent it to the USMLE/ECFMG office directly. By certifying me to sit for the USMLE Step I, Ross confirmed that all three requirements, as stated on page 13 of the Student Handbook were checked and satisfactorily complied with. Otherwise, I could not have been certified to take the USMLE Step I Exam. I was therefore compelled to follow the instructions of Ross officials.

100.    By subsequently withholding my AICM grade, then administratively withdrawing me as of June 29, 2006, issuing a failing grade for the AICM course on August 14, 2006, and then blocking the release of my score for the USMLE Step I Exam on August 14, 2006 and then subsequently withdrawing its sponsorship for taking the USMLE Step I Exam, it is quite obvious that Ross breached the contract that Defendant's counsel admits the we entered into when I enrolled at the Defendant's Medical School.

101.    With the preponderance of evidence presented, sound minds can only reach one conclusion: Ross has breached the contractual agreement entered into when the Plaintiff was admitted and enrolled into courses leading to an M.D. degree and licensure to practice medicine.

102.    Due to Ross' actions, I have been financially and mentally harmed. I have testified that I have incurred $165,000 due to tuition, housing, books, supplies and air fare and other modes of transportation. *See Pl. Dep. PP.176-177 Lines. 13-7. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "X2"*.

103.    I have also incurred legal fees to date in excess of $25,000. Proof of payment of said fees were forwarded to Defendants' counsel shortly after my deposition of September 30, 2010.

104.    I have also lost income of $360,000.00 from the time I was attending Ross to the time that I was asked to leave and had to return to work. Said figure was calculated based on the salary that I was making during these times.

105.     I have also undergone medical treatment as a result of Ross' actions and have suffered embarrassment and humiliation to my family, friends and co-workers. These facts were testified to at my deposition. *See Pl. Dep. PP.177-181 Lines. 4-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Y2"*.

106.     It is to be noted that Ross has been provided with proof of said damages in my response to their demand dated June 11, 2010. *A copy of said Response is annexed hereto as Exhibit "Z2"*.

107.     In light of the foregoing, it is respectfully requested that the Court grant the Plaintiff's Motion in its entirety.

108.     No prior application for the relief sought herein has been made.

**WHEREFORE**, Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

ANAND DASRATH

Sworn to before me this
2ⁿᵈ day of March, 2011

NOTARY PUBLIC

JOSEPH R. COSTELLO
Notary Public, State of New York
No. 01CO 5023572
Qualified in Kings County
Commission Expires