JS 44 (Rev. 11/04)

CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Anand Dasrath

## DEFENDANTS
Ross University School of Medicine

(b) County of Residence of First Listed Plaintiff **Queens**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Edison/Dale**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Blvd.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL PROPERTY** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 370 Other Fraud | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 380 Other Personal Property Damage | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 385 Property Damage Product Liability | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | **PRISONER PETITIONS** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 510 Motions to Vacate Sentence | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | ☐ 535 Death Penalty | | | |
| ☐ 441 Voting | ☐ 540 Mandamus & Other | | | |
| ☐ 442 Employment | ☐ 550 Civil Rights | | | |
| ☐ 443 Housing/Accommodations | ☐ 555 Prison Condition | | | |
| ☐ 444 Welfare | **Habeas Corpus:** | | | |
| ☐ 445 Amer. w/Disabilities - Employment | | | | |
| ☐ 446 Amer. w/Disabilities - Other | | | | |
| ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sec 8100-6105

Brief description of cause:
Age Discrimination, Breach of Contract and Fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
06/15/2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

ARBITRATION CERTIFICATION

I, Bradley M. Zelenitz _____, counsel for Plaintiff, Anand Dasrath _____, do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.

✓ _____ Relief other than monetary damages is sought.

DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

Please refer to NY-E Division of Business Rule 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District of New York removed from a New York State court located in Nassau or Suffolk County: No

2.) If you answered "no" above:

a.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? No

b.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? No

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? No

(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

Yes ✓ _____     No _____

Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?

Yes _____ (If yes, please explain)     No ✓ _____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last name and the last four digits of your social security number or any other four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).

ATTORNEY BAR CODE: BZ 4104 _____

E-MAIL Address: bzelenitz@gzslaw.com

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re Electronic Filing Procedures (EFP)", and consent to the electronic service of all papers.

Signature: _____

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Eastern District of New York

Anand Dasrath

v.

Ross University School of Medicine

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

CV 07 2433

AMON, M.J.

REYES, M.J.

TO: (Name and address of Defendant)

Ross University School of Medicine
499 Thornall Street, 10th Floor
Edison, NJ 08837
&/or 7000 SW 62nd Avenue, Penthouse A
South Miami, FL 33143

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Blvd., 2nd Floor
Briarwood, NY 11435
Attn: Bradley M. Zelenitz, Esq.

an answer to the complaint which is served on you with this summons, within _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

ROBERT C. HEINEMANN



CLERK

_Elizabeth Jordan_

(By) DEPUTY CLERK

6/15/2007

DATE

Bradley M. Zelenitz, Esq. (BMZ-4104)
Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Blvd., 2nd Floor
Briarwood, New York, 11435
P: (718) 523-1111
F: (718) 725-9606

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANAND DASRATH,

-------------------------------------------X

          Plaintiff,         Case No.:

-against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

          Defendant.

-------------------------------------------X

## COMPLAINT

    Plaintiff, complaining of the Defendant, by his attorney, Bradley M. Zelenitz, Esq., of

Gildin, Zelenitz & Shapiro, P.C., respectfully sets forth and alleges as follows:

### I. Introduction

    1. The within is an action for monetary and equitable relief based upon Defendant's

violations of Plaintiff's rights under the Age Discrimination Act of 1975, 42 U.S.C. §6102 and

the New York Executive Law §296(4), and breach of contract between the parties hereto.

### II. Parties

    2. Plaintiff was and still is a natural person, and at all times hereinafter mentioned

was a forty-eight year old medical student with an address of 89-25 209th Street, Queens Village,

New York 11427.

    3. Defendant is, upon information and belief, a corporate entity and a medical school,

which has offices at 499 Thornall Street, 10th Floor, Edison, New Jersey 08837, and 7000 SW 62nd Avenue, Penthouse A, South Miami, 33143. Defendant is an accredited institution by the United States Department of Education certified as an eligible institution for Title IV U.S. Federal Family Education Loan Program Loans, and receives various forms of Federal funding and/or Federal financial assistance.

### III. Venue and Jurisdiction

4. Venue in the Eastern District of New York is appropriate in that the Plaintiff resides at of 89-25 209th Street, Queens, Village, New York 11427, County of Queens, City and State of New York.

5. Subject matter jurisdiction over the instant action exists over all claims herein pursuant to 28 U.S.C. §1331, 1332, as the instant matter arises under the laws of the United States, specifically the Age Discrimination Act of 1975, 42 U.S.C. §6101-6107, and diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00. Additionally, pendant subject matter jurisdiction over the instant action exists over Plaintiff's New York Executive Law and breach of contract claims pursuant to this Court's supplemental jurisdiction.

### IV. Background

6. At all times hereinafter mentioned, Plaintiff was a forty-eight year old medical student at the Defendant's school of medicine, since May of 2004, and had continually paid the school tuition in exchange for the school delivering an education to the Plaintiff. Upon information and belief, Plaintiff was one of the oldest members of his class.

7. The Plaintiff took the AICM (Advanced Introduction to Clinical Medicine) course in the Spring 2006 semester, Plaintiff's fifth semester, at the Defendant's school of medicine in

Miami, but did not receive a grade therein despite due demand. Plaintiff's May 2006 transcript had a "blank space" where his grade should have been for the AICM class. Despite due demand, Plaintiff had been denied his right to inspect school records regarding his academic performance or the scantron sheets he submitted upon taking the examinations. The Plaintiff was advised by Dr. Fernandez, his professor, that he received a "94%" on the physical exam.

8.   In March of 2006, Plaintiff submitted an application to take the United States Medical Licensing Examination (USMLE) Step I. Said application included a certification by an official of the Defendant medical school that the Plaintiff was enrolled in the Defendant school of medicine.

9.  On or about June 29, 2006, Defendant withdrew the Plaintiff from enrollment as a student from Defendant's school of medicine and withdrew its sponsorship of Plaintiff, thereby denying the Plaintiff an opportunity to take the USMLE Step 1 Exam. The Defendant's purported basis for said withdrawal was that Plaintiff did not successfully complete the AICM course and pass the USMLE Step 1 Exam.

10.  The Plaintiff believes that he has completed the requisite coursework in this class for him to achieve a passing grade and to take the USMLE Step 1 Exam.

11.  In March of 2006, the Plaintiff had registered for the USMLE Step 1 Exam. The Plaintiff took said USMLE Step 1 Examination on July 27, 2006. His score for same was never released, as he was advised that he was "not authorized to take the exam" when he took it because he was not enrolled as a student in a medical school at the time he took the examination.

12.  On August 14, 2006, Plaintiff received his grade in the AICM class, listed as "F". The Plaintiff was advised not only that he did not fail the AICM class, but that even if he had failed the AICM class, same was not a prerequisite to taking the USMLE Step 1 Exam, but rather

the NBME comprehensive exam which Plaintiff passed, was the prerequisite for same.

13.   Upon information and belief, throughout Plaintiff's enrollment in Defendant's school of medicine, his grades were changed, withheld, and or inaccurately reported.

14. Upon information and belief, the Defendant approached his student advisor about these issues, and was advised by his student advisor not to "rock the boat" as the Defendant school of medicine discriminates on the basis of age.

## V.  Causes of Action and Demand for Relief

15. The allegations contained in paragraphs "1" through and including "14" are incorporated as if restated herein.

## Count One:  Violation of the Age Discrimination Act of 1975

16. 42 U.S.C. § 6102 states that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance".

17. Upon information and belief, the Defendant receives Federal financial assistance as more fully set forth in paragraph "3" above.

18. Upon information and belief, the Defendant discriminated against the Plaintiff, in that solely on the basis of his age, Defendant excluded him from participation in Defendant's school of medicine, denied Plaintiff the benefits of said program, subjected Plaintiff to harassment, and evaluated and otherwise treated Plaintiff differently than similarly situated younger students.

19. Based upon the foregoing, Defendant violated the Age Discrimination Act of 1975, and Plaintiff herein seeks monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine and sponsorship for the Step I

exam, release of Plaintiff's USMLE Step I score, and the release of the Plaintiff's grades and records.

## Count Two: Violation of New York Executive Law § 296

20.  The allegations contained in paragraphs "1" through and including "19" are incorporated as if fully reinstated herein.

21.  New York Executive Law § 296(4) states that "it shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex".

22.  Upon information and belief, the Defendant holds itself out to the public as non-sectarian and exempt from taxation. Upon information and belief, Defendant does not maintain a policy of educating persons of only one sex.

23.  Upon information and belief, the Defendants have harassed the Plaintiff and denied use of its facilities, whom was otherwise qualified, solely upon the basis of his age.

24.  Based upon the foregoing, the Defendant has violated New York Executive Law § 296(4).

## Count Three: Breach of Contract

25.  The allegations contained in paragraphs "1" through and including "24" are incorporated as if fully reinstated herein.

26. The Defendant accepted the Plaintiff to its school of medicine, enrolled Plaintiff in same and accepted Plaintiff's tuition money, and in return, was to provide the Plaintiff with an education and to accurately and timely report Plaintiff's grades to him on the basis of his performance. Same is a valid contract and/or agreement between the parties, together with an implied covenant of good faith and fair dealing.

27. Based upon the foregoing, The Defendant has breached said agreement, in failing to timely and accurately report Plaintiff's grades on the basis of his performance.

## Count Four: Fraud / Equity

28. The allegations contained in paragraphs "1" through and including "27" are incorporated as if fully reinstated herein.

29. The Plaintiff has no adequate remedy at law.

30. Upon information and belief, the Defendant made affirmative misrepresentations to the Plaintiff regarding his grades and the necessary requirements to take the USMLE, with knowledge that such representations were wholly false, and that Plaintiff did actually and justifiably rely on said representations.

31. That due to Defendant's fraud and intentional misrepresentations, the Plaintiff has been damaged in that he was caused to be withdrawn from the Defendant medical school without cause or justification, which in turn, caused his USMLE score to be withheld, all to Plaintiff's detriment. That upon information and belief and at all times hereinafter mentioned, the wanton, willful, and malicious nature of Defendant's intentional misrepresentations and fraud entitle Plaintiff to punitive damages to punish the Defendant and to discourage others from like conduct.

WHEREFORE, Plaintiff demands judgment against the Defendant herein for monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the

## VERIFICATION

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF QUEENS )

I, ANAND DASRATH being duly sworn, deposes and says: I am the plaintiff in the within action; I have read the foregoing COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

ANAND DASRATH

Sworn to before me this
15 day of June , 2007

NOTARY PUBLIC

DAVID A. SHAPIRO, Esq.
Notary Public of the State of New York
#: 02 S H 5 0 5 5 1 2 3
Qualified in the County of Nassau
Commission Expires February 5, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X    Case No.: CV-07-2433

ANAND DASRATH

                Plaintiff,            **AMENDED COMPLAINT**

        -against-

ROSS UNIVERSITY SCHOOL OF
MEDICINE
                Defendant.
-------------------------------------------X

Plaintiff, complaining of the Defendant, by his attorneys COSTELLO & COSTELLO,

P.C., respectfully shows and alleges as follows:

1.      That at all times hereinafter mentioned, Plaintiff, ANAND DASRATH, is and still

resides in the Borough of Queens, County of Queens, City and State of New York.

2.      Upon information and belief, at all times hereinafter mentioned, the Defendant,

ROSS UNIVERSITY SCHOOL OF MEDICINE, was and still is a corporate entity and a

medical school which has offices at 499 Thornall Street, 10th Floor, Edison, New Jersey 08837

and 7000 SW 62nd Avenue, Penthouse A, South Miami, Florida 33143. Defendant is an

accredited institution by the United States Department of Education and certified as an eligible

institution for the Title IV U.S. Federal Family Education Loan Program and receives various

forms of Federal funding and/or Federal financial assistance.

3.      Venue in the eastern District of New York is appropriate in that Plaintiff resides at

89-25 209th Street, Queens Village, New York 11427, County of Queens, city and State of New

York.

4.      Subject matter jurisdiction over the instant action exists over all claims herein

pursuant to 28 U.S.C. 1331, 1332, as the instant matter arises under the laws of the United States,

specifically the Age Discrimination Act of 1975, 42 U.S.C. 6101-6107, diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00 Additionally, pendant subject matter jurisdiction over the instant action exists over Plaintiff's New York Executive Law and breach of contract claims pursuant to this Court's supplemental jurisdiction.

