UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X   Case No.   CV07-2433
ANAND DASRATH,
                Plaintiff(s),

     -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                Defendant(s).
_____X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE - RULE 56</u>**

## I. STATEMENT OF FACTS

Plaintiff, Anand ANAND (Hereinafter referred to as "DASRATH") applied to Ross University Medical Center (Hereinafter referred to as "ROSS") in the Spring of 2003. He then began his studies at Ross in May 2004. Dasraths' first four semesters of studies consisted of Basic Science Courses; which entails the theoretical part of medicine. In December of 2005, he completed all of the courses in the Basic Science Curriculum

In Spring of 2006, Ross registered him for the Advanced Introduction to Clinical Medicine (Hereinafter referred to as the "AICM") course given in Miami, Florida. He completed the AICM course on April 7, 2006 upon which Ross Issued a Certificate of Completion for said course. Following the completion of the AICM course, Dasrath was on a 17-week scheduled break from Ross. However, he remained fully enrolled as a student at Ross as stated on page 9 of Ross University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter referred to as the "Student Handbook").

In March of 2006, Dasrath Completed the National Board Medical Examiners Comprehensive Examination (Hereinafter referred to as the "NBME"). His next step is to sit and take the United States Medical Licensing Examination Step 1 (hereinafter referred to as the "USMLE Step 1"). As stated in the Student Handbook at page 13, students are eligible to take the USMLE Step 1 after they have completed the Basis Science Curriculum, the AICM course and the NBME. Therefore, Dasrath was instructed by Ross to apply for certification and sponsorship through Ross to sit and take the USMLE Step 1 during the period May 1, 2006 through July 31, 2006 for the first time. At page 13 of the Student Handbook it is stated that "Students are required to take and pass the USMLE Step 1 in no more than three attempts." Dasrath submitted an application to Ross for certification to sit and take the USMLE Step 1 Exam and Ross' Registrar verified his credentials, approved the certification and sponsorship, and submitted this approved application to the United States Medical Licensing Examinations / Educational Commission for Foreign Medical Graduates (Hereinafter referred as the "USMLE/ECFMG") in Philadelphia, Pennsylvania directly from Ross' New Jersey Registrar office. Said exam was schedule to be administered on June 30, 2006. However, the application he submitted was rejected on April 17, 2006 because the governing body for the USMLE/ECFMG wished to verify his date of birth. Dasrath submitted proof of his date of birth and that Issue was resolved. Thereafter, he submitted a second application to Ross registrar again

on April 27, 2006, for certification and sponsorship for the USMLE Step 1 Exam. Ross' Registrar again on May 5, 2006 repeated the procedure of verifying his credentials, issuing certification, sponsorship and forwarding the approved application to the USMLE/ECFMG's office directly, upon which Dasrath was instructed to sit and take the USMLE Step 1 on July 27, 2006. Dasrath sat and took the USMLE Step 1 Exam on July 27, 2006.

Plaintiff contends that (1) a contract was created when Ross, certified him, not once, but two times to sit for the USMLE Step I, and (2) the Defendant improperly withdraw its sponsorship of him to take the USMLE Exam Step I.

As stated above, in order to be eligible to sit for the USMLE Step I, a student must complete the defendant's Basic Science Curriculum; the AICM course, and the NBME. Only then can a student be certified by Ross to sit for the USMLE Step I Exam.

It is undisputed that Dasrath was certified to sit for the USMLE Step I. It is also undisputed that Dasrath did, in fact, sit for said exam as instructed. What is in dispute is whether he was given a failing grade in the AICM course, which in turn precluded the USMLE/ECFMG from releasing his grade for the USMLE Step I Exam as set by Ross' standards. As will be set forth herein, it is evident that Dasrath could not have been given such a grade by Ross

It was not until August 14, 2006 that Dasrath received official documentation in the form of an academic transcript when he learned that Ross issued a failing grade for the AICM course. However, by this time he had already sat and taken the USMLE Step I Exam.

It should be noted that Dasrath does not partake in the registration process of courses at Ross, he only satisfies a bill and in this case an invoice was not forwarded to him for the AICM course, which Ross accuses him of not re-registering for. This accusation according to Ross precluded him from sitting for the USMLE Step I Exam. On the basis of this accusation Ross withdrew its sponsorship of Dasrath for the USMLE Step I Exam. At no point in time prior to August 14, 2006 did Dasrath receive an academic transcript with a failing grade for the AICM course. Assuming that he had failed the AICM course, which he did not; according to the Defendant's Student Handbook as stated above, a student may not be marked withdrawn during that 17-week break period. Thus between May 5, 2006, the date at which he was certified to sit for the USMLE Step I Exam, and August 14, 2006, Dasrath remained fully enrolled as a student. It is not stated in any part of the Student Handbook that students may be withdrawn during this 17-period once they have received a Certificate of Completion for the said AICM course.

