UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X   Case No.      CV07-2433
ANAND DASRATH,
                Plaintiff(s),

      -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                Defendant(s).
_____X



**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO <u>FEDERAL RULES OF CIVIL PROCEDURE - RULE 56</u>**

## **PRELIMINARY STATEMENT**

This Memorandum of Law, together with the Affidavit of the Plaintiff, Anand Dasrath, (Hereinafter referred to as "Dasrath") together with the Affirmation of Joseph R. Costello, Esq. attorney for the Plaintiff is submitted in Reply to the Defendant, Ross University (Hereinafter referred to as "Ross") Opposition to Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The above action arises out of several causes of action of which the sole cause that remains is a breach of contract action. On March 3, 2011, both sides moved for summary judgment.

## **PROCEDURAL BACKGROUND**

The above action was commenced on or about June 15, 2007 by service of a Summons and Complaint. On May 20, 2008 Ross moved to dismiss the action. The Motion was referred to Magistrate Judge Reyes for a report and recommendation on May 23, 2008. On March 31, 2009 an Order adopting in part the Report and Recommendations as to Ross' Motion to Dismiss was entered. Said Order granted Ross' dismissal of the ADA claim for lack of subject matter jurisdiction. Said granting was made with prejudice to refilling after Dasrath's compliance with the ADAs notice and administrative exhaustion requirements. That part of the Motion which sought dismissal as to the breach of contract claim, fraud and violation of New York Human Rights claims was granted. Dasrath's request to stay the proceedings was denied.

However, the Report and Recommendation was modified to provide Dasrath leave to file an amended complaint as to all claims within thirty (30) days of March 31, 2009. Thereafter, and on June 17, 2009, an amended summons and complaint was filed.

Thereafter, this case proceeded on the aforementioned amended Summons and Complaint filed. Depositions of Dasrath, Dr. Nancy Perri and Dr, Enrique Fernandez for the Defendant were held. Subsequent to the depositions both sides requested documents from each other as a follow up.

It is to be noted that on December 14, 2010, your deponent has made a demand upon Ross' counsel for Dasrath's actual exams on. Not having received a response an email was sent to Justin Capuano, Esq. on February 24, 2011 to which no response has been received. Thereafter, and on March 3, 2011, both sides moved for summary judgment.

Under New York law, a student can sue his school for breach of contract. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998); Clarke v. Trustees of Columbia University, No. 95 Civ. 10627(PKL), 1996 WL 609271, at (S.D.N.Y. Oct. 23, 1996); Keles v. New York University, No. 91 Civ. 7457(SWK), 1994 WL 119525, at (S.D.N.Y. Apr. 6, 1994), aff'd, 54 F.3d 766 (1995); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413-414 (1980). When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, he will obtain the degree he seeks. See Gally, 22 F.Supp.2d at 206; Keles, 1994 WL 119525. The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student. See Clark, 1996 WL 609271; Keles, 1994 WL 119525; Vought v. Teachers College, Columbia University, 511 N.Y.S.2d 880, 881 (1987); Sweeny v. Columbia University, 704 N.Y.S.2d 617, 618 (2d Dept.2000). Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious. See Keles, 1994 WL 11952.

However, because the decisions that educational institutions make about academic standards involve "the subjective judgment of professional educators," claims regarding such matters are subject to judicial review only "to determine whether [the defendants] abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Gertler v. Goodgold, 487 N.Y.S.2d 565, 569 (1985); see also Clarke, 1996 WL 609271; Keles, 1994 WL 119525; Garg v. Albert Einstein College of Medicine, 747 F.Supp. 231, 236 (S.D.N.Y.1990); Sweeny, 704 N.Y.S.2d at 618.

## PLAINTIFF'S FAILURE TO SUBMIT A RULE 56.1 STATEMENT OF MATERIAL FACT DOES NOT WARRANT DISMISSAL OF THE MOTION

It is argued by the Defendant's counsel that because the Plaintiff did not submit a Rule 56.1 statement of material facts with his motion for summary judgment, his motion should be denied.

However, the U.S. Court of Appeals for the Second Circuit has noted that a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Rule 56.1] statement," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).

To hold otherwise would risk creating tension between Local Rule 56.1 and Fed. R. Civ. P. 56, which permits a district court to grant an unopposed motion for summary judgment only when it is "appropriate," i.e., only when "the... admissions on file... show that... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), (e). In other words, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment.