Background

5.     At all times hereinafter mentioned, plaintiff was a forty-six year old medical student at the Defendant's school of medicine since May 2004 and had continually paid the school tuition in exchange for the school providing an education to the Plaintiff. Upon information and belief, Plaintiff was one of the oldest members of his class.

6.     The Plaintiff took the "AICM" the Advanced Introduction to Clinical Medicine course in the 2006 Spring semester, the Plaintiff's fifth semester, at the Defendant's school of medicine located in Miami, Florida. The Plaintiff, however, did not receive a grade for the AICM course despite his demand for his grade. Plaintiff's May 2006 transcript had a "blank space" where his grade should have been for the AICM course. Despite his demands, Plaintiff had been denied his right to inspect school records regarding his academic performance or the scantron sheets he submitted his answers upon taking the examinations. The Plaintiff was advised by Dr. Enrique Fernandez, his professor, and the Assistant Dean of Clinical Science, that he received a "94%" on the physical exam.

7.     In March of 2006, Plaintiff submitted an application to take the United States Medical Licensing Examination "USMLE" Step 1. Plaintiff's application indicated he passed all five (5) parts of the AICM course, included a certification by an official of the Defendant medical school that the Plaintiff was enrolled in the Defendant school of medicine, as well as a rubber stamp attached to the Plaintiff's passport photo identification.  Said certification contained

the defendant school of medicine's sealed stamp certifying the plaintiff's application. A letter was forwarded by Ms. Brijette Sena, associate Registrar of Clinical Sciences informing Plaintiff that he had passed the NBME exam and that he was eligible to take the USMLE Step 1 Exam. Lastly, an application fee of $695 was paid by the Plaintiff and accepted by the Defendant along with the Plaintiff's application for the USMLE Step 1 examination.

8.    On or about June 29, 2006, Defendant notified Plaintiff he had been "Administratively Withdrawn" from Ross "for failure to register for the May 2006 AICM course" enrollment as a student from Defendant's school medicine and without notifying Plaintiff withdrew its sponsorship of Plaintiff.

9.    On August 14, 2006, Plaintiff received his grade in the AICM course, which was listed as an "F". According to the Defendants Handbook at page 13"Students become eligible to take the USMLE Step I when they have passed all courses in the Basic Science Curriculum, successfully the Advanced Intergration to Clinical Medicine clerkship, and, have passed the NBME Comprehensive Basic Sciences Exam The results of the USMLE examination the Plaintiff had previously taken were to be released the following day on August 15, 2006.

10.    Upon information and belief, during Plaintiff's time as a student at Defendant's school of medicine, his grades were changed, withheld, and/or inaccurately reported.

11.    All administrative remedies relating to the Age Discrimination claim have been exhausted.

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C 6102

12.    The allegations contained in paragraphs "1" through and including "11" are incorporated as if restated herein.

13. 42 U.S.C. 6102 states that no "person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance".

14. Upon information and belief, the Defendant receives Federal financial assistance as more fully set forth in paragraph "3" above.

15. Upon information and belief, the Defendant discriminated against the Plaintiff solely on the basis of his age. Said discrimination consisted of excluding him from participation in Defendant's school of medicine, denying Plaintiff the benefits of said program, subjecting him to harassment, and Plaintiff had been evaluated and treated differently than similarly situated younger students.

16. Upon information and belief, the defendant discriminates against its older students due to its limited ability of placing its students in hospital training programs, which follow the passing of the USMLE exam, and its preference in placing its younger students in hospital training programs and thus making it either difficult, or as in the Plaintiff's case, preventing him from completing the requisite steps to complete his studies and gain admittance in a hospital training program.

17. Upon information and belief, the Defendant has continuously and systemically discriminated against older students of its medical school such as the Plaintiff.

18. Based on the foregoing, Defendant violated the Age Discrimination Act of 1975 and Plaintiff now seeks monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine and sponsorship for the USMLE Step 1examination, release of Plaintiff's USMLE Step 1 examination score, and the release of the Plaintiff's grades and records.

## AS AND FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

19.     The allegations contained in paragraphs "1" through and including "19" are incorporated as if fully reinstated herein.

20.     Plaintiff contracted with Defendant and paid Defendant tuition in consideration of Defendant preparing Plaintiff to become a licensed medical doctor eligible to practice medicine in the United States. Pursuant to the contract, Defendant was to accurately record Plaintiff's grades and sponsor Plaintiff to take the USMLE Step 1 examination.

21.     In March of 2006 the Plaintiff had submitted his application to take the USMLE Step 1 Examination. Plaintiff's application, as more fully described in paragraph "7," was accepted by the Defendant medical school. On June 27, 2006 the Defendant notified the Plaintiff that he was administratively withdrawn from the Defendant's school of medicine and that the Defendant subsequently withdrew its sponsorship for the USMLE Step 1 examination.

22.     The Defendant was in breach of its contractual obligation to the Plaintiff in administratively withdrawing Plaintiff from its school of medicine without justification and in violation of its own academic rules and regulations.

23.     The Defendant breached the contractual agreement when without any justification or valid reason withdrew its sponsorship for the USMLE exam after it had accepted Plaintiff's application and duly certified Plaintiff to take said exam.

## AS AND FOR A THIRD CAUSE OF ACTION
### FRAUD

24.     The allegations contained in paragraphs "1" through and including "23" are incorporated as if fully reinstated herein.

25.     Upon information and belief, the Defendant made false representations to the Plaintiff regarding his grades on the AICM course. On August 14, 2006 the Defendant released the Plaintiff's AICM grade and listed it as an "F", a failing grade. The Plaintiff passed all five parts of the AICM course and was in possession of those passing grades.

26.     The Defendant falsely represented in its June 27, 2006 letter signed by Michael Rendon, the University Registrar that Plaintiff was being administratively withdrawn from the defendant's school of medicine for failing to register for the May 2006 AICM course. The assertion in that letter is false and in contradiction to the Defendant school of medicine's rules and regulations.

27.     The Defendant's Dean of Clinical Studies, Nancy Perri has falsely represented that she had reviewed the Plaintiff's grades from the five part AICM course and has stated he has failed. Upon information and belief, Dean Perri was not in possession of the Plaintiff's AICM grade at the time.

28.     The foregoing false representations were committed in furtherance of the Defendant's ongoing practice of denying its older students placement in hospital training due to their limited placement opportunities. The Defendant's falsely withheld and then misrepresented the Plaintiff's grade in the AICM course as a means of having the results of his USMLE exam

blocked in order to avoid attempting to place Plaintiff in a training program in favor of its preferred younger students, of which Plaintiff was not.

29.     The Defendant succeeded in blocking the Plaintiff in advancing and succeeding in his medical studies due to its false representations and ongoing fraudulent behavior. All of which was to Plaintiff's detriment. The wanton, willful, and malicious nature of Defendant's intentional misrepresentations and fraud entitle Plaintiff to punitive damages to punish the Defendant and to discourage others from similar conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
## TORTUOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

30.     The allegations contained in paragraphs "1" through and including "29" are incorporated as if restated herein.

31.     The defendant accepted the Plaintiff's to its school of medicine, enrolled Plaintiff in same and accepted Plaintiff's tuition money and in return was to provide Plaintiff with an education and to accurately and timely report Plaintiff's grades based on his performance. Thus, a valid contract and/or agreement between the parties were formed.

32.     The defendant intentionally interfered with this contract by administratively withdrawing the Plaintiff from its school of medicine without any justification and in violation of its own rules and regulations.

33.     The Defendant further intentionally interfered with the contracted by withdrawing its sponsorship of the USMLE exam after it had accepted and certified his application for said exam.

34.     The Defendant failed and refused to provide the Plaintiff with his grades, to wit: his overall grade in the AICM course.

35.     As a result of Defendant's intentional interfered with said contract/agreement and the Plaintiff was unable to complete his studies as he deserved to and as a result suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendant herein for monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine, sponsorship for the USMLE Step 1 Examination, release of the Plaintiff's USMLE Step 1 score, and the release of the Plaintiffs remaining grades and records, together with such other and further relief this Court deems just and proper.

Dated: June 17, 2009
       Brooklyn, New York

Respectfully  Submitted

COSTELLO & COSTELLO, P.C
BY: SALVATORE D. COMPOCCIA, ESQ
5919 20TH Avenue
Brooklyn, New York11204
(718) 331-4600

## VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF KINGS   )

**SALVATORE D. COMPOCCIA**, being duly sworn deposes and says:

That he is associated with the firm of **COSTELLO & COSTELLO, P.C.**, attorneys for the plaintiff **ANAND DASRATH** herein; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true on information and belief. This verification is made by deponent because plaintiff resides in a county other than which deponent maintains its office.

/S/_____
SALVATORE D. COMPOCCIA

Sworn to before me this

_____ day of _____

_____
NOTARY PUBLIC

Case 1:07-cv-02433-CBA-RER   Document 98-4   Filed 04/28/11   Page 23 of 68 PageID #: 1615

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07 2433

                              Plaintiff,          (C. Amon) (R. Reyes)

              - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,               **NOTICE OF MOTION**

                              Defendant.

---------------------------------------------------------X

PLEASE TAKE NOTICE, that upon the affidavit of Nancy A.Perri, M.D., sworn to on

July 21, 2009, and the accompanying memorandum of law, the undersigned will move this Court

before the Honorable Carol B. Amon of the United States District Court, Eastern District of New

York, United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York for an order

dismissing the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject

matter and for failure to state a claim upon which relief can be granted and for any further relief

as this Court may deem appropriate.

Dated: Garden City, New York
       July 22, 2009

                                        CULLEN AND DYKMAN LLP

                              By: _____
                                        Jennifer A. McLaughlin (JM 5678)
                                        Attorneys for Defendant
                                        100 Quentin Roosevelt Boulevard
                                        Garden City, New York 11530

TO:    COSTELLO & COSTELLO, P.C.
       Salvatore D. Compoccia, Esq.
       5919 20th Avenue
       Brooklyn, NY 11204

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------X

ANAND DASRATH,                                        Case No.: CV 07 2433

                              Plaintiff,              (C. Amon)
                                                      (R. Reyes)
        - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                              Defendant.

--------------------------------------------------X

STATE OF NEW JERSEY  )
                     ) SS.:
COUNTY OF MIDDLESEX )

        NANCY A. PERRI, M.D., being duly sworn, deposes and says:

        1.      I am Vice President of Academic Affairs at Ross School of Medicine School of

Veterinary Medicine Limited, sued herein as Ross University School of Medicine ("Ross

University" or "Defendant"), the defendant in this matter. I submit this affidavit in support of

Defendant's motion to dismiss pursuant to F.R.C.P. 12 (b)(1) and (6).

A.      **Plaintiff Failed A Required Course And Failed To Re-Take That Course**

        2.      Plaintiff was a medical student at Ross University. He was administratively

deemed to have withdrawn from Ross for his failure to pass a course required to graduate.

        3.      Plaintiff failed the Advanced Introduction to Clinical Medicine ("AICM") course

which is required before a student can graduate. Plaintiff admits he received a failing grade.

See Amended Complaint ¶9. He disputes this grade in this lawsuit.

4.      Despite his failing grade, plaintiff failed to re-enroll in the semester immediately following his failure to re-take the AICM as required by the Ross University School of Medicine Student Handbook of Academic Rules and Regulations ("Handbook"). The Handbook holds all students to the rules outlined therein.

5.      The Handbook provides that an administrative withdrawal is required when the student does not return to campus to register for the following semester. See page 23 of the Handbook. A copy of the Handbook in effect at all times relevant to the Amended Complaint is attached hereto as Exhibit "A".

6.      Plaintiff's failure to re-enroll in order to successfully complete the AICM course is an act of withdrawal from Ross.

7.      As such, Ross was required to administratively withdraw plaintiff from the university, effective the last day of the failed class.

**B.      Plaintiff Was Ineligible to Take The USMLE Step 1 Exam**

8.      For foreign medical school graduates to become licensed to practice medicine in the United States, students are required to take several qualifying exams.

9.      The United States Medical Licensing Examination Step 1 exam ("USMLE Step 1 Exam") is the first of these exams.

10.     As stated above, Plaintiff failed the AICM course and failed to retake the AICM course. Successful completion of this course, however, is required to participate in the USMLE Step 1 Exam.[1]

---

[1] The Exam is administered by an agency known as the Educational Commissioner for Foreign Medical Graduates -- not by Ross University.