Therefore, the Defendant improperly withdrew Dasrath and improperly withdrew its sponsorship of him to sit for the USMLE Step I Exam.

Defendant seems to argue the "timeliness" of Dasrath receiving his grade, and that he can point to no contractual provision requiring Ross to report grades at a certain time. However, the issue is not whether Dasrath received his grade in a timely fashion. Rather, the fact remains that he was eligible to sit for the USMLE Step I Exam and in fact did so based upon a passing grade issued by Ross. Dasrath only followed Ross' instructions. Indeed, it was Ross: based on its Registrar's records that approved, certified, sponsored, mailed in the completed documents to the USMLE/ECFMG office and directed Dasrath to sit and take the USMLE Step 1Exam.

On July 27, 2006, Dasrath did in fact sit for the USMLE Step I Exam. It was weeks after this date, that Ross issued the alleged failing grade. Therefore, by Ross directing Dasrath to sit for the USMLE Step I Exam, he would have had to pass the AICM course and Ross has breached its contract with Dasrath

## II. SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") is only appropriate where admissible evidence, in the form of affidavits, deposition transcripts, or other documentation, demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008); Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir.1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.2009); Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir.2007). No genuine issue of material fact exists when the movant demonstrates, on the basis of the pleadings and submitted evidence, that no rational jury could find in the non-movant's favor. See, e.g., Warshawsky, 559 F.3d at 137; Chertkova v. Conn. Gen'l Life Ins. Co., 92 F.3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56(c)). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-movant. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir.1987).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show there is a genuine issue of material fact to be tried. See, e.g., Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996). The non-movant must present more than a "scintilla of evidence," Del. & Hudson Ry. Co. v. Cons. Rail Corp., 902 F.2d 174, 178 (2d Cir.1990) (quoting Anderson, 477 U.S. at 252, 106 S.Ct. 2505), or "some metaphysical doubt as to the material facts," Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), and "cannot ... rely[ ] on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996) (citations omitted). Affidavits submitted in opposition to a summary judgment motion must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir.2004) (citing Fed.R.Civ.P. 56(e)).

When determining whether a genuine issue of material fact exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." Anderson, 477 U.S. at 254-55, 106 S.Ct. 2505. A court considering a summary judgment motion must be "mindful of the underlying standards and burdens of proof" because the evidentiary burdens that the respective parties would bear at trial guide the court in its determination of a summary judgment motion. Pickett v. RTS Helicopter, 128 F.3d 925, 928 (5th Cir.1997) (citing Anderson, 477 U.S. at 252, 106 S.Ct. 2505); see also Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir.1988). Where the non-movant will bear the ultimate burden of proof on an issue at trial, the movant's burden under Rule 56 will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-movant's claim. See, e.g., Brady, 863 F.2d at 210-11. Where a movant without the underlying burden offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " Brady, 863 F.2d at 211 (citing Matsushita, 475 U.S. at 587, 106 S.Ct. 1348).

## III.    WHETHER A CONTRACT EXISTS AND THE BREACH OF THAT CONTRACT

Plaintiff alleges that the university unjustly dismissed him, in violation of its rules and regulations, thereby breaching its contract with him.

Under New York law, to make out viable claim for breach of contract, complaint need only allege: (1) existence of agreement; (2) adequate performance of contract by plaintiff; (3) breach of contract by defendant; and (4) damages. St. John's University v Bolton and Spiridon Spireas, 2010 WL 5093347.

Under New York law, a student can sue his school for breach of contract. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998); Clarke v. Trustees of Columbia University, No. 95 Civ. 10627(PKL), 1996 WL 609271, at (S.D.N.Y. Oct. 23, 1996); Keles v. New York University, No. 91 Civ. 7457(SWK), 1994 WL 119525, at (S.D.N.Y. Apr. 6, 1994), aff'd, 54 F.3d 766 (1995); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413-414 (1980). When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, he will obtain the degree he seeks. See Gally, 22 F.Supp.2d at 206; Keles, 1994 WL 119525. The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student. See Clark, 1996 WL 609271; Keles, 1994 WL 119525; Vought v. Teachers College, Columbia University, 511 N.Y.S.2d 880, 881 (1987); Sweeny v. Columbia University, 704 N.Y.S.2d 617, 618 (2d Dept.2000). Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious. See Keles, 1994 WL 11952.