Although it would have been more prudent to follow the rule, rather than rely upon the discretion of the court to relieve non-compliance, it is asked of this court to be forgiving in addressing a violation of this rule committed by Plaintiff's counsel and not deny the Plaintiff his day in court.

The issue in determining a motion for summary judgment ... is whether any genuine issue of material fact remains as to whether defendants acted in bad faith or in an arbitrary or irrational manner." Clarke, 1996 WL 609271.  Plaintiff's claim of breach of contract is based on Ross University's April 1996 decision to dismiss plaintiff. It is undisputed that, at the time of his dismissal, plaintiff had participated in two clinical rotations at St. Luke's Hospital, without having first passed Step 1 of the USMLE. (See Ex. 11 to Pl. Aff.).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id

## STATEMENT OF FACTS

In the spring of 2003 Dasrath applied to Ross University School of Medicine (Hereinafter referred to as "ROSS"). ¶ 1 ("Dasrath Affidavit").  His goal in applying to Ross was to become a medical doctor.  ¶ 3 ("Dasrath Affidavit").  He then submitted an application form and college transcript.  ¶ 4 ("Dasrath Affidavit").  Later in the spring of 2003, he received an acceptance letter from Ross. ¶ 5 ("Dasrath Affidavit").  In May 200, he began his studies at Ross.  Dasraths'

- 4 -

first four semesters of studies consisted of Basic Science Courses; which entails the theoretical part of medicine. In December of 2005, he completed all of the courses in the Basic Science Curriculum ¶ 8 ("Dasrath Affidavit").

In the Spring of 2006, Ross registered Dasrath for the Advanced Introduction to Clinical Medicine (Hereinafter referred to as the "AICM") course given in Miami, Florida. He completed the AICM course on April 7, 2006 upon which Ross Issued a Certificate of Completion for said course ¶ 34 ("Dasrath Affidavit"). Following the completion of the AICM course, Dasrath was on a 17-week scheduled break from Ross. However, he remained fully enrolled as a student at Ross as stated on page 9 of Ross University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter referred to as the "Student Handbook") ¶ 34 ("Dasrath Affidavit").

In March of 2006, Dasrath Completed the National Board Medical Examiners Comprehensive Examination (Hereinafter referred to as the "NBME"). His next step was to sit and take the United States Medical Licensing Examination Step 1 (hereinafter referred to as the "USMLE Step 1"). As stated in the Student Handbook at page 13, students are eligible to take the USMLE Step 1 after they have completed the Basis Science Curriculum, the AICM course and the NBME. Upon successful completion of each course, and between the period of May 1, 2006 - July 31, 2006 Dasrath was instructed by Ross to apply for certification and sponsorship to sit and take the USMLE Step 1 Exam, which he did on July 27. 2006. ¶ 38 ("Dasrath Affidavit").

Plaintiff contends that (1) a contract was created when Ross, certified him, not once, but two times to sit for the USMLE Step 1, and (2) the Defendant improperly withdraw its sponsorship of him to take the USMLE Exam Step 1.

As stated above, in order to be eligible to sit for the USMLE Step 1, a student must complete Ross' Basic Science Curriculum; the AICM course, and the NBME. Only then can a student be certified by Ross to sit for the USMLE Step 1 Exam.

It is undisputed that Dasrath was certified to sit for the USMLE Step 1 Exam ¶ 45 ("Dr. Fernandez' Affidavit"). It is also undisputed that Dasrath did, in fact, sit for said exam as instructed. What is in dispute is whether he was given a failing grade in the AICM course, which in turn precluded the USMLE/ECFMG from releasing his grade for the USMLE Step 1 Exam as set by Ross' standards. As will be set forth herein, it is evident that Dasrath could not have been given such a grade by Ross.

It was not until August 14, 2006 that Dasrath received official documentation in the form of an academic transcript when he learned that Ross issued a failing grade for the AICM course. However, by this time he had already sat and taken the USMLE Step 1 Exam.

## SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") is only appropriate where admissible evidence, in the form of affidavits, deposition transcripts, or other documentation, demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008); Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir.1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.2009); Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir.2007).

As set forth in Dasrath's Affidavit, both in support of his motion for summary judgment and in Reply to Defendant's Motion for summary judgment, Ross did in fact as arbitrary, capricious and against its own stated policy and regulations.  As a result, Dasrath is entitled to the granting of his motion for summary judgment.