11.    The Handbook provides that in order to be eligible to take the USMLE Step 1 Exam, the student must have passed all courses in the first four semesters and successfully completed the AICM.  See page 13 of the Handbook.

12.    Plaintiff's failure of the AICM course and his administrative withdrawal from Ross resulted in Plaintiff becoming ineligible to take the Exam despite his attempts otherwise. See pgs. 11 and 23 of the Handbook.

C.    **Plaintiff Has Never Provided Defendant With Notice Pursuant to 42 U.S.C. § 6104**

13.    Prior to commencing this action, Plaintiff was required to provide notice of the action, by registered mail, to the Secretary of Health and Human Services, the United States Attorney General, and Ross University thirty (30) days prior to commencing the action.  This notice must set forth the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded.  42 U.S.C. § 6104.

14.    Plaintiff has not provided Ross University with the notice required under 42 U.S.C. § 6104.

15.    For the reasons set forth herein and in the accompanying memorandum of law, plaintiff's complaint should be dismissed.

_____
NANCY A. PERRI, M.D.

Sworn to before me this
_____ day of July, 2009.

_____
Notary Public

Jean Kraemer
Notary Public
New Jersey
My Commission Expires 3-09-14

- 3 -

EXHIBIT "A"

Case 1:07-cv-02433-CBA -RER   Document 64-2   Filed 09/28/09   Page 2 of 31

# ROSS UNIVERSITY SCHOOL OF MEDICINE

## STUDENT HANDBOOK

### OF

## ACADEMIC RULES AND REGULATIONS

*May 2006*



## TABLE OF CONTENTS

INTRODUCTION................................................................. page 4
CHANGES IN THIS EDITION............................................ page 4
THE CURRICULUM........................................................... page 4
   THE DEGREE "DOCTOR OF MEDICINE"....................... page 4
ACADEMIC STANDARDS................................................. page 5
   PROMOTIONS COMMITTEE, PROMOTIONS................ page 5
STUDENT GRADING AND PROMOTIONS POLICIES......... page 5
   GRADING POLICY FOR THE BASIC SCIENCE SEGMENT.... page 5
   GRADES....................................................................... page 6
   EXAMINATIONS............................................................ page 7
      BASIC SCIENCE SEGMENT.......................................... page 7
      NBME COMPREHENSIVE BASIC
         SCIENCES EXAMINATION......................................... page 7
PROMOTION POLICIES....................................................... page 7
   BASIC SCIENCE SEGMENT.............................................. page 7
   CLINICAL SCIENCE SEGMENT......................................... page 9
   GOOD STANDING
      AND SATISFACTORY ACADEMIC PROGRESS............... page 10
   PROBATION................................................................... page 11
   ATTENDANCE................................................................ page 12
LICENSURE TO PRACTICE MEDICINE IN THE U.S............ page 12
POLICY REGARDING U.S. LICENSING EXAM, STEPS 1 & 2.... page 13
   THE USMLE STEP 1........................................................ page 13
   THE USMLE STEP 2CK (CLINICAL KNOWLEDGE)........... page 13
   THE USMLE STEP 2CS (CLINICAL SKILLS)....................... page 14
   CERTIFICATION FOR THE USMLE................................... page 14
PROFESSIONAL CONDUCT, ETHICS..................................... page 15
SEXUAL HARASSMENT........................................................ page 16
PROBLEMS, GRIEVANCES..................................................... page 16
REGISTRATION AND OTHER REGISTRAR SERVICES........... page 17
   INITIAL REGISTRATION OF INCOMING STUDENTS......... page 17
   REGISTRATION OF CONTINUING STUDENTS................... page 18
   REGISTRATION – CLINICAL SCIENCE SEGMENT............. page 18
   TRANSCRIPT REQUESTS................................................. page 19
STUDENT LOAN DEFERMENT PROCESS................................. page 19
TUITION DURING REMEDIAL SEMESTERS............................. page 19
TUITION REFUND POLICY FOR WITHDRAWALS..................... page 20
EMERGENCY ABSENCES, VACATION
   & ACADEMIC LEAVES OF ABSENCE.................................. page 21

EMERGENCY ABSENCES........................................................ page 21
ACADEMIC LEAVE OF ABSENCE (ALOA)......................... page 21
UNAUTHORIZED LEAVES.............................................. page 22
WITHDRAWALS........................................................ page 22
    STUDENT WITHDRAWALS.......................................... page 23
    ADMINISTRATIVE WITHDRAWALS.................................. page 23
DEFERRALS ......................................................... page 23
DISCIPLINARY ACTIONS............................................. page 24
SUSPENSION........................................................ page 24
DISMISSAL.......................................................... page 24
STUDENT HONOR CODE.............................................. page 22
STUDENT POLICY ON ALCOHOL AND OTHER DRUGS............... page 25
STUDENT PRIVACY RIGHTS.......................................... page 25
THE ANNE ROSS LIBRARY AND RELATED MATTERS.................. page 26
MONETATY INSTRUMENTS (STUDENT REFUND CHECKS)............ page 27
BANKING IN DOMINICA............................................. page 27
ADDITIONAL MATTERS OF FINANCE.................................. page 28
HOUSING IN DOMINICA............................................. page 28
VISAS .............................................................. page 28
SECURITY........................................................... page 28
STUDENT GOVERNMENT............................................. page 29
AMERICAN MEDICAL STUDENTS ASSOCIATION..................... page 29
STUDENTS WITH DISABILITIES...................................... page 30
WHEN YOU LEAVE DOMINICA........................................ page 30
INTERPRETATION AND MODIFICATION.............................. page 30
ATTACHMENTS:
    TECHNICAL STANDARDS FOR THE MD DEGREE
    STUDENT HONOR CODE
    STUDENT POLICY ON ALCOHOL AND OTHER DRUGS
    ANNUAL SECURITY REPORT

Case 1:07-cv-02433-CBA-RER   Document 98-4   Filed 04/28/11   Page 31 of 68 PageID #: 1623

# ROSS UNIVERSITY SCHOOL OF MEDICINE

## STUDENT HANDBOOK

### MAY 2006

## INTRODUCTION

Ross University publishes this handbook for the students in its School of Medicine.

Effective May 2006, all rules and regulations in this *Handbook* are binding upon all students enrolled in the School of Medicine, including students on academic leave of absence from the school and students who are visiting at other medical schools. This edition supersedes all previous editions of the *Student Handbook* and, when appropriate, updates the *Ross University School of Medicine Catalog.*

Students are expected to be familiar with the content of both this *Handbook* and the *Catalog* of the School of Medicine. Those students who receive financial aid are expected to have read *Ways & Means of Financial Aid*, which has previously been supplied. Only general aspects of financial aid are included here.

Ross University reserves the right to change its rules and regulations, course offerings, degree requirements, academic calendar and other material contained in this *Handbook* or the *Catalog* at any time. Such changes will be announced in advance of their effective dates whenever possible; and will be disseminated via email and posted on the campus website.

## CHANGES IN THIS EDITION

There have been changes incorporated throughout this *Handbook.* Students are responsible to make note of all changes in policy, and will be held to the rules outlined in this handbook.

## THE CURRICULUM

### THE DEGREE "DOCTOR OF MEDICINE"

The degree *Doctor of Medicine* is awarded upon the successful completion of the Basic Science curriculum, the Clinical Science curriculum, and the U.S. Medical Licensing Examination (USMLE) Steps 1 and 2. Step 2 of the USMLE now consists of two examinations the Clinical Knowledge (CK) exam (formerly Step 2) and a Clinical Skills (CS) exam (formerly the Clinical Skills Assessment (CSA). These will be referred to as Step 2 CK and Step 2 CS throughout this handbook.

The Basic Science segment consists of 60 credits of specifically prescribed coursework. There are four semesters of Basic Science classes, for a total of two academic years. All Basic Science coursework is offered on the School of Medicine campus (located at Portsmouth, in the Commonwealth of Dominica) and must be satisfactorily completed there. The hours, credits, and credit limitations are strictly prescribed. Deviation from these standards may jeopardize a student's eligibility for licensure in the United States. Basic Science students taking 10 semester credit hours are considered full-time; students who are taking less than 12 semester credit hours (see *Remedial Semesters* under Promotions Policy) may not satisfy enrollment requirements of sponsoring organizations, outside health insurance plans, and other related services.

The Clinical Science curriculum consists of 90 weeks of clinical training. It begins with an introductory clinical segment of 12 weeks, the course "Advanced Introduction to Clinical Medicine"(AICM). This segment provides training in the basic clinical skills combined with an introduction to the pathophysiology of major disease processes, and is conducted in clinical facilities, in the U.S.

The remaining 78 weeks consist of 48 weeks of required ("core") clerkships and 30 weeks of elective clerkships as described in the *Catalog*. During this time, the student participates in patient care while rotating through various medical specialties in affiliated teaching hospitals and other approved health care facilities, in the United States. Clinical clerkships are performed under the guidance of clinical faculty, the Dean of Clinical Sciences and Student Affairs and the Executive Dean and under the general supervision of the School of Medicine's Dean of Clinical Sciences.

## ACADEMIC STANDARDS

### PROMOTIONS COMMITTEE, PROMOTIONS

All academic matters, including grading policies and academic standards, while students are pursuing the Basic Science portion of the curriculum (the first two academic years), are within the purview of the School's Promotions Committee. This committee acts within the framework of the policies set forth herein. It is a faculty committee, whose recommendations are transmitted to the Dean. The decision of the Dean is final.

## STUDENT GRADING AND PROMOTIONS POLICIES
### GRADING POLICY FOR THE BASIC SCIENCE SEGMENT

The aim of the policy is to establish a minimum acceptable performance that a student must achieve that does not depend on the performance of the entire class. A Minimum Passing Score (MPS) is established that must be achieved for a passing (C) grade. A well-established method (the "Hofstee" method) will be used to determine the MPS.

The Hofstee method utilizes the class performance but also sets a Minimum Passing Score (MPS) that is derived from the lower group of scores within a defined range. The range for the MPS to be used is between 55% and 65%. Therefore, students that enrolled after May 2004 scoring below 55% will have failing scores and those scoring above 65% will have passing scores. Students with scores between 55% and 65% have marginal performance that may result in course failure

depending on the performance among the lowest performing group of students (in the range of 55% and 65%).

Recorded grades will be on an A (80 and higher), B (70-80), C (MPS-69), F (below MPS).

The percentage contribution to the final course score from each of the interim (mini) exams and other course evaluations will be announced by each course in advance. The final course score will include the student's score on a NBME subject examination (taken at the end of the course). The final course score weight from the NBME subject exams will be announced by each course director in advance.

## *GRADES*

Grades are interpreted as follows:

| A | 80-100 | 4.00 |
|---|---|---|
| B | 70-80 | 3.00 |
| C | MPS-69 | 2.00 |
| F | Failing | 0.00 |
| W | Withdrawn Before Interim Exams | 0.00 |
| WP | Withdrawn Passing | 0.00 |
| WF | Withdrawn Failing | 0.00 |
| I | Incomplete | 0.00 |
| SP | Satisfactory Progress | 0.00 |
| UP | Unsatisfactory Progress | 0.00 |

Withdrawal from a single course during a semester is not permitted.

A student electing to withdraw from the School prior to the time of the first examinations will receive grades of W on his/her transcript. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

A student that is granted an emergency absence resulting in an Academic Leave of Absence prior to the time of the first exam will receive grades of W. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

An I (Incomplete) grade is entered when a student is advanced, pending completion of a requirement of a course, as defined by the course director. In this case, the outstanding requirement must be completed the following semester and the I will be changed into a grade. Failure to do so will result in a grade of F being entered to replace the I.

Students, who maintain grades of A in all courses in two successive semesters, will qualify for the *Dean's List*. They will remain on the *Dean's List* as long as they do not receive a grade below B in subsequent semesters. The *Dean's List* will be posted at the beginning of every semester, as soon the grades are available from the previous semesters. This applies for semesters 2-4.

- 6 -

Students with a grade point average, during basic sciences of 4.0 are designated as *Distinguished Scholars*. The *Honor Roll* recognizes students who receive all A's in the first semester.

## EXAMINATIONS

### BASIC SCIENCE SEGMENT

Examinations are generally in the single-best answer or extended matching format. In certain courses, there are assignments and/or practical examinations that contribute to the course grade. All courses also have a number of mid-term exams that contribute to the course grade. All examinations in the Basic Science segment must be taken on the Portsmouth campus, except that clinical practical examinations may be given in the Princess Margaret Hospital (Ross facility).