However, because the decisions that educational institutions make about academic standards involve "the subjective judgment of professional educators," claims regarding such matters are subject to judicial review only "to determine whether [the defendants] abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Gertler v. Goodgold, 487 N.Y.S.2d 565, 569 (1985); see also Clarke, 1996 WL 609271; Keles, 1994 WL 119525; Garg v. Albert Einstein College of Medicine, 747 F.Supp. 231, 236 (S.D.N.Y.1990); Sweeny, 704 N.Y.S.2d at 618. "The issue in determining a motion for summary judgment ... is

whether any genuine issue of material fact remains as to whether defendants acted in bad faith or in an arbitrary or irrational manner." Clarke, 1996 WL 609271.

Plaintiff's claim of breach of contract is based on Ross University's April 1996 decision to dismiss plaintiff. It is undisputed that, at the time of his dismissal, plaintiff had participated in two clinical rotations at St. Luke's Hospital, without having first passed Step I of the USMLE. See Ex. 11 to Pl. Aff. Defendant's Student Handbook provides that "[s]tudents in the clinical phase of the curriculum are in good standing if they have met all financial obligations to the University, have passed Part One of the USMLE, and have received satisfactory evaluations for all clinical rotations." Ex. C to Perri Aff. The Handbook further requires that, if a student arranges his own clinical rotation, prior to beginning the rotation the student must notify the school's clinical department in writing or by phone, and must request and receive a letter of good standing from the medical school. See Ex. C to Perri Aff. Plaintiff has acknowledged that the handbook constituted his contract with the university. See Complaint, at ¶ 110; Pl. Dep., at 289-290.

By participating in clinical rotations without notifying the university and without having first passed Step I, plaintiff was not in good standing under the regulations set forth in the student handbook. Moreover, Perri had previously informed plaintiff that he could not participate in clinical rotations until he provided the university with proof that he had passed Step I. Because plaintiff was participating in the clinical rotations at St. Luke's in violation of Ross University rules and regulations, no rational jury could find that the university acted in an arbitrary or irrational manner in dismissing him. Cf. Keles, 1994 WL 119525 (granting summary judgment on a claim of breach of contract in dismissing a graduate student, where plaintiff did not pass the examinations at the proper stage of his studies, and thus did not fulfill the requirements of the university's regulations); Benson v. Trustees of Columbia University, 626 N.Y.S.2d 495, 496 (1st Dept.1995) (dismissing Ph.D. student's claim of breach of contract because the university following its guidelines in evaluating her academic performance, and thus did not act arbitrarily). Babiker v Ross University, 2000 WL 666342.

By intentionally withholding Dasrath's AICM grade, then, without cause or justification administratively withdrawing him as of June 29, 2006, and subsequently issuing a failing grade for the AICM course on August 14, 2006, (after Dasrath had already sat for the USMLE Step I exam), it then blocked the release of his score of said exam. Based upon this fabricated failing

grade, Ross had no reason to withdraw its sponsorship of him. Nevertheless, it did so. These acts committed by Ross deprived Dasrath of his right to become a medical doctor which was his goal when he applied to Ross.

Thus, for the reasons set forth herein, it is quite obvious that Ross breached the contract that it admits the parties entered into when Dasrath enrolled at its school.

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      March 2, 2011

                              **COSTELLO & COSTELLO, P.C.**
                              BY:    **JOSEPH R. COSTELLO**
                              Attorneys for the Plaintiff
                              5919 20th Ave.
                              Brooklyn, N.Y. 11204
                              (718) 331-4600
                              Our File No. 6970

Index No.    CV07-2433

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ANAND DASRATH,

          Plaintiff,

    -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

          Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE - RULE 56**

**COSTELLO & COSTELLO, P.C.**
Attorneys for Plaintiff,
5919 20th Avenue
Brooklyn, N.Y. 11204
(718) 331-4600
Our File No.    6970

Dated: Brooklyn, New York
       March 2, 2011

**COSTELLO & COSTELLO, P.C.**
**BY:    JOSEPH R. COSTELLO**
Attorneys for Plaintiff
5919 20th Avenue
Brooklyn, New York 11204
(718) 331-4600
Our File No. 6970