## ARGUMENTS
## WHETHER A CONTRACT EXISTS AND WHETHER THE DEFENDANT BREACHED THAT CONTRACT

Under New York law, to make out viable claim for breach of contract, complaint need only allege: (1) existence of agreement; (2) adequate performance of contract by plaintiff; (3) breach of contract by defendant; and (4) damages. St. John's University v Bolton and Spiridon Spireas, 2010 WL 5093347.

Under New York law, a student can sue his school for breach of contract. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998); Clarke v. Trustees of Columbia University, No. 95 Civ. 10627(PKL), 1996 WL 609271, at (S.D.N.Y. Oct. 23, 1996); Keles v. New York University, No. 91 Civ. 7457(SWK), 1994 WL 119525, at (S.D.N.Y. Apr. 6, 1994), aff'd, 54 F.3d 766 (1995); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413-414 (1980).

When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, he will obtain the degree he seeks. See Gally, 22 F.Supp.2d at 206; Keles, 1994 WL 119525. The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student. See Clark, 1996 WL 609271; Keles, 1994 WL 119525; Vought v. Teachers College, Columbia University, 511 N.Y.S.2d 880, 881 (1987); Sweeny v. Columbia University, 704 N.Y.S.2d 617, 618 (2d Dept.2000). Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious. See Keles, 1994 WL 11952.

However, because the decisions that educational institutions make about academic standards involve "the subjective judgment of professional educators," claims regarding such matters are subject to judicial review only "to determine whether [the defendants] abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Gertler v. Goodgold, 487 N.Y.S.2d 565, 569 (1985); see also Clarke, 1996 WL 609271; Keles, 1994 WL 119525; Garg v. Albert Einstein College of Medicine, 747 F.Supp. 231, 236 (S.D.N.Y.1990); Sweeny, 704 N.Y.S.2d at 618. "

Defendant agrees that this is the standard to be applied. See Defendant's Memorandum of Law in Opposition to Summary Judgment. (Def. Mem. of Law pg. 9). It is argued herein that Dasrath has met this standard, and is entitled to summary judgment.

Defendant cites Babiker v Ross University, 2000 U.S. Dist. Lexis 6921, at 25-26 (SDNY 2000 where summary judgment was granted to the Defendant. Although that case is "strikingly similar" to the case at hand, nonetheless it is distinguishable. In that case, *Babiker* failed the USMLE Step 1 three times, continued to participate in clinical studies and was then expelled for doing so. Therefore, *Babiker* had to have been enrolled in clinical clerkships because he passed portions of the USMLE Step 1. By passing portions of the USMLE Step 1, *Babiker* became eligible for a clinical clerkship. In this case, Dasrath's grade for the USMLE Step 1 was blocked. As a result he could not have been enrolled in a clinical clerkship course. In fact, Dr. Fernandez testified that Dasrath was not enrolled in a clinical clerkship course ***See Plaintiff's Motion, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.***

It is undisputed that Dasrath passed the basic science courses, and the NBME. See ¶36 (Dr. Fernandez Affidavit). Furthermore, he testified that Dasrath obtained certification and sponsorship for the USMLE Step 1 Exam.

By subsequently issuing Dasrath failing grade in the AICM course; which in turned blocked the release of his score for the USMLE Step 1 Exam, and then issuing a letter, on August 14, 2006 (after he had sat for the USMLE Step 1 Exam), marking him administratively withdrawn as of June 29, 2006, and subsequently withdrawing its sponsorship of him, it is quite obvious that Ross breached the contract by acting in an arbitrary and capricious manner and therefore failed to abide by its own Student Handbook.

## A.  THE AICM COURSE

It is undisputed that the AICM course is a prerequisite to the USMLE Step 1 Exam. (See Def. Mem. of Law pg. 5). The USMLE Step 1 in turn is a prerequisite for commencing Clinical Clerkships courses.

To be eligible for Clinical Clerkships courses, a student must first have a passing score on the USMLE Step 1 Exam. *See Exhibit "G1" of Plaintiffs Motion for Summary Judgment.* As is set forth herein Dasrath sat for the USMLE Step 1 Exam on July 27, 2006. However, he was not registered by Ross to do any Clinical Clerkship courses. This was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.* Therefore, it was not possible for him to have been enrolled in a Clinical Clerkship.