Students are expected to be at their assigned seat five minutes prior to the beginning of an examination. Students that arrive to the examination room once the proctor has begun giving instructions will be denied entry and receive a mark of 0 in the examination. Mid-term examinations that are missed for a valid reason may be "made up" by weighting the other examinations in the course. In order to be excused the student must present valid documentation prior to the initiation of the examination. The determination of a valid reason shall be approved by the Executive Dean, or the Dean of Academic Administration and Student Affairs or their designee and must include appropriate documentation that would qualify the student for an emergency absence described below. An examination missed without approved documentation will be assigned a grade of zero.

A final examination, which is missed for any reason(s), cannot be "made-up". Any student who misses a final examination will have a grade of F reported to the Registrar for that course unless the student is on an approved emergency absence. In that case, the grade of I (incomplete) will be recorded and the student must take that examination at the end of the following semester.

### NBME COMPREHENSIVE BASIC SCIENCE EXAMINATION

All students are required to take the NBME Comprehensive Basic Science Examination at the end of their fourth semester in Dominica. Students must obtain a passing score (as determined by the NBME) prior to being certified to take Step 1 of the USMLE. A student who fails to obtain a passing score on the NBME Comprehensive Basic Science Examination after their 4th semester in Dominica will be required to re-take it at the completion of their Advanced Introduction to Clinical Medicine (AICM) course in Miami, Florida. Obtaining a passing grade on the NBME Comprehensive Basic Sciences Examination is mandatory prior to certification for the USMLE Step 1. Students will be given three opportunities to obtain a passing grade on the NBME Comprehensive Basic Science Examination. Students who fail to obtain a passing score on the NBME Comprehensive Basic Science Examination within three attempts are subject to dismissal.

## PROMOTIONS POLICIES

### BASIC SCIENCE SEGMENT

As a result of the new integrated curriculum for 1st and 2nd semester and 3rd and 4th semester, it was necessary to adjust the promotion policies to reflect that at the completion of 1st and 3rd semester, the content of a given discipline has only been covered partially.

These new policies were implemented for the semester beginning in May 2005 and are as follows:

- Students passing a course will receive a temporary grade SP (Satisfactory Progress) that will convert to a final grade (A, B, C, F) at the completion of the 2nd and 4th semester

- Students failing one or two courses with a minimum of 50% raw score will be given the option to advance to semester 2 or semester 4 with a UP (Unsatisfactory Progress) or, repeat the semester on probation.

- At the completion of the 2nd and 4th semester, students with UP must reverse the UP to a passing grade.

- Students who receive less than a 50% raw score in one or two courses, such that the possibility of a passing score was near impossible will be allowed to repeat semester 1 or 3 on probation before being allowed to advance to semester 2 or 4.

- Students in semester 1, 2, 3 or 4 who achieve scores, lower than MPS in three or more courses will be recommended for dismissal. These students, if allowed to repeat, must repeat the semester on probation before being allowed to advance to the next semester.

- The Promotions Committee will review the final grades of students in the above categories, after the course directors have reviewed the grades, and make a recommendation to the Executive Dean as to whether these students can be promoted to the next semester.

- The grades in semesters 1 and 3 will represent 45% of the final grade and grades in semesters 2 and 4 will represent 55% of the total grade.

- Students must complete all Basic Medical Sciences in no more than 6 semesters.  Thus, a student can only repeat two semesters of the Basic Sciences.

- At the completion of semester 2 and 4, students who fail one or two courses will have their grades reviewed by the Promotions Committee to determine if the student must repeat only semester 2 or 4, or repeat semesters 1 and 2 or 3 and 4.

- Students must pay tuition for all courses taken.

Students are subject to dismissal if they:

- Fail three or more courses in a semester. (This applies to all four semesters.)

- Fail any course in a Remedial Semester.

- Are, or will be, unable to complete the four-semester Basic Science segment in no more than six semesters (including regular and Remedial Semesters).

- Fail any course after they have previously completed two Remedial Semesters.

- 8 -

- Fail the Comprehensive NBME in three attempts

- Fail USMLE step2 in three attempts

- Fail to abide by university policies set forth

- Fail to pass the USMLE Step 1 in three attempts and within one year after they become eligible to take this exam.

In order to be eligible to begin clinical core clerkship rotations, students must meet all of the following pre-requisites:

- Successfully complete all the requirements of the Basic Science Coursework.

- Complete successfully the course "Advanced Introduction to Clinical Medicine" offered at the beginning of the Clinical Science segment.

- Pass the USMLE Step 1   (see below).

## CLINICAL SCIENCE SEGMENT

The Clinical Science Curriculum begins with the "Advanced Introduction to Clinical Medicine" (AICM) course. All students are required to take the USMLE Step 1 for the first time within 6 months of becoming eligible. Failure to do so will subject the student to be dismissed.

Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled. (Aside from a private "Extra" loan for five board review course fees, students are ineligible for financial aid during this period.) Some students will use this time preparing for, taking, and passing USMLE Step 1. Students who have already passed Step 1 may begin clinical clerkships at any time during this period. Students who have not received passing scores and have not started clinical clerkship within that period may still preserve their "in-school" student loan deferment status by applying for an academic leave of absence extending up to 180 days from the last day of the AICM. Beyond this timeframe, students who have not resumed clinical training fall into repayment status on their student loans and must be reported as withdrawn, for most purposes, to outside agencies.

Passing the AICM course and USMLE Step 1 are required for continuation into clinical clerkships. During the remainder of the Clinical Science curriculum, all students must take and pass all the required core and elective clinical clerkships. In addition to the 12 weeks of the AICM course, the School requires 48 weeks of core clerkships and 30 weeks of electives, for a total of 90 weeks of clinical training. These requirements are however, subject to change in the future, depending on regulatory and other academic requirements.

A final examination is given at the end of each clerkship. Students are also required to pass the USMLE Steps 1, 2 CK and Step 2 CS licensure examinations (see below).

- If a student fails a core clerkship, the student must repeat that same clerkship before being allowed to continue in the program.

- If a student fails an elective clerkship, that student must repeat successfully either the same elective, or another elective involving the same number of weeks as the failed elective.

- Students with a repeated failure in core subjects or in electives are subject to dismissal.

- Passing the USMLE Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) examinations are required for graduation.

- Eligibility to take the USMLE Step 2 Clinical Knowledge (CK) requires completion of a minimum of 45 weeks of clinical training (including the 12-week AICM and the Internal Medicine core clerkship). This examination must be passed in no more than three attempts. A minimum of 36 weeks of core clerkships and be within 12 months of graduation is required before taking the USMLE Step 2 Clinical Skills (CS).

- The entire clinical segment, currently 90 weeks, must be successfully completed within 120 weeks of attendance.

## GOOD STANDING AND SATISFACTORY ACADEMIC PROGRESS

**Good Standing:** The University reserves the right to withhold services, transcripts and certifications from students who are not in good standing. Students maintain good standing by complying with all academic rules and regulations, and remaining current in all financial obligations.

**Satisfactory Academic Progress:** Satisfactory Academic Progress represents an acceptable level of performance in meeting degree requirements within specified time periods. It is used in both academic evaluation and determination of financial aid eligibility.

Students maintain *satisfactory academic progress* by meeting the requirements listed under "Promotions Policies."

- Completing the required courses of the Basic Science Curriculum of the first two academic years (four semesters) in no more than 6 semesters of attendance.

- Passing all coursework during probationary (remedial) semesters.

- Passing the NBME Comprehensive Basic Science Exam in no more than three attempts, taken within a year after completing the Basic Science segment.

- Taking the USMLE Step 1 within six months after becoming eligible.

- Passing the USMLE Step 1 in no more than three attempts, and within one year after becoming eligible.

- Completing the 90-week Clinical Science segment in no more than 120 weeks of attendance.

- 10 -

- Completing the entire Doctor of Medicine Program in no more than 210 weeks (4 calendar years) of attendance.

- Passing the USMLE Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) in no more than three attempts.

Note: All of the above items refer to actual attendance in regular or Remedial Semesters, as well as actual weeks of attendance in the clinical training segment. They do not include periods when the student is on an academic leave of absence (ALOA) for preparation and time needed to schedule to take the two national examinations (USMLE Steps 1, 2CK & 2CS), the time of regularly scheduled breaks between semesters, or while pending assignment to a scheduled clinical clerkship. Also excluded are emergency ALOA's. (See section on *Emergency Leaves.*)

A semester during which an emergency leave of absence is taken, or in which the student withdraws prior to the end of Week 2 of the semester, will not be counted toward the limit for meeting the above requirements.

Students who do not meet the standards for *Satisfactory Academic Progress* are subject to dismissal. However, in the case of very unusual circumstances, the Promotions Committee may determine, on an individual basis, that a student may continue in the School for one semester (on probation).

## *PROBATION*

Students may be placed on academic probation for academic or behavioral "non-cognitive" issues.

"Academic Probation" is based on course work and professional behavior and recommended by the Promotions Committee to the Executive Dean.

Students are on academic probation while they are repeating basic science courses in Remedial Semesters or clinical training periods. Students on academic probation are also placed on financial aid probation for one semester. During this probationary semester, students may obtain financial aid. If they are not removed from probationary status the following semester, they will be ineligible to obtain any aid. Additional detailed information regarding financial aid eligibility is provided in the University publication, Ways & Means of Financial Aid.

This being a professional school, professional behavior is as important as is academic performance. Students may be placed on academic probation for "non-cognitive" or behavioral problems at the recommendation of the Grievance Committee or the Honor Council with concurrence of the Grievance Committee with the approval of the Executive Dean. This academic probation is based on a student's behavior violating one of the requirements in the Student Handbook. Students may be requested by the Grievance Committee to undergo a physical or psychological examination as well as other associated assessments.

- 11 -

## ATTENDANCE

In the Basic Science segment of the curriculum, students are expected to attend all scheduled classes, lectures, conferences, laboratory sessions/exercises, and examinations. Unexcused absences may adversely affect the final grade in a course. In order to successfully pass the Problem-based Learning (PBL) program a student must attend and participate in the required number of sessions. Failure to do so may result in failure in the course or courses involved in the PBL case. In some courses, especially those in which specific sequential skills are learned, if a student does not attend all sessions, arrangements must be made with the course director to make up the missed sessions. Failure to take an exam results in a grade of zero in that exam.

In the Clinical training period, students are required to be in attendance 100% of the time. Also, students must be in compliance with any specific rules and regulations mandated by the hospitals where they are completing their clerkships.

Any unauthorized absence or failure to report to a clinical clerkship will be grounds for dismissal. In addition, the student will receive a grade of F for that clerkship.

Ross University School of Medicine is non-sectarian, and as such does not close for the religious holidays of any specific denomination or group. Students who miss classes or laboratories for any reason will be responsible for the content of all missed course work. Examinations that are scheduled to occur on religious holidays will not be rescheduled and no accommodation will be made.

## LICENSURE TO PRACTICE MEDICINE IN THE U.S.

In order to be licensed and practice medicine in the United States, the Educational Commission for Foreign Medical Graduates (ECFMG) requires students to take and pass the United States Medical Licensing Examinations (USMLE) Step 1, Step 2CK and Step 2CS (See www.ecfmg.org.)

Ross University School of Medicine students and graduates are eligible to sit for these exams. The USMLE has three Steps, the first two of which are taken by students while in medical school. Passing Steps 1, 2CK (Step 2 Clinical Knowledge) and 2CS (Step 2 Clinical Skills) of the USMLE, is required for graduation.

Students must have their applications for these exams certified by the University Registrar's Office in New Jersey, before the exams are taken. See section below on "Certification For The USMLE Examinations."

Step 3 of the USMLE, the final step for licensing, is taken after graduation, during, or at the conclusion of residency training.

Information regarding the examinations may be obtained from the Educational Commission for Foreign Medical Graduates (ECFMG), 3624 Market Street, Philadelphia, Pennsylvania 19104-2685. Telephone: (215) 386-5900; Fax: (215) 387-9196; Website: www.ecfmg.org

- 12 -

Certification by the ECFMG is required for entrance to residency training and licensure.