Ross next claims that out of a 1000 possible points for the AICM course, Dasrath received 426.6, which is a failing grade. *See Affidavit of Dr. Fernandez at para. 11 annexed to Defendants Affirmation in Opposition*. However, Ross did not grade students on a 1000 point scale in the spring of 2006. Rather students were graded on a 100% scale. *See Plaintiff's Motion for Summary Judgment, Exhibit V"* (See "Student Handbook", at pages 5 and 6 particularly referring to grading). In addition, Ross has failed to produce any actual examination materials that could indicate a failing grade in the AICM course. At Dr. Perri's deposition page 25, line 23, she stated that the AICM, "is a course within itself" and on page 25 line 24 that "one grade is issued for it". Over the course of time, Ross has produced several failing grades for the same AICM course based on several different grading procedures, which in turn makes any of the issued failing AICM grades erroneous and arbitrary. *See Plaintiff's Motion for Summary Judgment, Exhibit "K", Perri Dep. at pg. 25, line. 23 and line 24.*

Ross had in fact issued a Certificate of Completion for the AICM course *See Plaintiff's Motion for Summary Judgment, Exhibit "I1"*. It then subsequently issued failing grades for the same AICM course.

Defendant claims that individual grades are available through eCollege in advance of the grade being available on an official transcript (See Fernandez Aff. ¶53 and Def. Mem. of Law pg 11). However, in prior semesters, end of semester grades were issued via an academic transcript in hardcopy format, not on E-College.

On page 25 of Ross' University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter Referred to as the "Student Handbook"), it is stated that Ross has adopted the Family Educational Rights and Privacy Act. (Hereinafter referred to as FERPA), *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*. For confidentiality reasons, FERPA does not approve of students grades being posted on the Internet.

The Student Handbook does not recognize the Internet as a means of posting student grades. On page 6 of the Student Handbook it is stated, "A student… will receive grades…on his/her transcript." In all of the Plaintiffs previous semesters he received his grades via an academic transcript, not on E-college. *See Plaintiff's Motion for Summary Judgment, Exhibit "V"*. Defendant further claims that on April 22, 2006 he acknowledged via e-mail that he saw his "failing grade" in the AICM course and asked Dr. Fernandez to review it. (See Dr. Fernandez affidavit paragraph 14 and Exhibit "B"). It is important to note that it is stated on page 25 of the Student Handbook the student has, "The right to request the amendment of the student's educational records that the student believes are inaccurate or misleading". *See Exhibit "H1" of the Plaintiffs Motion for Summary Judgment.*

Ross continuously claims that Dasrath "admitted"; "acknowledged" and/or was aware that he failed the AICM course ¶ 40 ("Dr. Ferenadez Affidavit"). A careful analysis of defense's Exhibit "B" clearly informs Dr. Fernandez that it was not possible for Dasrath to have failed the AICM course. Moreover, it is also stated on page 25 of the student handbook that, *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*:

> "If the university decides not to amend the record as requested by the student, the university will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the

>hearing procedures will be provided when the student is
>notified of the right to a hearing."

At no point in time has Ross offered, let alone conducted, a hearing before placing a failing grade for the AICM course in my transcript. Clearly Ross is in breach of its own Student Handbook.

Ross next claims that on April 24, 2006 Dasrath participated in a telephone conversation with Dr. Fernandez regarding a failing grade for the AICM course. (See Dr. Fernandez affidavit paragraph 15, McLaughlin Affidavit, Exhibit L and Plaintiffs deposition page 80 line 12 and page 81 line 14). At the very least it would be irrational for Dr. Fernandez to engage in a discussion over a failed AICM course. It was Dr. Fernandez that issued a Certificate of Completion for the said AICM course.

Defendants Exhibit "L" is dated April 24, 2006 but first surfaced on November 22, 2006 while the case was in the Queens County Supreme Court. It is to be noted that that case was dismissed without prejudice because the Supreme Court lacked jurisdiction (See Copy of the Hon. Roger N. Rosengarten dated January 31, 2001. Thus, it is quite evident that Ross circumvents the issue of issuing a failing grade.