## POLICY REGARDING UNITED STATES MEDICAL LICENSING EXAMINATION (USMLE), STEPS 1 & 2

The University has adopted the following policy regarding the United States Medical Licensing Examination:

### THE USMLE STEP 1

The School of Medicine uses the USMLE Step 1 as one criteria of a student's overall knowledge necessary for entering into clinical clerkships.

Students become eligible to take the USMLE Step 1 when they have passed all courses in the Basic Science Curriculum, successfully completed the Advanced Integration to Clinical Medicine clerkship, and, have passed the NBME Comprehensive Basic Sciences Exam.

Students are required to sit for the USMLE Step 1 examination for the first time within 6 months after becoming eligible. Failing to do so will result in the student's administrative withdrawal from the school of medicine. Additionally, students cannot sit for the exam while on an approved Leave of Absence.

Students are required to take and pass the USMLE Step 1 in no more than three attempts, and within one calendar year of becoming eligible.

Students who do not pass the USMLE Step 1 in three attempts within a year after becoming eligible are dismissed from the School of Medicine. Such students may apply for readmission. If granted such readmission, additional preparation courses taken in Dominica may be recommended.

Those who receive very low scores on the USMLE in the first or second attempts may be required to repeat certain parts of the curriculum before they can be certified for another attempt. This will also depend on the time that has elapsed since they became eligible. These students are not eligible for financial aid.

**Passing Step 1 is required by the University to proceed to the core clinical clerkships of the curriculum.**

### THE USMLE STEP 2 CLINICAL KNOWLEDGE (Step 2 CK)

The USMLE Step 2 CK assesses whether the student is able to apply the medical knowledge and understanding of clinical science considered essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. Step 2 CK of the USMLE is taken in the clerkship years, after completion of the required clinical training. Passing Steps 1 and 2 CK and CS (Clinical Skills) of the USMLE are requirements for graduation and acceptance into residency training.

- 13 -

Students are eligible to be certified to take the USMLE Step 2 CK provided that the student has completed a minimum of 45 weeks of clinical training, which must include the Internal Medicine core clerkship and is within 12 months of graduation.

Students must pass Step 2 CK in a maximum of three attempts, and within two calendar years of becoming eligible, in order to receive the Doctor of Medicine degree from Ross University School of Medicine.

Students requesting a LOA to prepare for Step 2 CK will be allowed a period of time not to exceed 6 (six) weeks.

### THE USMLE STEP 2 CLINICAL SKILLS (Step 2 CS)

The Step 2 CS is taken during the final year of medical studies. The Step 2 CS assesses whether an examinee can obtain a relevant medical history, perform a physical examination of a patient, and compose a written record of the experience. It includes an evaluation of the examinee's ability to communicate effectively in the English language

To be certified to take the Step 2 CS, students must have completed 32 weeks of core clinical clerkships, which must include Internal Medicine, and must be scheduled for at least 36 weeks of core clerkships and be within 12 months of graduation.

### CERTIFICATION FOR THE USMLE

Applications for the USMLE Steps 1 and 2 CK and CS, are available online from www.ecfmg.org.

To be certified, a student must be in good standing and must have met all of his/her financial obligations to the University. All students requesting re-certification, in order to take this examination a second or third time, must submit to the University Registrar's Office a copy (both sides) of the USMLE score report for the previously taken examination. Students should normally re-take these examinations as soon as they are again eligible. However, the Dean of Clinical Sciences will, upon receiving documentation of a failing score on either Step 1, Step 2 CK or CS, review the student's performance to determine whether there is a need for remedial work before the student re-takes the examination.

Students who pass the USMLE Step 1 and are requesting placement in clinical clerkships must also submit a copy of the score report, along with the performance profile to the University Registrar's Office. Verbal statements or incomplete reports are not acceptable.

Students who are administratively withdrawn, and have not passed the USMLE on their first or second attempts, may request to be sponsored to take or re-take the USMLE through the University through a process of reapplication made through the University Admissions Office. Such requests for sponsorship will be reviewed individually, and may include certain conditions for approval.

- 14 -

Case 1:07-cv-02433-CBA-RER   Document 98-4   Filed 04/28/11   Page 42 of 68 PageID #: 1634

Sponsorship for taking or re-taking the USMLE, within a specified period of time, will be provided to those who meet certain criteria (see below). Students will not be reinstated into active status until they pass the USMLE and begin their clinical clerkships.

Evaluations for sponsorship will include, but are not limited to:

a) The time that has elapsed between when they are eligible and when the USMLE is taken for the first time;

b) The USMLE scores received in prior attempts; and

c) Related items dealing with the student's activities during the interim period.

## PROFESSIONAL CONDUCT, ETHICS

Ross University School of Medicine expects its students to adhere to the highest standards of ethical and professional behavior in every aspect of their lives, as expected of medical professionals. Students shall conduct all aspects of their lives with honesty, integrity, and respect for others. Failure to do so may result in disciplinary action, including dismissal from the School.

Cheating (whether on examinations or with laboratory data), stealing (whether from the Library or from fellow students), and plagiarism will not be tolerated and can lead to expulsion from the school.

A student found cheating on an examination receives a grade of zero for that examination, and is subject to dismissal from the School.

All students must bring the official RUSM identification card to all exams. If a student suspects a fellow student of cheating during an exam, the student should discreetly alert an exam proctor. No bags or books may be brought into the examination room. Final and make-up examinations must be returned and they may not be removed from the examination room. If a student is ill and unable to attend the exam, he/she must produce a doctor's letter and inform the course director or the administration at the earliest opportunity.

Medical students shall demonstrate professional behavior that would be expected of a physician, including, but not limited to:

(a) Being truthful in carrying out educational and clinical responsibilities, never falsifying information or purposefully misrepresenting a situation;

(b) Being punctual, reliable, and conscientious, in fulfilling professional duties;

(c) Maintaining confidentiality of information concerning patients, and refraining from discussing cases, except under appropriate circumstances;

(d) Not participating in patient care under circumstances in which they are under the influence of any substance, or other condition, which might impair their ability to function;

- 15 -

setting;

(e) Maintaining professional hygiene, demeanor, and appearance when in a patient care setting;

(f) Accepting the responsibility to review plans or directives for patient care with the attending physician if the student, after careful consideration, believes that these plans or directives are not in the best interest of the patient;

(g) Clearly identifying him/herself as a medical student in patient care settings, and respecting civil laws, hospital rules, and University rules governing the conduct of students;

(h) when students are on campus or participating in RUSM activities they must at all times display their Ross University I.D. cards;

(i) Not be in possession of alcoholic beverages, knives, switchblades, firearms or illicit drugs when on University grounds or involved in RUSM sponsored activities;

(j) Showing compassion and respect for themselves, their colleagues, faculty, and patients who participate in their education.

## *SEXUAL HARASSMENT*

Sexual harassment undermines the character and purpose of the University. Sexual harassment includes unwelcomed sexual advances, verbal or physical conduct of a sexual nature and inappropriate sexualization of the working environment with words, materials or behavior. It may involve women being harassed by men, men being harassed by women or harassment between persons of the same sex. Sexual harassment is subject to disciplinary action within the University community. Charges of sexual harassment can be filed by following the University's established grievance procedures for students, faculty, and staff.

## *PROBLEMS, GRIEVANCES*

Assistance with a variety of concerns and problems is available to students on the campus in Dominica. Students are free to discuss academic problems with their professors, faculty advisors, course director, department heads, and the assistant/associate deans of Student Affairs.   All professors publish times when they are available in their respective offices.

Counseling service is available for students experiencing academic or personal difficulties. The School's Behavioral Science Department operates this service. Representatives of most major religions are also available in Dominica.

- 16 -

Case 1:07-cv-02433-CBA-RER Document 64-2 Filed 09/28/09 Page 18 of 31

All students and faculty members have the right to present grievances to the *Grievance Committee.*

The Grievance Committee consists of faculty and student representatives. It can also advise students and make recommendations to the administration. The Grievance Committee is the investigative and judicial arm of the Dean's Office, and its authority is derived from that office. The Grievance Committee has authority over all matters referred by the Executive Dean, the Dean of Academic Administration and Student Affairs, the Associate Dean of Student Affairs, the Student Government Association, and any individual student or faculty member, including, but not limited to, violations of the professional conduct standards. All decisions and reports go to the Executive Dean and the Dean of Academic Administration and Student Affairs for review, and by copy to the initiating source. The final decision is that of the Executive Dean will be copied to the President.

Any non-academic recommendation made by the Grievance Committee, and executed by the Dean to suspend or terminate a student from Ross University School of Medicine may be appealed to the Office of the President. The President and at least one other member of the administration, appointed by the President, hear the appeal of the Dean's decision. The student can be represented by counsel, and has the right to present witnesses and documentary evidence. The student can choose to present his/her appeal in writing, by telephone, or through an in-person hearing. A student who wishes to appeal a determination of the Grievance Committee must give written notice of intent to appeal to the Office of the President within ten days of receiving the Dean's decision, based upon the report from the Grievance Committee.

## *REGISTRATION AND OTHER REGISTRAR SERVICES*

### *INITIAL REGISTRATION OF INCOMING STUDENTS*

Students enrolled in the Basic Science courses must register in person each semester before classes begin, and must present their passports on campus at that time, in order to receive their official RUSM identification. Students registering late without satisfactory documentation are charged a late registration fee of US$100 daily. (This fee is not retained by the University but credited to the Student Government Fund). No unregistered student will be admitted to classes. Registration for Basic Science courses is conducted on the campus in Dominica. The official Registrar's records, however, are maintained in the University's central offices in New Jersey.

Any specified documentation upon which the student's admission is contingent must be submitted to the University Registrar by the end of that semester. If essential documentation remains missing, the student will not be permitted to attend the subsequent semester, and will be administratively withdrawn.

MCAT scores are required as part of the Admission requirements and will be used in conjunction with other information required for admission to RUSM.

Tuition and fees are generally due approximately 15 days before the start of classes. For students receiving financial aid, tuition is deferred until an in-person registration occurs. At that point, only students with approved financial aid and/or those sponsored by a Ross recognized third-party payer will be allowed to register unless approval is granted by the University Bursar.

In such cases, it is expected that the student complete a promissory note and remit payment within 30 days from the beginning of the semester. Late payments are subject to a $75.00 late fee and the student may also be considered for an administrative withdrawal based on non-payment as indicated on the terms and conditions of the promissory note. Furthermore, the student will not receive any credit for that semester.

## *REGISTRATION OF CONTINUING STUDENTS*

Continuing students in the Basic Sciences must register in person on campus at the beginning of each semester and must present at that time the official RUSM identification card, to ensure proper identification. There is a charge of US$25 to replace a lost ID card.

Students who are unavoidably late returning from break must:

1.   Notify the Dean of Academic Administration and Student Affairs and the Campus Registrar in writing before the registration date and, upon their return, present valid documentation that is satisfactory to the Dean of Academic Administration and Student Affairs. Fax communication is acceptable. Faxes may be sent to 1-767-445-3276.

2.   Students registering late without satisfactory documentation are charged a late registration fee of US$100 daily. (This fee is not retained by the University but credited to the Student Government Fund.)

3.   Students arriving on campus after the end of the registration period established for each semester will not be permitted to register for that semester. Any financial aid disbursements received by the University will be returned to the lender.

Tuition and fees are generally due approximately 15 days before the start of classes. For students receiving financial aid, tuition is deferred until an in-person registration occurs. At that point, only students with approved financial aid and/or those sponsored by a Ross recognized third-party payer will be allowed to register unless approval is granted by the University Bursar.

In such cases, it is expected that the student complete a promissory note and remit payment within 30 days from the beginning of the semester. Late payments are subject to a $75.00 late fee and the student may also be considered for an administrative withdrawal based on non-payment as indicated on the terms and conditions of the promissory note. Furthermore, the student will not receive any credit for that semester.

## *REGISTRATION – CLINICAL SCIENCE SEGMENT*

Students in the clinical phase of the curriculum register through the Office of the Dean of Clinical Sciences in New Jersey. This includes the introductory clinical semester.

Once students have successfully completed the AICM course, have passed the USMLE Step 1, have submitted documentation of their scores to the University Registrar (copies of both sides of the USMLE report), and have received financial clearance from the University Bursar, they will be assigned to clinical clerkships by the Office of the Dean of Clinical Sciences

The University has a responsibility to place students in their individual clinical clerkships. Solely the Office of the Dean of Clinical Sciences makes this determination. All students are required to report to the clerkships to which they are assigned.