## B.  ADMINISTRATIVE WITHDRAWAL

Ross next claimed that I received an administrative withdrawal effective May 22, 2006. *See ¶ 24 Affidavit of Dr. Enrique Fernandez in Support of Defendant's Motion for Summary Judgment.*

By falsely stating that the administrative withdrawal was effective May 22, 2006, Defendant is distracting attention from the following chronology of events:

(a)   Dasrath completed the AICM course on April 7, 2006 and received a Certificate of Completion for this course. ¶ 34 ("Dasrath Affidavit"). Following the completion of this course, he began a scheduled 17 week break during which time he remained fully enrolled ¶ 35 ("Dasrath Affidavit")

(b)   During the break he received a transcript dated May 22, 2006 in which no failing grade for the AICM course was issued. *See Exhibit "V2" of Plaintiffs Motion for Summary Judgment* ¶ 40 ("Dasrath Affidavit").

(c)   Thereafter, and on June 23, 2006, Dr. Fernandez issued a Clinical Clerkship Evaluation Form. As set forth in the Student Handbook at page 13, "Passing Step 1 is **required**

by the University to proceed to the core clinical clerkships of the curriculum" ¶ 86 ("Dasrath Affidavit"). That is, in order to take a Clinical Clerkship course, a student must first have a passing score on the USMLE Step 1 Exam ¶ 87 ("Dasrath Affidavit"). In as much as Dasrath had not yet sat for the USMLE Step 1 Exam, he could not have been licensed to take such a course. In fact, he was not even registered to take a Clinical Clerkship course. This too was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R"*. Also, at the deposition of Dr. Fernandez, he testified that he did not supervise Dasrath in any Clinical Clerkship course. *See Dep. of Dr. Fernandez P.56 Lines 5-7*. ***See Plaintiff's Motion for Summary Judgment, Exhibit "R"***.

Thus, it is quite evident that the Clinical Clerkship Evaluation Form is fabricated.

(d)     It was also during the 17 week break, specifically on June 29, 2006, that Ross, without justification, administratively withdrew Dasrath from its university.

(e)     On July 27, 2006 I sat for the USMLE Step 1 Exam. It was my understanding that these test scores would be released on August 15, 2006. However, on August 14, 2006 Ross subsequently released a transcript indicating a failing grade for the AICM course, which I had already completed and received Certification for on April 7, 2006.

(f)     It should also be noted that the June 29, 2006 administrative withdrawal letter, preceded the tentative USMLE Step 1 Exam that was scheduled to be administered on June 30, 2006.

In reality, the administrative withdrawal letter, in conjunction with the certification and sponsorship to take the USMLE Step 1 Exam became a well calculated attempt to preclude me from achieving my goal of becoming a medical doctor.

It is undisputed that I complied with Ross' stipulation to take the USMLE Step 1 as certified, sponsored and, not only upon the recommendation of Dr. Fernandez but also as directed by Ross itself. However, my certification and sponsorship was withdrawn on August 14, 2006; at about the same time my score for the USMLE Step 1 was scheduled to be released.

In light of the foregoing it can be said that Ross breached its agreement with Dasrath and acted in an arbitrary and capricious manner, thus warranting denial of its motion for summary judgment.

Defendant further claims that out of 1,000 possible points for the AICM, Dasrath received 426.6, which is a failing grade (See Fernandez Aff. ¶11, Ex. A). It further argues that on April

22, 2006 he acknowledged via e-mail that he saw his "failing grade" in the AICM course and asked Dr. Fernandez to review this grade. (See Fernandez Aff. ¶14, Exh. "B").

Defendant's claim that Dasrath learned of his failing grade before sending the April 22, 2006 e-mail to Dr. Fernandez (See McLaughlin's affidavit, Exhibit "L" and Plaintiffs deposition on page 89, Lines 19-22), is without merit. At no point in time did Dasrath admit to failing the AICM course. It is argued that Ross has submitted an arbitrary failing grade of the AICM course. In fact, at his deposition, at page 89, lines 19 to 22, Dasrath did not admit to failing the AICM course as claimed ¶ 89 ("Dasrath Affidavit").

Moreover, Dr. Perri has stated at her deposition that upon successful completion of the AICM course the student is then instructed to sit and take the USMLE Step 1 Exam, which he did. See Dr. Perri's deposition at page 28 lines 12 to 16. At his deposition, he clearly informed defense counsel that he did not fail the AICM course. ***Dasrath Dep. at. pg.128, ln. 13 – 20; pg. 157, ln. 14 – 21.***

Dr. Fernandez claims that he had reviewed the failing grade prior to the April 24, 2006 telephone conversation. (See Def. Mem. of Law pg 14). However, even before this date, Dr. Fernandez had already issued a Certificate of Completion for the AICM course. He then attempted to present a failing grade for the same course.