In general, clerkship programs will be taken according to a pre-arranged schedule. Students will be notified of their entry into a given program via written confirmation from the Office of the Dean of Clinical Sciences.

Students in the Clinical Science curriculum register for an academic year (two semesters, each encompassing 15 weeks of clerkships.) Clerkship schedules will be issued to students in blocks of at least 30 weeks of clerkship assignments. Students who decline their clerkship schedule must sit out for a semester (4 months) before reassignment will be provided. Failure to attend a scheduled clinical clerkship is grounds for dismissal from the School and an F will be posted on the transcript for that clerkship.

Students performing clerkships are considered enrolled full-time, provided they are scheduled for a minimum of 12 weeks. The calendar period in which fifteen weeks of clerkships are completed defines the semester for that student.

Students who are about to begin or are continuing in the clerkship program should consult the Clinical Clerkship Program Guidelines published by the Office of the Dean of Clinical Sciences for more detailed information.

## *TRANSCRIPT REQUESTS*

Official transcripts are requested from and provided by the University Registrar in New Jersey. Students may obtain a transcript request form from the Campus Registrar or online at www.rossmed.edu. The Campus Registrar will forward requests to the New Jersey office. Requests cannot be taken over the telephone or via e-mail. Students in the Basic Science segment will receive a grade report when received in Dominica. Transcripts are not released until all financial obligations to the University have been met and any missing administrative documents have been received.

## *STUDENT LOAN DEFERMENT PROCESS*

If you have previously attended another school and received financial aid in the form of student loans, and wish to defer repayment of your student loans using a form from your lender, please see the Campus Registrar for instructions. Loans cannot be deferred during curriculum gap periods of 30 days or longer.

## *TUITION DURING REMEDIAL SEMESTERS*

Full tuition is charged for students registered full-time (12 or more credits). Prorated tuition is charged during Remedial Semesters for students who are remediating less than 12 credit hours of coursework.

- 19 -

Case 1:07-cv-02433-CBA-RER   Document 64-2   Filed 09/28/09   Page 21 of 31

Any reduction in course load will impact the total financial aid that the student receives, based on government regulations and financial aid policies.

## TUITION REFUND POLICY FOR WITHDRAWALS

A withdrawal occurs when a student's enrollment is permanently discontinued or, in some cases, even temporarily interrupted (see Note below). A withdrawal may be official (when the student notifies the Dean of Academic Administration and Student Affairs in writing) or unofficial (without written notification). The effective date of withdrawal is normally the student's last date of attendance.

If a student withdraws, Ross University's handling of tuition corresponds with Federal loan entitlement regulations, which are based on the period attended:

- If a new student withdraws prior to the start of the first semester, no tuition charges are due; however, acceptance deposits are forfeited.

- If a continuing student withdraws prior to the start of a semester, no tuition charges are due.

- If a student withdraws during the first 60% of a semester, tuition charges are directly prorated based on the portion of the semester that has elapsed. (As semesters are normally 15 weeks in length, tuition is prorated for withdrawals during weeks 1 through 9.)

- If a student withdraws after the first 60% (i.e., after completing the 9th week) of a semester, the full tuition charges remain due.

For withdrawal during the first 60% of a semester, as per Federal regulations, student loan entitlement is recalculated, and Ross University and the student are each proportionally responsible for returning "unearned" financial aid to the relevant lender(s). In addition to the lender returns required by Federal regulations, Ross University returns any remaining credit balance to lenders, which decreases the student's loan debt for that semester.

**Note:** Although a leave of absence may be authorized in limited circumstances, failure to return to school from a leave of absence is considered a withdrawal as of the last date of attendance. Please note that a leave of absence and an academic leave of absence are two different statuses. (For an explanation of an academic leave of absence, refer to the section on academic policies.) Additionally, under federal regulations, a leave of absence must be requested and approved in advance, may not exceed 180 days, and may not be granted within 12 months of a previous leave of absence. An interruption of enrollment status that does not qualify as a leave of absence is considered a withdrawal as of the last date of attendance.

See section above regarding policy on enrollment status for taking the USMLE. (Pages 13-15)

## EMERGENCY ABSENCES, VACATION & ACADEMIC LEAVES OF ABSENCE

The School of Medicine curriculum is designed to be a series of integrated, consecutively scheduled learning experiences. Interruptions of the educational program are academically undesirable and are of concern to medical licensure boards; they also can affect financial aid eligibility and loan repayment status. Emergency absences are granted only under extraordinary and well-documented circumstances.

Students are advised to consult with the Dean of Academic Administration and Student Affairs or the Dean of Clinical Sciences, as appropriate, to discuss their plans for any interruption of their studies and its academic impact. Those receiving student loans must also contact the Financial Aid Office; additional information is provided in the University publication *Ways & Means of Financial Aid*.

During the clinical semesters students must also abide by the policies and procedures of the institutions they are attending. Short breaks due to scheduling constraints may occur between clinical clerkships. Such breaks, if not exceeding four weeks have no impact on the student's enrollment status. (Consult the Financial Aid Office publication, *Ways & Means of Financial Aid*, for information about loan disbursements in the event of longer gaps.)

### EMERGENCY ABSENCES

Students may have unavoidable, non-academic reasons for interrupting their enrollment during a semester. With the approval of the Dean of Academic Administration and Student Affairs or her/his designee, a student may be temporarily excused from classes during a semester due to documented emergency circumstances, such as severe illness or major injury to the student himself, or a similar emergency or death in the student's immediate family. Such a brief absence, wherein a student intends to (and can) return within two weeks to complete all coursework for that semester, constitutes an emergency absence and has no effect on the student's enrollment status. Documentation of the emergency is required.

A student who finds it impossible to return from an emergency absence within two weeks may request an academic leave of absence (see ALOA below) extending for the remainder of the semester. Failure to request an ALOA will result in administrative withdrawal (see below) and the student must apply for readmission.

The interrupted semester will not be counted when determining time limits for satisfactory academic progress. In the case of an ALOA following an emergency absence, students will not be charged tuition twice for the same semester.

### ACADEMIC LEAVE OF ABSENCE (ALOA)

The Basic Science segment is scheduled in three semesters per calendar year with short breaks between semesters. A student who needs a longer break between semesters for personal reasons may request an academic leave of absence (ALOA) as outlined below. As a general policy an ALOA will be granted for only one semester, and the student must return in the following semester.

- 21 -

- An ALOA must be requested in writing on the standard form, stating specific reasons and return date, and must be approved by the Dean of Academic Administration and Student Affairs or her/his designee, or the Dean of Clinical Sciences and the University Registrar. The ALOA may only be requested following the end of the semester and the last day of registration of the ALOA semester. An ALOA is not valid until it is fully processed **and** recorded by the University Registrar, and the student has received a confirmation copy. Submission of forms to the University Registrar and confirmations may be conducted by fax. Faxes may be sent to 1-732-978-5306

- During the Basic Science phase, an ALOA can begin only after the completion of a semester, and the student must return at the beginning of the next semester following the completion of the student's ALOA. The ALOA may be renewed, prior to expiration, for an additional semester, based on the circumstances of the request. However, once the ALOA has extended beyond 180 days, you will be reported as withdrawn effective the last day of class attendance.

- During the Clinical Science phase, an ALOA can be taken only at the end of a clinical segment or clerkship, and the student must return to resume clinical clerkships at the time specified.

- During the Clinical Science phase, requirements for an ALOA to prepare for Step 2 will be granted for a period of time not to exceed 6 weeks.

A student who does not return from an ALOA at the specified time will be administratively withdrawn, effective the last day of class attendance. (Note the effect of this on financial aid obligations; see *Ways & Means of Financial Aid*.)

All students returning from an authorized absence (emergency or ALOA) must report to the Campus Registrar or Dean of Clinical Sciences and must pursue the curriculum then in effect. They are subject to all policies that are in force at that time and must pay the current tuition and fees. Similarly, students who defer their enrollment or are readmitted or reinstated to the School after any period of absence are also subject to all policies, tuition and fees then in effect.

## *UNAUTHORIZED LEAVES*

Except for approved emergency absences outlined above, students who leave during a semester or a scheduled clinical clerkship will be administratively withdrawn (see below).

Students wishing to return to the School after an unauthorized leave must apply for readmission. The past performance of these students will be reviewed by the Promotion Committee to determine whether they can be readmitted and, if so, under what conditions, including on academic probation.

## *WITHDRAWALS*

Students who have been withdrawn (by student request or administrative action) must apply for readmission if they wish to return to the School and are subject to the Tuition Polices for

- 22 -

Withdrawals. Such readmission must be reviewed by the Promotions Committee and is not guaranteed. They will be subject to all academic policies and tuition and fees then in effect, without any "grandfathering" provisions based on their original admission.

## STUDENT WITHDRAWALS

Students may not withdraw from a single course during a semester; they must withdraw completely from the School. Basic Science students may begin the withdrawal process by obtaining a withdrawal form from the Campus Registrar's Office in Dominica, and appropriate clearances from the Library, Financial Aid Office, and the Dean of Academic Administration and Student Affairs. Such students will receive W, WP, or WF on their transcripts depending on whether they were passing or failing a course at the time of their withdrawal, as specified under the *Student Grading and Promotions Policies* section of this Handbook.

Refunds, if required, will be determined by the last day of attendance in an academically related activity.

Those who received WF in any of their courses at the time of withdrawal will be reviewed by the Promotions Committee to determine whether they are eligible for readmission.

Students who were failing one or more courses at the time of withdrawal will be on academic probation if they are readmitted.

These students will also be on financial aid probation, and will not receive funds to continue if they are still on academic probation in the succeeding semester.

## ADMINISTRATIVE WITHDRAWALS

The University Registrar enters an administrative withdrawal in the student's record when any of the following apply. The student:

- Does not return to the campus to register for the following semester and attend classes in Week One of a semester.

- Does not return at the time specified for the end of an approved leave.

- Is not scheduled for a clinical rotation for a period of 30 days or more and has not applied for and received an approved academic leave of absence.

All students who are administratively withdrawn will be reported as withdrawn effective as of the last day they attended classes. The date of withdrawal will be reported to the U.S. Department of Education, if these students had Stafford loans.

## DEFERRALS

Prior to the start of classes, students admitted to a specific semester may request to defer their admission to a subsequent semester. This is limited to no more than the next two semesters.

- 23 -

Those who do not begin enrollment during that period are considered to have deactivated their applications and must re-apply for admission. Applications for deferrals must be made to the New Jersey Admissions Office. Students deferring to a future semester must meet all the requirements in effect for that semester.

Entering students who, following their initial registration, wish to defer their enrollment to the following semester may do so through the Dean's Office in Dominica, only during Week One of the semester.

Students who are admitted for a given semester, do not come to the Campus to register for that semester, and do not request a deferral, are considered to have deactivated their applications and must re-apply for admission.

## DISCIPLINARY ACTIONS

RUSM may implement a variety of disciplinary actions for non-academic infractions such as, but not limited to theft, vandalism, assault, drug use, animal neglect, or any blatant disregard for school policies, faculty or administrative authority, or professional ethics.  These actions are verbal reprimand, letter of reprimand, restitution, suspension, and dismissal.

## SUSPENSION

Students may be suspended for a period, during which a student will not be allowed to enroll in classes and may have special requirements to complete prior to returning to his/her academic program.  The Dean approves all suspensions.

Suspension during an academic semester does not warrant reduction of tuition and fee charges.

## DISMISSAL

Students may be dismissed from the School for poor academic performance, for violation of the Honor Code, and/or for disruptive or unprofessional behavior.  As a general School policy, students who are dismissed will not be considered for readmission.

A process for appeal is available to dismissed students.

Suspension during an academic semester does not warrant reduction of tuition and fee charges.

## STUDENT HONOR CODE

*The student body has developed an Honor Code, with which all students must comply.* The Honor Code is attached hereto and incorporated herein.

Each student is bound by its provisions and required to sign a written acknowledgement of receipt. Documented failure to do so will result in disciplinary action, including dismissal from the School.

Cheating (whether on examinations or with laboratory data), undisclosed knowledge of cheating, stealing (whether from the Library or from fellow students), and plagiarism will not be tolerated and can lead to expulsion from the school.

In the event that a student is accused of acts that are within the jurisdiction of both the Honor Council and the Grievance Committee, then the accused student shall have the right to choose the forum in which he or she will be heard.