It is argued that Dr. Fernandez and Dasrath discussed his retaking of the AICM course set to begin on May 22, 2006. ***See Dr. Fernandez's affidavit paragraph 17 Exhibit "C***" and Def. Mem. of Law pg 14. However, it is not reasonable to believe that Dr. Fernandez would engage in such a conversation for the following reasons:

(a) Dr. Fernandez had already issued a Certificate of Completion for said course. ***See Plaintiff's Motion for Summary Judgment, Exhibit "I1"***.

(b) As stated on page 25 of the Student Handbook, "If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment". ***See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.*** This was never done by Ross.

(c) An academic transcript dated May 22, 2006 and issued by Ross' Registrar did not bear a failing grade for said AICM course. ***See Plaintiff's Motion for Summary Judgment, Exhibit "V2"***.

(d) Ross did not re-register Dasrath for the AICM course; nor did it send him a bill to satisfy.

(e) Dr. Fernandez would not have advised him to take the USMLE Step 1 Exam in his memorandum of April 24, 2006 if he did in fact fail the AICM course.  The AICM course is a prerequisite for taking the USMLE Step 1 Exam. ***See Exhibit "M" of Plaintiffs Motion for Summary Judgment.***

(f) He could not have been issued a certification and sponsorship by Ross to sit and take the USMLE Step 1 Exam if he had in fact failed the AICM course. ***See Exhibit "D1" of Plaintiffs Motion for Summary Judgment.***

(g) At Dr. Perri's deposition, she confirmed that Dasrath would have had to pass the AICM course in order to receive certification and sponsorship to sit for the USMLE Step 1 Exam. ***See Exhibit "H" of Plaintiffs Motion for Summary Judgment.***  (Perri Dep. at pg. 28 ln. 12 – 16, pg. 28 ln.24).

(h) At the time that Ross' Registrar informed him of passing the National Board of Medical Examiners Comprehensive Exam (NBME) they also stated that he was now "eligible" to take the USMLE Step 1 Exam.  In fact, they dictated a time interval during which he was required to sit and take said Exam.  This time interval was between May 1, 2006 to July 31, 2006. ***See Exhibit "W2" of Plaintiffs Motion for Summary Judgment.***  He then proceeded to take the USMLE Step 1 Exam on July 27, 2006 as directed by Ross.

(i) At her deposition, Dr. Perri confirmed this date as the correct date that Dasrath took the exam. ***See Exhibit "C1" of Plaintiffs Motion for Summary Judgment, Dr. Perri's deposition page 57, lines 8-13.***

Dasrath is not arguing for the first time that Ross violated The Family Educational Rights and Privacy Act ("FERPA").  Rather, Dasrath claims that in its Student Handbook Ross has adopted the principals of FERPA.  Pursuant to those principals, the posting of grades to a secure website is a violation on FERPA, which in turn makes this a breach of Ross' own rules and regulations.

### THE USMLE STEP 1 EXAM AND THE ECFMG

It is undisputed that the USMLE Step 1 exam is administered by the Educational Commission for Foreign Medical Graduates ("ECFMG") ¶ 25 ("Dr. Fernandez' Affidavit").  It is also undisputed that the USMLE Step 1 exam is not administered by Ross.  Lastly, it is

- 13 -

undisputed that Dasrath was enrolled at the time he applied for the USMLE ¶ 33 ("Dr. Fernandez' Affidavit").  What is in dispute is whether Dasrath was administratively withdrawn by the time he sat for the exam.  Because Ross sponsored him, certified him twice to sit for the exam, he must have successfully completed the AICM and therefore Ross could not have administratively withdrawn him at the time the USMLE Step 1 exam was administered.

## CONCLUSION

To reiterate, Dasrath completed the AICM course on April 7, 2006; was certified by Ross on May 5, 2006 to sit for the USMLE Step 1 Exam on July 27, 2006; did in fact sit for said exam; but was issued a failing grade on August 14, 2006 and marked administratively withdrawn as of May 22, 2006.  Thus, it is evident that Ross acted in an arbitrary and capricious manner.  Because of its actions, it is in violation of its rules and regulations.

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
April 28, 2011

**COSTELLO & COSTELLO, P.C
BY:    JOSEPH R. COSTELLO (9668)**
Attorneys for the Plaintiff
5919 20th Ave.
Brooklyn, N.Y. 11204
(718) 331-4600
Our File No. 6970