## *STUDENT POLICY ON ALCOHOL AND OTHER DRUGS*

Ross University has developed a *Student Policy on Alcohol and Other Drugs*, with which all students must comply. It attached hereto and incorporated herein.

## *STUDENT PRIVACY RIGHTS*

The University follows the guidelines of the U.S. Family Educational Rights and Privacy Act (FERPA), which are as follows:

(1) The right to inspect and review the student's education record within 45 days of the day the University receives a request for access.

Students should submit to the University Registrar a written request that identifies the records they wish to inspect. The Registrar will make arrangements for access and notify the student of the time and place where the record may be inspected.

(2) The right to request the amendment of the student's education records that the student believes are inaccurate or misleading.

Students may ask the University to amend a record that they believe is inaccurate. They should write to the University Registrar, clearly identify the part of the record they want corrected, and specify why it is inaccurate.

If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided when the student is notified of the right to a hearing.

(3) The right to consent to disclosures of personally identifiable information contained in the student's education record, except to the extent that FERPA authorizes disclosure without consent.

One exception, which permits disclosure without consent, is disclosure to school officials with legitimate educational interests. A school official is a person employed by the University in an administrative, supervisory, academic or research, or support staff position (including law enforcement unit personnel and health staff); a person or company with whom the University has contracted (such as an attorney, auditor, or collection agent); a person serving on the Board of Trustees; or a student serving on an

- 25 -

official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his or her tasks.

A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility. Upon request, the University may disclose education records without consent to officials of another school in which a student seeks or intends to enroll.

The University may disclose directory information upon request. Directory information includes:

Name, address, telephone listing
Dates of attendance, degrees and awards
Field of study
Most recent previous school attended
Photographs
Date and place of birth
E-mail address

(4) The right to file a complaint with the U.S. Department of Education concerning alleged failures by the University to comply with the requirements of FERPA. The name and address of the Office that administers FERPA is: Family Policy Compliance Office, U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202-4605.

## THE ANNE ROSS LIBRARY AND RELATED MATTERS

The Anne Ross Library and Learning Resource Center (LRC) strives to be the intellectual center of the Ross University School of Medicine, and provides services, resources, equipment and facilities needed to enhance self-directed learning, support evidence-based medicine, and help students succeed academically.

Students are expected to purchase required textbooks for each course. The Library houses a full range of biomedical books, journals, study aids, audiovisual programs, and computer-assisted instructional materials that supplement the required readings.

Students are required to display their Ross University student identification card to gain entry to the library. The identification card is also required for all Library transactions and services including borrowing books, making photocopies, using multimedia resources and accessing the Internet. The Library is intended for University students, faculty and staff, only. Children are not permitted in the Anne Ross Library & LRC.

During the semester, the Library is open 17 hours per day (7:00 a.m. to midnight) seven days per week. Five days prior to the Mini examinations, and 10 days prior to the final examinations, the Library will be open until 2 AM. There are other facilities on campus that are open 24 hours per day for students who wish to study at odd hours. It is not recommended that students stay up all night to study before exams. There are limited operating hours during breaks and holidays and generally the library will be closed during the weekend following the administration of the Comprehensive Basic Science Examination.

Students are expected to return Library materials on time. Overdue fines are assessed to ensure prompt return of high-use items, and any money collected is donated to the Student Government

- 26 -

Association. Failure to pay fines or return books will affect a student's ability to borrow other materials and may affect the release of final grades.

Eating, drinking or smoking is not permitted in the Library.

Stealing or damaging Library materials, equipment or furniture is a serious offense. Students caught vandalizing, mutilating or stealing Library materials, equipment or furniture, or physically threatening staff members will be suspended immediately pending a hearing that may result in expulsion from the University.

Students are expected to take their notes, books or personal items with them when they leave the Library. At closing time each day, the study tables and carrels will be cleared of all materials.

Students who consistently ignore basic rules of the Library will be identified and warned by the Library staff that will submit a written report to the Executive Dean. The Dean will refer the issue to the Grievance Committee for further action. Students that receive more than three (3) warnings for inappropriate behavior in the Library are subject to disciplinary action including but not limited to being denied access to the library for the rest of the current semester and/or a subsequent semester.

Students are encouraged to make suggestions and express their ideas about Library services, resources and facilities to the Library Director.

## MONETARY INSTRUMENTS (STUDENT REFUND CHECKS)

Please note that the United States Department of Customs and Border Patrol have specific rules regarding the transportation of monetary instruments (refund checks, cash, etc...) into and out of the United States.

For more information, please visit the United States Department of Customs and Border Patrol at www.cbp.gov and perform a search for currency reporting.

## BANKING IN DOMINICA

Banking can be conducted at two locations in Portsmouth, Barclay's Bank and National Commercial Bank, or at the Scotia Bank in Roseau, as well as at an automatic teller machine (ATM) on campus. Funds are disbursed in EC$ from the ATM. To use the ATM, students must have an account at National Commercial Bank, to which funds may be transferred through one of the following American banks: Bank of New York, Bank of America, or Nations Bank.

Ross University checks can be cashed immediately at the Scotia Bank and certain other banks. Financial aid checks can also be cashed immediately in part or entirely at certain of the banks. Endorsements by two authorized signatories at the rank of Dean, Vice Dean, or Associate Dean, are required in order to cash checks at Barclay's Bank. However, National Commercial Bank requires only one signature. Ross University checks drawn on Chase Manhattan Bank do not require a Dean's signature to be cashed at the National Commercial Bank.

Students are strongly encouraged to establish banking in the US and Dominica with the appropriate procedures to be able to have electronic transfer of funds to their Dominica account

- 27 -

All banks impose a 30-working day (at least) delay before honoring US$ personal checks drawn outside Dominica. Banks will cash personal checks in U.S. dollars, without the delay, if they are signed by the Deans as listed above. The most reliable way for students to get money quickly in Dominica is to have an ATM card that will work at Royal Bank of Canada and at Barclay's, or to arrange for the money to be wire transferred. Wire-transferred funds are almost immediately negotiable. Another way of transferring funds is via international money orders. Traveler's checks are usually accepted.

VISA, MasterCard, and American Express credit cards can be used to obtain money in EC currency at the Dominican banks.

## ADDITIONAL MATTERS OF FINANCE

Occasionally, while studying in Dominica, students waiting for loan checks may find themselves in financial difficulties. In these circumstances, the Dean of Academic Administration and Student Affairs or her/his designee can authorize a temporary loan of EC$100.00 per week from local funds for living expenses.

Queries regarding financial aid in general, or about an individual student's loan status, should be channeled through the financial aid representative on campus.

## HOUSING IN DOMINICA

There is a reasonable stock of housing and hotels in Portsmouth and this stock is continually improving. The University has a housing officer who is available to assist students in securing appropriate accommodations. Students are urged to follow the recommendations of the housing officer on such matters as written inventories of furnishings, and clear statements on responsibility for property taxes, water, phone, and electricity bills before committing to a rental. Generally, these utilities are more expensive than in the U.S., especially international phone calls. Students sharing flats should also make a written agreement as to individual responsibilities.

## VISAS

The government of Dominica requires that all adults entering the country for more than three weeks must have submitted visa applications prior to arrival. Students must remember that they are guests in Dominica, and must observe all immigration rules and local laws. All students are required to possess a return ticket to their normal country of residence and have a valid visa in their passport. If in doubt, students should check with the campus office that handles immigration issues.

Non-resident, non-U.S. citizens may require a visa to enter the U.S. for the Clinical Science segment.

## SECURITY

The University employs all possible means to promote the security of its students, maintaining a security force on the campus whose duty it is to preserve order and the safety of the students and

- 28 -

the campus. This security force functions under policies and procedures established by the administration, as well as in response to directives from the administration that may be issued and publicized from time to time. All on- and off-campus incidents must be reported to the security force.

In accordance with U.S. Department of Education requirements, information about security and safety practices, as well as campus crime statistics are published annually. This information is distributed to current students and may be obtained, upon request, by any prospective student.

RUSM in Dominica employs a cadre of security officers to provide 24-hour security to the University, its students, and staff, at the Portsmouth Campus. All security officers have received in-house training, supplemented by formal training at the Dominica Police Training School. Thus, they are capable of providing a high level of professional service.

By and large, most student security problems occur outside the Campus compound, which is generally considered relatively safe. However, while the Island has a relatively low crime rate, students and visitors should still take the same precautions that they would take in major cities in the United States.

Security is also provided for the Ross University Clinical Facility at the Princess Margaret Hospital in Roseau, which is used by students during their clinical assignments and clinical clerkships.

## STUDENT GOVERNMENT

The student body elects class representatives, committee members, and officers for the Student Government Association (SGA) each semester. The SGA is active in coordinating athletic events, supervising the weight room, sponsoring and arranging the social activities on campus, and bringing student problems to the attention of the administration. To be qualified to run for office and to serve as an officer, class representative or on a committee, a student must be a full-time student and be in good academic standing as defined in this *Handbook*. Students who are officers in the SGA are considered leaders and role models for the student body. As such, they will be required to maintain a cumulative grade point average (GPA) above 2.6 prior to election. Those who do not meet this criterion will be asked to resign and another will be appointed or elected to serve.

The Associate Dean Student Affairs and the Director of Campus Life supervise the running of the SGA.

Students are required to pay an SGA fee, which is collected with other student fees. In addition, all late registration fees and library fines go entirely to the SGA.

## AMERICAN MEDICAL STUDENTS ASSOCIATION

The American Medical Students Association has a chapter at Ross University. The dues of this organization are voluntary. AMSA works with the faculty to select outside speakers for the Research Day held each semester, provides public service opportunities such as health screening activities for the general public, assists in providing health related services for students, and

- 29 -

provides access to the programs of the National Body of AMSA in legislative and other governmental areas.

## STUDENTS WITH DISABILITIES

In 1990, Congress passed the Americans with Disabilities Act (ADA) that reinforced and extended the nondiscrimination concepts of Section 504. Section 504 contains a nondiscrimination provision which provides that a qualified individual with a disability can not be denied participation in a program receiving Federal financial assistance solely on the basis of a disability. Students with a disability defined within the ADA may request an accommodation. The process to do so is as follows;

1.  The student must submit to the school appropriate documentation (in compliance with ADA) prior to commencing classes each semester. These are to be submitted to the Director of the Exam Center.

2.  All requests will be reviewed via external assessment by a licensed professional who will report his/her opinion to the RUSM Examination Committee that will make a final determination as to the type of accommodation that will be granted.

3.  When an accommodation is granted, it is done so for a single semester. Students with ongoing needs must resubmit their request each semester.

4.  If the documentation exceeds its time limitation, in accordance with the ADA, it is the students responsibility to resubmit to the school updated documents.

## WHEN YOU LEAVE DOMINICA

Please note that students are responsible for all debts in Dominica, whether to the phone company, landlord, Dean's account, or the SGA. While debts to the University remain outstanding, the student may not be allowed to proceed with clinical clerkships or obtain any transcripts from the New Jersey Office. Students must pay all their debts before they leave Dominica. The Dominican laws on debt are strict, and it has happened that students have found themselves in jail for debt.

Each student must find two faculty members to write letters of recommendation. These letters are kept on file for the Dean of Clinical Sciences to use when introducing you to your clinical assignment. These letters are references, not testimonials, and are, therefore, confidential; students may not have copies. It is advisable to check with the Registrar to confirm that your letters are on file.

## INTERPRETATION AND MODIFICATION OF THE STUDENT HANDBOOK

The final arbiter of the interpretation of any regulation in this *Handbook* is the Executive Dean or the President, as appropriate. The University reserves the right to modify, or make changes to any rule or regulation in this handbook. Any change pertaining to the Basic Science campus or changes communicated to enrolled clinical students by the Clinical Science Dean become effective on the first day of the semester, unless otherwise noted in the announcement of the change.

It is the student's responsibility to be aware of all regulation in this handbook and any changes or modifications to these regulations.

- 30 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

ANAND DASRATH,

Plaintiff,

- against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

Defendant.

----------------------------------------X

CASE NO.: CV-07-2433

(C. Amon) (R. Reyes)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY
SCHOOL OF MEDICINE'S MOTION TO DISMISS THE AMENDED
COMPLAINT PURSUANT TO RULES 12(b)(1) AND (6)**



CULLEN and DYKMAN LLP

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3700

Case 1:07-cv-02433-CBA -RER   Document 64-4   Filed 09/28/09   Page 2 of 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

ANAND DASRATH,                                     Case No.: CV 07 2433
                                                   (C. Amon)
                        Plaintiff,                 (R. Reyes)

        - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                        Defendant.

----------------------------------------X

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY
SCHOOL OF MEDICINE'S MOTION TO DISMISS THE AMENDED
COMPLAINT PURSUANT TO RULES 12(b)(1) AND (6)**

## PRELIMINARY STATEMENT

Defendant Ross University School of Medicine ("defendant" or "Ross

University") submitting this Memorandum of Law in further support of its motion to

dismiss pursuant to F.R.C.P. 12(b)(1) and (6). Plaintiff's submission in opposition to

defendant's motion fails to rectify plaintiff's failure to exhaust the statutory prerequisites

to asserting an Age Discrimination Act ("ADA") claim. Similarly, plaintiff fails to

explain how his breach of contract and fraud claims are nothing more than veiled

attempts to grieve a failing grade – a function left solely to academic administrators and

not a court of law.

## ARGUMENT

To survive a motion to dismiss, a party cannot simply allege "labels and

conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 at 555, 127 S. Ct. 1955 at

1965 (2007). In order to state a claim, a party's factual allegations must "raise a right to

1

Case 1:07-cv-02433-CBA-RER   Document 64-4   Filed 09/28/09   Page 3 of 10

relief above the speculative level..." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  In fact, the Supreme Court recently reaffirmed and clarified Twombly by stating that Rule 8 demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  A claim must be "plausible on its face." Id.  The court must be equipped by the plaintiff's pleading to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  This standard asks for more than a "possibility that a defendant has acted unlawfully." Id.  The court is required to engage in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  As will be demonstrated herein, plaintiff has failed to meet his obligation to provide grounds entitling him to relief.

## POINT I
## PLAINTIFF ADMITS HE DID NOT COMPLY WITH STATUTORY PREREQUISITES TO COMMENCING THIS ACTION

Plaintiff concedes that the ADA requires that notice of the action be given 30 days prior to commencing suit to the Secretary of Health and Human Services, the United States Attorney General, and Ross University.  See Plaintiff's Memorandum of Law p.5. He also acknowledges the requisite information that this notice must contain:  the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded.  Id.  However, he neither attests to such notice being given nor attaches copies of the requisite notice to his affidavit.

Similarly, plaintiff concedes that 42 U.S.C.§6104(f) requires an exhaustion of administrative remedies which occurs upon the expiration of 180 days from filing the administrative complaint or from the date the agency finds in favor of the recipient of financial assistance.  However, he asserts only that it "can be validly argued that

2

plaintiff's administrative remedies were effectively exhausted." <u>See Id.</u> at p.6.  It is

respectfully submitted that neither the allegations in the complaint nor his explanation on

this motion survives dismissal.

    Plaintiff submits in opposition to this motion to dismiss a letter to the <u>State</u>

<u>Attorney General</u> of New Jersey dated nearly two years after the purported

discrimination.  The letter acknowledges recent correspondence received from plaintiff

and notes that the State Attorney General only has jurisdiction to investigate claims under

state discrimination statutes.  Plaintiff also attaches a letter dated February 4, 2009 from

the Department of Health and Human Services[1] which advises plaintiff that the

discrimination complained of occured more than 180 days before filing the

administrative complaint and the information filed was not sufficient to extend the 180

day deadline.  Plaintiff has confirmed for this Court that a timely administrative

complaint was never filed thus barring this action under the ADA.  Plaintiff's failure to

exhaust necessary and available administrative remedies results in dismissal for failure to

state a claim.  <u>See Brownscombe v. Dep't of Campus Parking</u>, 203 F.Supp.2d 479, 483

(D. Md. 2002) (conversations with school administrators does not constitute exhaustion

of remedies).  As noted by plaintiff himself, the Department of Health and Human

Services "would not hear [his] claim."  Dasrath Affidavit at ¶26.  It is simply not enough

---

[1]  Plaintiff contends that the Department of Health and Human Services is not the appropriate entity with
which to assert a claim based on its own guidelines.  <u>See</u> Plaintiff's Memorandum of Law pg. 7.  Assuming
*arguendo* that this is true, plaintiff further concedes that not only did plaintiff fail to file a timely claim – he
failed to file a claim with the appropriate agency.

Case 1:07-cv-02433-CBA-RER   Document 64-4   Filed 09/28/09   Page 5 of 10

that plaintiff "had every intention of fulfilling"[2] the requirements of 42 U.S.C. §6104, et

seq.  See Plaintiff's Memorandum of Law pg. 7.

## POINT II

## PLAINTIFF FAILS TO STATE A BREACH OF CONTRACT CLAIM

Both parties agree that enrollment in a university gives rise to an implied contract

– if the student meets the conditions proscribed by the university he or she will obtain the

degree pursued.  Ward v. New York Univ., No. 99-8733, 2000 U.S. Dist. LEXIS 14067

at 9 (S.D.N.Y. Sept. 28, 2000).  However, plaintiff does not allege that he met the

conditions proscribed by the school – simply because he can't. As explained in

defendant's moving memorandum of law, plaintiff failed what is referred to in this

litigation as the AICM course.  The AICM course was a pre-requisite to obtaining "the

degree pursued" and to sit for what is referred to in this litigation as the USMLE Step 1

Exam.  Ross University complied with its own rules and regulations when it

administratively withdrew plaintiff for failure to re-enroll to remedy his failing grade.

(See Handbook, p. 13).

Plaintiff alleges in his amended complaint that "pursuant to contract, Defendant

was to accurately record Plaintiff's grades and sponsor Plaintiff to take the USMLE Step

1 examination."  See Amended Complaint at ¶ 20.  This identical allegation is found in

---

[2] It should be noted that the intentions of plaintiff described on this motion stand in stark contrast to plaintiff's former counsel Albert Adam Breud, II, Esq.'s letter to this Court in support of his application to be relieved as counsel.  According to that letter, plaintiff believed that "he is exempt from the notice and exhaustion of administrative remedies applicable to the ADA cause of action" which would've caused Mr. Breud to "violate various rules of [Professional Conduct]" if he continued to represent plaintiff.  See Docket Entry 48, p.2.

4

Case 1:07-cv-02433-CBA-RER   Document 98-4   Filed 04/28/11   Page 63 of 68 PageID #: 1655

Dasrath's original complaint on which Magistrate wrote the following in his Report and

Recommendation when granting defendant's motion to dismiss:

> Dasrath has failed to identify any contractual provision that
> necessitated giving him a passing grade, nor has he properly alleged that
> Ross University acted in an arbitrary or irrational manner nor in bad faith.
> Instead, Dasrath's complaint leads to the conclusion that Ross University
> was merely exercising its proper academic judgment by giving Dasrath an
> "F" in the AICM course.

See Report and Recommendation, Docket Entry 40 at p. 13.  Plaintiff fails to identify in

his amended complaint, or in his submission on this motion, what contractual provision

assures him of a passing grade.   This is especially critical since academic grading is in

the province of academia, not courts.  See Susan M. v. New York Law Sch._ 76 N.Y.2d

241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against

the intervention of courts in controversies relating to an educational institution's

judgment of a student's academic performance").

Plaintiff further alleges in the amended complaint that "defendant was in breach

of its contractual obligation to plaintiff in administratively withdrawing Plaintiff from its

school of medicine without justification."  See Amended Complaint at ¶ 22.  Moreover,

he alleges that Ross University had "no valid reason" for withdrawing its sponsorship of

plaintiff for the USMLE exam.  As Magistrate Reyes explained when evaluating an

identical allegation in plaintiff's original complaint:

> Dasrath's remaining allegations in support of his breach-of-
> contract claim all flow directly from his "F" in the AICM
> course, in that Ross University withdrew its sponsorship of
> Dasrath to take the USMLE and withdrew him from
> enrollment as a student at the university.  These allegations
> are immaterial to the resolution of Dasrath's breach-of-
> contract claim because Dasrath has yet again failed to
> allege that, once it was determined that Dasrath failed the

At CM course, Ross University's subsequent actions were in breach of any contract that it had with Dasrath. In fact, it appears that Ross University's subsequent actions were in accordance with its proscribed rules and regulations.

See Report and Recommendation, Docket Entry 40 at p 13-14 (internal citations omitted). As set forth in defendant's moving Memorandum of Law, it is well-settled that courts will not supplant its judgment for that of educators. See Susan M. v. New York Law Sch., 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance"). As was also mentioned by Magistrate Reyes in his Report and Recommendation:

> Permitting Dasrath to proceed on a facially inadequate breach-of-contract claim would merely allow him to subvert the ADA's administrative exhaustion requirement, and would impermissibly entangle this Court in Ross University's subjective judgment over grading.

See Report and Recommendation at p. 15. Thus Ross University's motion to dismiss plaintiff's breach of contract claim should be granted.

## POINT III

## PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED

Ross University seeks dismissal of plaintiff's fraud claims on two grounds: (1) New York law prohibits plaintiff from asserting breach of contract and fraud based on the same set of underlying facts (See defendant's MOL at pp. 9-10); and (2) plaintiff's fraud claim is defective on its face. (See defendant's MOL at pp. 10-11). Plaintiff fails to address the fact that his contract and fraud claim are based on identical facts and

6

therefore on that ground alone the cause of action should be dismissed. In addition, plaintiff's woeful attempt to resuscitate his fraud cause of action is unavailing.

As mentioned in Ross University's moving Memorandum of Law, not only does plaintiff fail to plead the essential elements of fraud, he fails to allege facts that "give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiff simply does not assert "motive and opportunity to commit fraud" or "conscious misbehavior or recklessness." Id.

In support of his fraud claim plaintiff states that he "passed all five parts of the AICM course" yet received a failing grade. See Amended Complaint ¶ 25. He alleges that a letter reflecting the administrative withdrawal of plaintiff's grade was similarly "false." See Amended Complaint ¶¶26-27. As a result of his failing grade – which plaintiff essentially alleges is "false" and was "falsely withheld" -- Ross University withdrew its sponsorship of plaintiff to sit for the USMLE Step 1 Exam. See, plaintiff's Memorandum of Law at 11-12. However, these alleged falsities amount to nothing more than a grievance over a failed grade and concern over the timing in which he purportedly received the grade -- not fraud.

Plaintiff alleges no set of facts under which Ross University's calculation of his grade constituted a "material misrepresentation". Plaintiff does not point to statements that were untrue or that he detrimentally relied on these statements. Similarly he fails to allege facts that would infer a strong inference of fraudulent intent. He merely states in conclusory fashion that Ross University acted in a "wonton, willful, and malicious manner." It is well-settled that Rule 8 requires more than "labels and conclusions." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

Plaintiff's fraud claim, like his others, is simply another attempt to grieve his failing

grade and consequential inability to complete the USMLE Step 1 exam.  It should be

dismissed.

## POINT IV

### PLAINTIFF FAILS TO ADDRESS DEFENDANT'S
### MOTION TO DISMISS HIS TORTIOUS INTERFERENCE
### WITH CONTRACTUAL RELATIONS CLAIM

Plaintiff offers no argument in opposition to this motion to dismiss plaintiff's

claim for tortious interference with contractual relations.  Presumably because plaintiff is

unable to dispute the fact that his tortious interference with contractual relations cause of

action fails as a matter of law since Ross University cannot be sued for tortious

interference of a contract to which it was a party.  See Koret, Inc. v. Christian Dior, S.A.,

161 A.D.2d 156, 157, 554 N.Y.S.2d 867, 869 (1st Dep't 1990); Flash Elec., Inc. v.

Universal Music & Video Distrib. Corp., 312 F. Supp. 2d 379 (E.D.N.Y. 2004).  As such,

plaintiff's tortious interference with a contract cause of action should be dismissed.

8

## CONCLUSION

Based on the foregoing, Ross University respectfully submits that its motion to dismiss the Amended Complaint should be granted in its entirety.

Dated:   Garden City, New York
         September 28, 2009

Respectfully submitted,

Cullen and Dykman LLP

By: _____
    Jennifer A. McLaughlin (JM 5678)
    Attorneys for Defendant
    100 Quentin Roosevelt Boulevard
    Garden City, New York 11530

Of Counsel:
Jennifer A. McLaughlin (JM 5678)
Justin F. Capuano (JC 5853)

9

Exhibit D